DINESH PATEL
2118 Walsh Ave, Suite 240
Santa Clara, CA 95050
Telephone: (408) 454-8378
Email:btcroot@gmail.com
*Pro Se*

Case: 1:24–cv–02535       JURY DEMAND
Assigned To : Reyes, Ana C.
Assign. Date : 8/26/2024
Description: Pro se. Gen. Civ. (F–Deck)

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Dinesh Patel | Case No.: |
| Plaintiff, | **UNLIMITED JURISDICTION** |
| v. | **COMPLAINT FOR:** |
| Georgetown Software House, Inc. | |
| Defendant. | 1. **TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)** |
| | 2. **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))** |
| | 3. **COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION** |
| | 4. **DECLARATORY RELIEF PURSUANT TO (28 U.S.C. § 2201)** |
| | **JURY TRIAL DEMANDED** |

DINESH PATEL ("Plaintiff" or "Patel") hereby brings the following Complaint (the "Complaint") against Defendant Georgetown Software House, Inc. ("Defendant" or "GSH"). In this Complaint, Plaintiff asserts U.S. Trademark Registration No. 6557978 (the "'978 Registration") for the standard character "PEBBLES" trademark in Class 009, and 6557799 (the "'799 Registration") for the standard character "PEBBLES" trademark in Class 042 (collectively the "PEBBLES® Mark"); the '978 Registration and the '799 Registration are collectively referred to as the "PEBBLES® Registrations." Plaintiff alleges as follows:

**INTRODUCTION**

1. This is an action by Plaintiff to stop, and to recover damages arising from, Defendant's wrongful and willful infringement of Plaintiff's valuable trademarks.

2. Plaintiff's PEBBLES® Mark is federally registered under his PEBBLES® Registrations, which Plaintiff and his predecessor have continuously used since prior to any alleged date of first use of Defendant's marks, establishing Plaintiff as the uncontroverted senior user of the PEBBLES® Mark.

3. Additionally, Plaintiff also has unregistered common law rights due to his and his predecessor's use of marks, without limitation, PEBBLE, PEBBLES AUTOMATION, PEBBLES UI, PEBBLES STATE MACHINE, PEBBLES I/O, SECURED BY PEBBLES, PEBBLES REMOTE, PEBBLES MANAGEMENT, PEBBLES SYNC, PEBBLES FUNCTION BLOCKS, PEBBLES API, PEBBLES TOOLKIT, PEBBLES PIX, PEBBLES GRAFIX, PEBBLES PLUGIN, PEBBLES RT, PEBBLE X, PEBBLE Z and PEBBLES THEMES, (collectively referred to as "PEBBLE-Formative Marks"; the PEBBLES® Mark and the PEBBLE-Formative Marks are collectively referred to as "Patel's-Marks") which uses by Plaintiff and his predecessor-in-interest can be tacked on to Plaintiff's use of his PEBBLES® Mark, and which uses were also prior to any alleged first use of Defendant's marks.

4. Plaintiff uses his PEBBLES® Mark on all of the goods and services recited on the PEBBLES® Registrations. Additionally, Plaintiff also uses Patel's-Marks on or in connection with providing goods and services for consumers to design and develop their own electronic hardware, software, software development, software for use as an application programming interface ("API"), Human-Machine-Interface ("HMI"), Graphical User Interface ("GUI"), automation, automated testing, industrial control panels, Supervisory Control and Data Acquisition ("SCADA") systems and software, device management, local and remote data collection and synchronization, data security and cryptography, automated data reporting, website and webserver designs, graphical displays, automated documentation, and ready-to-run software function modules including function modules which use spreadsheets to incorporate consumer-specified formula and functional logic in software applications for consumers, and Plaintiff and his predecessor have been also providing design and development services for others' computer software, electronic hardware, mobile apps, website design, and internet-based electronic device control and remote management services (collectively, the "PEBBLES Goods & Services"), in

the field of embedded systems and headless systems/Internet-of-Things ("IoT") devices, software development tools, industrial and office automation, consumer electronics, Defense industry, mobile apps, contract manufacturing, automotive, avionics, photonics, semiconductor, and medical devices ("Plaintiff's Industry.")

5.  Long after Plaintiff and his predecessor began using Patel's-Marks, Defendant began using identical standard character "PEBBLE", "PEBBLES", and "PEBBLE STREAM" marks (collectively, the "Infringing PEBBLE Marks") on or in connection with software development tools and services, including use of ready-to-run function modules which incorporate use of spreadsheets, which is identical or very similar to Plaintiff's PEBBLES Goods & Services.

6.  Despite having the knowledge of Plaintiff's PEBBLES Goods & Services, Defendant has been willfully infringing on Patel's-Marks while continuing to expand the scope of such infringing use, on what appears to be Defendant's mistaken and baseless belief that it is entitled to continue infringing upon Plaintiff's PEBBLES® Mark and the PEBBLE-Formative Marks until after Defendant finds an actual consumer confusion between the parties' respective marks.

7.  More disturbingly, Plaintiff also found out recently that Defendant is also offering software API and related services, and software and related services for automation of tasks to consumers using the Infringing PEBBLE Marks, which are identical to the PEBBLES Goods & Services.

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., and over the state-law claims pursuant to 28 U.S.C. §§ 1367 and 1338(b).

9.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (a) the amount in controversy exceeds seventy-five thousand dollars, exclusive of costs, and (b) there is complete diversity of citizenship between Plaintiff and Defendant.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is doing business in this district; Defendant "resides' in this judicial district as defined by 28 U.S.C. § 1391(c), and regularly engages in substantial and systematic commercial activities within this District,

and a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred and continue to occur in this district and throughout the United States.

## PARTIES

11. Plaintiff is an individual, a United States citizen and a California resident with his address at 2118 Walsh Ave, Suite 240, Santa Clara, California 95050, USA.

12. On information and belief, Defendant Georgetown Software House, Inc. is a District of Columbia company with its principal place of business at 6704 5th St NW, Washington, District of Columbia 20012, USA.

## FACTUAL BACKGROUND

**Plaintiff And His PEBBLES® Mark**

13. BatchTest Corporation ("BatchTest") is the predecessor-in-interest to Plaintiff.

14. BatchTest is a California corporation with an address at 2118 Walsh Ave, Suite 240, Santa Clara, CA 95050.

15. Plaintiff owns BatchTest.

16. Plaintiff is also BatchTest's President.

17. BatchTest has a non-exclusive non-transferable limited license to use Patel's-Marks in the United States commerce.

18. Plaintiff and BatchTest have provided the PEBBLES Goods & Services in commerce, including business-to-business services for design and development of others' computer software, electronic hardware and related firmware, mobile apps, and internet-based electronic device control and remote management services and remote maintenance of networked devices.

19. On November 16, 2021, BatchTest was issued the '978 Registration and the 799 Registration for the standard character "PEBBLES" trademark in Class 9 and 42 respectively by the United States Patent and Trademark Office ("USPTO").

20. Attached hereto as **Exhibit 1** shows a true and correct copy of the USPTO's publicly available Trademark Status & Document Retrieval system ("TSDR") website record for the registration certificate for the '978 Registration.

21. Attached hereto as **Exhibit 2** shows a true and correct copy of the publicly available TSDR record

for the registration certificate for the '799 Registration.

22. On January 14, 2022, BatchTest assigned the PEBBLES® Registrations, and the PEBBLES® Mark along with the goodwill associated with them to Plaintiff; the said assignment was recorded by the Assignment Recordation Branch of the USPTO under REEL/FRAME: 7560/0783 (the "PEBBLES® Assignment Recordation") on January 17, 2022.

23. **Exhibit 1** also shows a true and correct copy of the PEBBES® Assignment Recordation.

24. Plaintiff is the owner of the '978 Registration for the standard character "PEBBLES" trademark.

25. The '978 Registration identifies the following goods in Class 9:

"Downloadable computer software for developing other computer software and graphical user interface; Downloadable software and downloadable software utility for creating graphical user interface; Downloadable software for assisting developers in creating program code for use in multiple application software, and user's manuals and instructional manuals sold as a unit therewith; Downloadable software components, namely, software in the nature of controls and indicators for creating Human-Machine-Interface, and user's manuals and instructional manuals sold as a unit therewith."

26. Plaintiff is the owner of the '799 Registration for the standard character "PEBBLES" trademark.

27. The '799 Registration identifies the following services in Class 42:

"Providing temporary use of on-line non-downloadable software for developing other computer software and graphical user interface; providing temporary use of on-line non-downloadable software and software utility for creating graphical user interface; providing temporary use of on-line non-downloadable software for assisting developers in creating program code for use in multiple application software, and user's manuals and instructional manuals sold as a unit therewith; designing and providing temporary use of on-line non-downloadable software components, namely, software in the nature of controls and indicators, for creating Human-Machine-Interface, and user's manuals and instructional manuals sold as a unit therewith."

28. On June 12, 2023, Plaintiff had filed U.S. Trademark Application No. 98037258 (the "'258 Application") for the standard character "PEBBLE" mark, based on Plaintiff's intent-to-use the applied-for mark on several Class 9 goods.

29. Attached hereto as **Exhibit 3** shows a true and correct copy of the publicly available TSDR record for '258 Application.

30. The '258 Application identifies the following goods in Class 9:

"Electromechanical controls for use in industrial and home automation; Access control and alarm monitoring systems; Apparatus and instruments for conveying, distributing, transforming, storing, regulating or controlling electric current; Automated digital controls for commercial and industrial food service equipment; Automated self contained electronic surveillance devices that can be deployed to gather evidence or intelligence in remote locations; Computer controls for the operation of machine tools; Downloadable computer application software for mobile phones, handheld computers, wearable electronic devices, and virtual reality devices, namely, software for providing locally and remotely accessible human-machine-interface for embedded systems, electronic and electromechanical sensors, industrial automation systems, and home automation devices; Downloadable computer graphics; Downloadable computer graphics software; Downloadable computer programs for user interface design; Downloadable computer programs using artificial intelligence for use in machine learning and image processing; Downloadable computer programs using artificial intelligence for use in automated kitchen appliances; Downloadable computer software development tools; Downloadable computer software for use as an application programming interface (API); Downloadable computer software for computer system and application development, deployment and management; Downloadable computer software for controlling and managing patient medical information; Downloadable computer software for use in computer access control; Downloadable computer software for use in the encryption and decryption of digital files, including audio, video, text, binary, still images, graphics and multimedia files; Downloadable computer software that provides real-time, integrated business management intelligence by combining information from various databases and presenting it in an easy-to-understand user interface; Downloadable computer software to monitor and control factory manufacturing processes; Downloadable computer software using artificial intelligence for use in machine learning and image processing; Downloadable computer software using artificial intelligence for use in automated kitchen appliances; Downloadable computer-aided manufacturing (CAM) software for general use; Downloadable computer-aided manufacturing (CAM) software for integrated circuits; Downloadable factory automation software, namely, software to integrate manufacturing machine operations, track problems and generate production reports; Downloadable graphical user interface software; Downloadable industrial process control software; Downloadable software development kits (SDK); Downloadable software for connecting, operating, and managing networked vehicles and kitchen appliances in the internet of things (IoT); Downloadable software for monitoring and controlling communication between computers and automated machine systems; Downloadable software for processing images, graphics and text; Downloadable software for remote control of household electrical appliances; Downloadable software in the nature of a mobile application for providing locally and remotely accessible human-machine-interface for embedded systems, electronic and electromechanical sensors, industrial

automation systems, and home automation devices; Electric control panels; Electric current control devices; Electrical controllers; Electrical controlling devices; Electrical integrated control systems for use in the field of industrial and home automation; Electronic circuit board; Electronic apparatus for the remote control of industrial operations; Electronic control systems for machines; Electronic controllers for servo motors; Electronic controls for motors; Industrial automation controls; Power controllers; Programmable logic controllers; Recorded computer application software for mobile phones, handheld computers, wearable electronic devices, and virtual reality devices, namely, software for providing locally and remotely accessible human-machine-interface for embedded systems, electronic and electromechanical sensors, industrial automation systems, and home automation devices; Recorded computer programs using artificial intelligence for use in machine learning and image processing; Recorded computer programs using artificial intelligence for use in automated kitchen appliances; Recorded computer software development tools; Recorded computer software for use as an application programming interface (API); Recorded computer software using artificial intelligence for use in machine learning and image processing; Recorded computer software using artificial intelligence for use in automated kitchen appliances; Semiconductor testing apparatus; Testing apparatus for testing printed circuit boards; User interfaces, namely, Supervisory Control and Data Acquisition (SCADA) control panels for electrotechnical and electronic devices."

31. On June 12, 2023, Plaintiff had also filed U.S. Trademark Application No. 98037260 (the "'260 Application"; the '781 Application and the '079 Application are collectively referred to as the "PEBBLE™ Applications") for the standard character "PEBBLE" mark, based on Plaintiff's intent-to-use the applied-for mark on several Class 42 goods and services.

32. Attached hereto as **Exhibit 4** shows a true and correct copy of the publicly available TSDR record for '260 Application.

33. The '260 Application identifies the following goods in Class 42:

"Advanced product research in the field of artificial intelligence; Application service provider (ASP) featuring software using artificial intelligence for use in machine learning and image processing for industrial automation; Application service provider (ASP) featuring software using artificial intelligence for use in automated kitchen appliances; Computer graphics design services; Computer graphics services; Computer hardware development; Computer monitoring service which tracks application software performance, performs periodic maintenance and provides reports and alerts concerning such performance; Computer monitoring service which tracks hardware performance and processes and sends out historical reports and alerts; Computer software development; Computer software development and computer programming development for others;

Computer software development in the field of mobile applications; Consultancy in the field of artificial intelligence technology; Consulting services in the field of design and development of engineering processes; Creation of control programs for automated measurement, assembly, adjustment, and related visualisation; Creation of control programs for electric operation control and drive modules; Data automation and collection service using proprietary software to evaluate, analyze and collect service data; Design and development of automated controller systems, namely, temperature, humidity and electrical controllers; Design and development of automated home controller systems, namely, temperature, humidity, and electrical controllers; Design and development of computer firmware; Design and development of computer hardware; Design and development of computer hardware and software; Design and development of computer hardware for the manufacturing industries; Design and development of computer software; Design and development of computer software in the field of tablet applications; Design and testing for new product development; Design and testing of new products for others; Design of information graphics and data visualization materials; Developing customized software for others; Development of computer platforms; Development of computer programs recorded on data media (software) designed for use in construction and automated manufacturing (cad/cam); Development of software for secure network operations; Product development; Product development and engineering services for others; Product development for others; Product quality testing; Product research and development; Product testing; Providing a website featuring non-downloadable software using artificial intelligence for use in machine learning and image processing; Providing a website featuring non-downloadable software using artificial intelligence for use in automated kitchen appliances; Providing a website featuring non-downloadable software using artificial intelligence for use in industrial automation; Providing a website featuring technology enabling users to remotely view, monitor, program, operate and control large and small appliances, electrical systems and security systems in homes, offices and vehicles; Providing on-line non-downloadable software using artificial intelligence for use in machine learning and image processing; Providing on-line non-downloadable software using artificial intelligence for use in automated kitchen appliances; Providing technical information updates of industrial process control computer software via the global computer network; Providing temporary use of non-downloadable cloud-based software for connecting, operating, and managing networked vehicles in the internet of things (IoT); Providing temporary use of non-downloadable cloud-based software for connecting, operating, and managing networked kitchen appliances in the internet of things (IoT); Providing temporary use of non-downloadable cloud-based software for connecting, operating, and managing networked data acquisition and control devices in the internet of things (IoT); Providing temporary use of on-line non-downloadable cloud computing software using artificial intelligence for use in machine learning and image processing; Providing temporary use of on-line non-downloadable cloud computing

software using artificial intelligence for use in automated kitchen appliances; Providing temporary use of on-line non-downloadable software and applications using artificial intelligence for use in machine learning and image processing; Providing temporary use of on-line non-downloadable software and applications using artificial intelligence for use in automated kitchen appliances; Providing temporary use of on-line non-downloadable software development tools; Research and development of computer software; Research and development of new products; Research in the field of artificial intelligence; Research in the field of artificial intelligence technology; Scientific research and development; Software as a service (SAAS) services featuring software using artificial intelligence for use in machine learning and image processing; Software as a service (SAAS) services featuring software using artificial intelligence for use in automated kitchen appliances; Testing of computing equipment; Website development for others."

34. The PEBBLE™ Applications are currently pending at the USPTO.

35. Plaintiff owns the internet domain at "BATCHTEST.COM" ("Plaintiff's Website").

36. Attached hereto as **Exhibit 5** shows a true and correct copy of the WHOIS Lookup Report for the BatchTest.com domain, identifying Plaintiff as its registrant.

37. Plaintiff also owns the internet domain "PEBBLESUI.COM."

38. Attached hereto as **Exhibit 6** shows a true and correct copy of the WHOIS Lookup Report for the PebblesUI.com domain, identifying Plaintiff as its registrant.

**Plaintiff's Software Development Goods and Services, Including Ready-To-Run Function Modules**

39. The Wayback Machine Internet Archive ("Wayback Machine") page of Plaintiff's Website at https://batchtest.com/embedded-systems-product-developement/ as it was recorded on May 20, 2022, shows use of the PEBBLES® Mark on Plaintiff's business of Product Design & Development Engineering Services including software development, and also shows his PEBBLES® Mark used on a variety of software for creation of consumers' software and services.

40. Attached hereto as **Exhibit 7** shows a true and correct copy of the Wayback Machine archive page of Plaintiff's website at https://batchtest.com/embedded-systems-product-developement/ as it was recorded on May 20, 2022, showing Plaintiff's software development goods and services.

41. The Wayback Machine archive page of Plaintiff's Website at https://batchtest.com/labview-consultants/ as it was recorded on August 11, 2022, shows use of the PEBBLES® Mark on Plaintiff's ready-to-run Function Modules on LabVIEW software development platform, and related goods and

services, in which the photograph at the top also shows drag-and-drop square icons showing "PEBBLES" in cyan color text with black background and connected using lines on LabVIEW graphical development environment.

42. Attached hereto as **Exhibit 8** shows a true and correct copy of the Wayback Machine archive page of Plaintiff's website at https://batchtest.com/labview-consultants/ as it was recorded on August 11, 2022, showing Plaintiff's ready-to-run software function blocks or modules which are used in software development.

43. Attached hereto as **Exhibit 9** shows a true and correct copy of a webpage on National Instruments' ("NI") at NI.COM website which shows one of Plaintiff's PEBBLES® branded ready-to-run function module for others to quickly create their own software application, which is also offered by BatchTest, which Plaintiff and his predecessor BatchTest have offered since before any date of first use of the Infringing PEBBLE Marks by Defendant.

44. Shown below as **Image 1** shows a true and correct copy of the specimen that was filed on September 12, 2020 under the trademark application which matured into Plaintiff's '799 Registration, and it shows some of Plaintiff's PEBBLES® branded ready-to-run function blocks or modules referenced as "function modules" on one of Plaintiff's Software As A Service ("SAAS") services:



**Image 1**

45. Plaintiff's PEBBLES® branded software development tools are offered on LabVIEW and .NET software development platforms and his PEBBLES® offerings include their use with LabVIEW, C, C++, C#, Python, HTML5, Go, JavaScript, CSS, Visual Basic for Applications ("VBA") and SQL software programming languages and related Integrated Development Environments ("IDE").

**Plaintiff's Automation And Automated Testing Goods and Services**

46. The Wayback Machine archive page of Plaintiff's Website at https://batchtest.com/automated-test-equipment/ as it was recorded on August 11, 2022, shows use of the PEBBLES® Mark on Plaintiff's business in Automation, Automated testing, and related goods and services.

47. Attached hereto as **Exhibit 10** shows a true and correct copy of the Wayback Machine archive page of Plaintiff's website at https://batchtest.com/automated-test-equipment/ as it was recorded on August 11, 2022.

**Plaintiff's Pebbles® API**

48. Since much prior to any alleged date of first use of the Infringing PEBBLE Marks by Defendant, Plaintiff has offered his Pebbles® API to consumers and software developers with option and instructions on using and integrating Plaintiff's PEBBLES Goods & Services, or consumers' goods and services, to create consumers' own software and related goods and services.

49. Attached hereto as **Exhibit 11** shows a true and correct copy of Plaintiff's Website with only the confidential access keys data redacted, which shows instructions for consumers on using Plaintiff's Pebbles® API software and related Pebbles® branded SAAS services, which have been offered to consumers since before any alleged date of first use of the Infringing PEBBLE Marks by Defendant.

**Plaintiff's Pebbles® Software And SAAS Incorporating Use Of Spreadsheets**

50. Since much prior to any date of first use of the Infringing PEBBLE Marks by Defendant, Plaintiff's PEBBLES Goods & Services incorporated use of spreadsheets along with ready-to-run functional blocks, and related software development tools for consumers to create their own software and related goods and services, including SAAS services, as also shown in **Image 1** above.

51. Attached hereto as **Exhibit 12** shows a true and correct copy of Plaintiff's Website which shows some of Plaintiff's PEBBLES Goods & Services incorporating use of spreadsheets in creation and management of consumer's software and related goods and services, and one of Plaintiff's related

Pebbles® branded SAAS services, all of which have been offered to consumers since before any alleged date of first use of the Infringing PEBBLE Marks by Defendant.

**Defendant's Trademark Applications**

52. On or about November 21, 2022, Defendant filed U.S. Trademark Application Nos. 97685703 (the "'703 Application") under Section 1(a) to register the standard character "PEBBLE STREAM" mark based on Defendant's alleged use of the said mark in commerce.

53. Attached hereto as **Exhibit 13** shows a true and correct copy of the publicly available TSDR records for the '703 Application.

54. The term "PEBBLE" is the dominant portion of the standard-character PEBBLE STREAM mark.

55. On the '703 Application, Defendant has claimed its alleged First use of the "PEBLE STREAM mark as June 18, 2019 on Class 9 and 42 goods and services.

56. On the '703 Application, Defendant has claimed its alleged First use of the "PEBLE STREAM mark in the United States commerce as August 16, 2019 on Class 9 and 42 goods and services.

57. The '703 Application recites the following goods and services:

> **Class 9:**
> "Downloadable software for deploying enterprise-scale analytical and business logic on multiple application platforms, including the web, server, cloud, and mobile phones applications utilizing spreadsheets"
>
> **Class 42:**
> "Software as a service (SAAS) services featuring software for deploying enterprise scale analytical and business logic on multiple application platforms, including the web, server, cloud, and mobile phones utilizing spreadsheets"

(The Class 9 and 42 goods and services recited on the '703 Applications are referred to as the "'703 Goods & Services" in this Complaint.)

58. In addition to the '703 Goods & Services, Defendant is also using the Infringing PEBBLE Marks on software development tools, software for API and related services, SAAS services, and software for automation of tasks and testing (collectively referred to as "Defendant's Goods & Services", which includes the '703 Goods & Services).

59. On or about November 21, 2022, Defendant had also filed an alleged specimen along with the

'703 Application (the "'703 Specimen").

60. A true and correct copy of the '703 Specimen is shown in **Exhibit 13**.

61. The USPTO has notified Plaintiff that his PEBBLE™ Applications maybe refused registration due to a likelihood of confusion with the mark in the '703 Application.

62. Defendant's filing of the '703 Application was not authorized by Plaintiff or his predecessor.

63. On information and belief, Defendant was aware of Plaintiff's PEBBLES® branded goods and services prior to its filing of the '703 Application.

64. Defendant should have reasonably known Plaintiff's PEBBLES® branded goods and services prior to its filing of the 703 Application because Plaintiff's trademark applications which matured into the PEBBLES® Registrations were published on the Official Trademark Gazette on August 11, 2021.

65. On information and belief, Defendant did not use any of the Infringing PEBBLE Marks on any good or service in the United States commerce before November 21, 2022.

66. On information and belief, Defendant did not use the mark recited on the '703 Application on all of the goods and services as recited on the '703 Application in the United States commerce on November 21, 2022.

67. Since the PEBBLES® Mark was registered on the Principal Register on November 16, 2021, which was prior to the November 21, 2022 filing date of the '703 Application, Defendant knew of, or had a constructive notice of, Plaintiff's PEBBLES® branded goods and services before it filed the '703 Application alleging its use of the PEBBLE STREAM mark in the United States commerce.

**Plaintiff's Cease And Desist Letter To Defendant**

68. Defendant has been aware of Plaintiff's PEBBLES® branded goods and services since at least September 6, 2023, if not since much prior to it.

69. On or about September 6, 2023, Plaintiff first learned of Defendant's '703 Application and on the same day Plaintiff sent a Cease-and-Desist Letter to Defendant via email and USPS Certified Mail.

70. Attached hereto as **Exhibit 14** shows a true and correct copy of the Cease-And-Desist Letter.

71. On or about September 6, 2023, Defendant acknowledged its receipt of the Cease-And-Desist Letter.

72. The Cease-and-Desist Letter notified Defendant about Plaintiff's PEBBLES® Registrations and

Plaintiff's PEBBLES® branded goods and services and demanded that Defendant immediately stop infringing on Plaintiff's PEBBLES® Mark.

73. The Cease-and-Desist Letter also clarified to Defendant that Plaintiff's PEBBLES® Mark were also used on Plaintiff's software development tools for others in connection with spreadsheets.

74. The Cease-and-Desist Letter also notified Defendant that Plaintiff would oppose the '703 Application if Defendant did not voluntarily abandon it.

75. On or about September 20, 2023, Defendant notified Plaintiff that it would review the Cease-And-Desist Letter and respond back in due course but after that it ignored the Cease-And-Desist Letter altogether without any response from Defendant.

**Plaintiff's Trademark Opposition Proceeding against Defendant**

76. The '703 Application was published for opposition in the *Trademark Official Gazette* on October 10, 2023.

77. On October 19, 2023, Plaintiff timely filed request with the Trademark Trial and Appeal Board ("TTAB") of the USPTO for an extension of time to oppose the '703 Application, and the TTAB granted extension of time for Plaintiff to oppose the '703 Application through and including December 9, 2023.

78. On December 4, 2023, Plaintiff filed Notice of Opposition No. 91288564 (the "'564 Notice") with the TTAB to oppose the '703 Application (the "'564 Opposition"), reciting his sole claim of priority and a likelihood of confusion between his PEBBLES® Mark and the PEBBLE STREAM mark as recited on the '703 Application, when used on the parties' respective identical or very similar goods and services.

79. Attached hereto as **Exhibit 15** shows a true and correct copy of notice of the ''564 Notice.

80. On January 12, 2024, Defendant filed its Answer (the "'564 Answer") in response to the '564 Opposition.

81. Attached hereto as **Exhibit 16** shows a true and correct copy of the '564 Answer.

82. Defendant's Affirmative Defenses in the '564 Answer attacks Plaintiff's standing to bring the '564 Opposition.

83. Plaintiff is the Opposer, and Defendant is the Applicant in the '564 Opposition.

84. The '564 Opposition and the current case involve the parties' same respective goods and services.

85. Plaintiff's likelihood of confusion claim in the current lawsuit is substantively identical to

Plaintiff's likelihood of confusion claim in the '564 Opposition.

86. The '564 Opposition is currently pending at the TTAB.

87. The parties have only exchanged preliminary written discovery so far in the '564 Opposition, and no documents have been produced by Defendant in the said opposition proceeding.

88. To date, none of the Infringing PEBBLE Marks have been registered by the USPTO.

**Plaintiff's Priority Of Use**

89. Plaintiff and his predecessor have continuously used the PEBBLES® Mark on goods as recited on the PEBBLES® Registrations since prior to any date of first use of the Infringing PEBBLE Marks that Defendant can establish.

90. Plaintiff and his predecessor have also continuously used the PEBBLE-Formative Marks on the PEBBLES Goods & Services since prior to any date of first use of the Infringing PEBBLE Marks by Defendant.

91. January 8, 2020 is the date of constructive use of Plaintiff's PEBBLES® Mark, as shown on his PEBBLES® Registrations, which is before any date of constructive use of the PEBBLE STREAM mark Defendant can establish, and which is also superior to any date of alleged first use of the Infringing PEBBLE Marks by Defendant.

92. Publicly available webpage shown in **Exhibit 9** also shows that Plaintiff's PEBBLES® Mark has been used since much prior to June 18, 2019 which Defendant has alleged in the '703 Application as its date of first use of the PEBBLE STREAM mark.

93. On information and belief, Defendant does not own any foreign trademark application(s) containing the term "PEBBLE" or "PEBBLES" on which Defendant can rely to claim priority based on Section 44(d) or Section 66(a).

**Parties' Marks Are Identical Or Very Similar**

94. The terms "PEBBLES" and "PEBBLE" in the Infringing PEBBLE Marks are identical or very similar to Plaintiff's standard character PEBBLES® Mark, and are likely, when applied to Defendant's Goods & Services, to cause confusion, mistake or deception among consumers within the meaning of 15 U.S.C. § 1052(d).

95. The term "PEBBLE" is also the dominant portion of the standard-character PEBBLE STREAM

mark recited on the usc-based '703 Application.

96. The terms "PEBBLES" and "PEBBLE" in the Infringing PEBBLE Marks respectively have identical and singular spelling as Plaintiff's standard character PEBBLES® Mark.

**Parties' Goods And Services Are Identical Or Very Similar**

97. The '703 Specimen shows Defendant's purported use of "PEBBLE" mark in connection with goods and services recited on the '703 Application.

98. On information and belief, Defendant is the registrant of the internet domain name at PEBBLESTREAM.COM (the "PS-Website").

**Defendant's Use Of The Infringing PEBBLE Marks On Software Development Tools**

99. Attached hereto as **Exhibit 17** shows a true and correct printout of the PS-Website page at https://docs.pebblestream.com/docs/getting-started (the "Infringing Documentation").

100.    The top of the Infringing Documentation shows Defendant's claim that "We believe that Pebblers are bonafide software developers, and the spreadsheet is the perfect Integrated Development Environment (IDE)!"

101.    The "Philosophy" subsection in the Infringing Documentation shows Defendant's claim that "Developers can embed and run pebbles in their applications using the Pebble Stream runtime."

102.    The "Methodology" subsection in the Infringing Documentation also shows Defendant's claim that "Software developers can embed Pebbles in cloud applications using the Pebble Stream runtime. The Pebble Stream runtime is available in several languages, including Java, Groovy, Scala, Clojure, C, C++, C#, and JavaScript."

103.    The Infringing Document contains numerous references of "software developers."

104.    Page 7 of the '703 Specimen states that "Pebble stream technology automates the conversion of Excel models into cloud executable software called Pebbles."

105.    Page 7 of the '703 Specimen also states that "Developers run Pebbles in their applications using the Pebble Stream runtime."

106.    Page 7 of the '703 Specimen describes Defendant's purported use of the Infringing PEBBLE Marks in connection with tools for software developers.

107.    Page 7 and 10 of the '703 Specimen describes Defendant's purported use of the Infringing

PEBBLE Marks in connection with tools for software development of others' software.

108.     Page 10 of the '703 Specimen states "Run Pebbles Using the Pebble Stream Runtime."

109.     Page 10 of the '703 Specimen describes Defendant's purported use of the Infringing PEBBLES Marks in connection with tools for software development of others' goods and services.

110.     Pages 10 and 11 of the '703 Specimen describes Defendant's purported use of the Infringing PEBBLE Marks on software development in various programming languages.

111.     The details alleged above show that Plaintiff's and Defendants' software development related goods and services are identical or very similar.

**Defendant's Use Of The Infringing PEBBLE Marks In Software For API**

112.     Attached hereto as **Exhibit 18** shows true and correct copies of printouts of the PS-Website pages at https://docs.pebblestream.com/docs/runtime-api and https://docs.pebblestream.com/docs/javascript (the "Infringing-API").

113.     The Infringing-API and the '703 Specimen show that Defendant's API for consumers' use to facilitate creation of consumers' own software is identical or very similar to Plaintiff's PEBBLES® API which is meant to facilitate consumers' creation of their own software, which is also used by software developer consumers.

**Defendant's Use Of The Infringing PEBBLE Marks On Software Incorporating Use Of Spreadsheets**

114.     The goods and services recited on the use-based '703 Application show that Defendant is using the Infringing PEBBLE Marks on software development tools for others which incorporate use of spreadsheets to allow consumers to specify formula and functionality logic to create their own software.

115.     Various pages of the '703 Specimen, including its Page 7, also shows a figure comprising of three icons named "spreadsheet", "pebble", and "runtime."

116.     The PS-Website, the Infringing Documentation and the '703 Specimen show that Defendant's Goods & Services for consumers to design and develop their own software incorporating use of spreadsheets are identical or very similar to Plaintiff's PEBBLES® branded tools for consumers to use spreadsheet in designing and developing consumers' own software and related goods and services, and for incorporation of consumers' formula and functional logic in a custom software application.

**Defendant's Use Of The Infringing PEBBLE Marks On Ready-To-Run Software Functions Or Modules**

117.     Defendant is purportedly using the Infringing PEBBLE Marks on ready-to-run software functions which are offered to consumers, which require minimal or no programming knowledge for its users.

118.     Page 9 of the '703 Specimen shows that Defendant intends to use, or Defendant is purportedly using the Infringing PEBBLE Marks on software for which "No VBA knowledge is needed to apply directives."

119.     Page 11 of the '703 Specimen describes Defendant's purported use of the Infringing PEBBLE Marks on software that is described as "The Pebble Stream runtime is designed to be embedded in mission critical applications."

120.     The PS-Website and the '703 Specimen show that Defendant's ready-to-run software functions for consumers' use in creation of consumers' own software are not only identical to Plaintiff's PEBBLES Goods & services, but that they are also purportedly "embedded" into consumers' software, which is identical to the use of Plaintiff's PEBBLES® branded ready-to-run software modules or functions which are embedded in consumers' software applications and require a runtime software for their execution.

**Defendant's Use Of The Infringing PEBBLE Marks In Automation And Automated Testing**

121.     Attached hereto as **Exhibit 19** shows true and correct copies of printouts of the PS-Website pages at https://docs.pebblestream.com/recipes (the "Infringing-Automated-Testing").

122.     Page 7 of the '703 Specimen states that "Pebble stream technology automates the conversion of Excel models into cloud executable software called Pebbles."

123.     Page 12 of the '703 Specimen describes Defendant's intended use or purported use of the Infringing PEBBLE Marks and "PEBBLE STREAM TECHNOLOGY" mark on software for test systems involving "unit test", "automated test harness", test input data", "stress testing", and "performance testing."

124.     The Infringing-Automated-Testing and the '703 Specimen show that Defendant's Goods

& Services for consumers to automate testing of software tasks using "recipes" are identical or very similar to Plaintiff's PEBBLES® branded automation software tools for consumers to automate their own testing related tasks using recipes.

125.    The details alleged above show that Plaintiff's and Defendants' Automation and Automated Testing related goods and services are identical or very similar.

**Defendant's Statements In Its Trademark Application**

126.    Several pages of the '703 Specimen show that Defendant is interchangeably switching between the marks "PEBBLES", "PEBBLE", and "PEBBLE STREAM" to mean the same mark.

127.    Defendant made an allegedly verified statement on the '703 Application that "[t]he mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application."

128.    Defendant also made an allegedly verified statement on the '703 Application that "[t]he specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date."

**Parties' Channels Of Trade Are The Same**

129.    Both parties respective goods and services are sold, advertised and directed at the same marketing and trade channels, or are in the natural scope of expansion of Plaintiff's PEBBLES® branded goods and services; both parties offer their goods and services online and over telephone, and both parties' services also include SAAS services which are offered over the internet to consumers all over the United States.

**Parties' Consumers Are Also The Same**

130.    The consumers of Defendant's Goods & Services are about the same as the consumers of Plaintiff's PEBBLES Goods & Services; consumers of both parties' seek goods and services which are:

    a.    Software, software development tools, and related services for use by others and for creating others' software;

    b.    Software, software tools, and related services for use by consumers for automation and for automated testing;

    c.    SAAS and software for API and related services to facilitate consumers' creation of their

own software;

      d.  Ready-to-run software modules for use by consumers in creating their own software; and

      e.  Documentation related to software development of consumers' own software.

131.      Both parties also offer their enterprise-level and network-deployable respective goods and services to consumers which include large or very large corporations.

**Defendant's Knowing, Continued, And Deliberate Disregard of Plaintiff's Trademark Rights**

132.      Plaintiff and Defendant are not affiliated with one another.

133.      To date, and despite multiple opportunities to do so, Defendant has not provided Plaintiff with any evidence of alleged use of any of the Infringing PEBBLE Marks that predates the first date of constructive use of the PEBBLES® Mark recited on the PEBBLES® Registrations.

134.      To date, Plaintiff has been unable to locate any evidence showing Defendant's use of the Infringing PEBBLE Marks predating Plaintiff's use of the PEBBLES® Mark in the United States.

135.      As of the filing of this Complaint, the PS-Website continues to use the terms "PEBBLE", "PEBBLES", and "PEBBLE STREAM" in connection with its advertised goods and services which infringe upon Patel's-Marks.

136.      Despite the parties' conflicting respective trademarks, and despite uncontroverted evidence that Plaintiff is the senior user of the PEBBLES® Mark and the PEBBLE-Formative Marks, Defendant continues to use the identical Infringing PEBBLE Marks, and continues to prosecute the '564 Opposition.

137.      Despite having the knowledge of Plaintiff's PEBBLES® Mark since at least June 21, 2023 or much earlier, Defendant has been knowingly expanding their unauthorized use of the Infringing PEBBLE Marks and several other marks bearing the term "PEBBLE" in commerce on goods and services which are identical, very similar, or sufficiently related to Plaintiff's PEBBLES Goods & Services.

138.      Through its attorney, Defendant has also blatantly refused on February 7, 2024 to stop use of the Infringing PEBBLE Marks in the United States commerce without a Court order.

139.      Plaintiff and/or his predecessor have never transferred his ownership of the PEBBLES® Mark to Defendant.

140.      Plaintiff and/or his predecessor have never authorized Defendant to use the Infringing

PEBBLE Marks.

141.    Such unauthorized use of the Infringing PEBBLE Marks by Defendant is willful and deliberate, and calculated to harm Plaintiff's business and his valuable PEBBLES® Mark on identical or very similar goods and services.

142.    To date, Defendant has refused to stop its willful infringement and expansion of use of the Infringing PEBBLE Marks into Plaintiff's Industry and Defendant must be stopped.

143.    Defendant's use of the Infringing PEBBLE Marks on goods and services identical or very similar to Plaintiff's PEBBLES Goods & Services, while also attacking Plaintiff's standing to bring a legal action in the '564 Opposition which relates to Plaintiff's PEBBLES® Mark , establishes an actual, immediate, real, and substantial controversy between the parties having adverse legal interests regarding the '799 Registration and ownership of the PEBBLES® mark as recited on the '799 Registration, and the PEBBLE Formative Marks.

144.    Plaintiff made several attempts to resolve this dispute without involving this Court and also provided extra time to Defendant per its attorney's request, however Plaintiff's such attempts have failed and left no other choice for Plaintiff but to file this lawsuit.

## CLAIM I

### (Federal Trademark Infringement – 15 U.S.C. § 1114(1) (Lanham Act 15 U.S.C. § 32(a))

145.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as if fully set forth in detail herein.

146.    Plaintiff is the rightful and sole owner of the PEBBLES® Registrations.

147.    The PEBBLES® Registrations are presumed valid and enforceable as a matter of law.

148.    Pursuant to 15 U.S.C. § 1057(b), the certificates of registration for the PEBBLES® Mark are *prima facie* evidence of the validity of the PEBBLES® Registrations.

149.    By virtue of his ownership of the PEBBLES® Registrations, Plaintiff has the exclusive right to use the PEBBLES® Mark in commerce on and in connection with the goods and services recited on the PEBBLES® Registrations.

150.    Plaintiff is the senior user of the PEBBLES® Mark on the goods and services recited on the PEBBLES® Registrations.

151.     Plaintiff has continuously used the PEBBLES® Mark in the United States commerce since prior to any first date of use of the Infringing PEBBLE Marks which Defendant can establish.

152.     Plaintiff has not authorized Defendant to use the PEBBLES® Mark or the Infringing PEBBLE Marks or any mark containing the term PEBBLE or PEBBLES.

153.     A likelihood of confusion exists between Plaintiff's use of the PEBBLES® Mark and Defendant's use of the Infringing PEBBLE Marks based on similarity of the parties' respective marks, goods and services, and target consumers because:

   a.     The terms PEBBLE or PEBBLES in the Infringing PEBBLE Marks have the same spelling as, or singular spelling of Plaintiff's standard character PEBBLES® Mark; the parties' marks are identical or very similar;

   b.     Defendant's Goods & Services in connection with the Infringing PEBBLE Marks are identical or very similar to Plaintiff's goods and services as recited on the PEBBLES® Registrations;

   c.     Defendant's Goods & Services in connection with the Infringing PEBBLE Marks would be sold, advertised and directed at the same marketing and trade channels, or are in the natural scope of expansion of Plaintiff's PEBBLES® branded goods and services; and

   d.     The consumers for Defendant's Goods & Services in connection with the Infringing PEBBLE Marks are about the same as the consumers for Plaintiff's PEBBLES® branded goods and services; the parties' respective goods and services are in the field of software development tools and SAAS services for consumers, and also used by consumers for automation of testing.

154.     The Infringing PEBBLE Marks so resemble Plaintiff's PEBBLES® Mark, and the goods are related such that the public is likely to view the Infringing PEBBLE Marks as denoting an affiliation, connection, or association with Plaintiff and as to the origin, sponsorship, and approval of Defendant's Goods & Services by Plaintiff, when that is not the case, thereby it will damage Plaintiff.

155.     The USPTO has indicated that it may refuse registration of Plaintiff's PEBBLE™ Applications due to a likelihood of confusion with the mark recited on Defendant's '703 Application.

156.     Due to a likelihood of confusion as alleged above, and given Plaintiff's position as the uncontroverted senior user and registrant of the PEBBLES® Mark, Defendant's unauthorized use of the Infringing PEBBLE Marks in commerce, as alleged above, is likely to confuse, cause mistake, or to

deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's Goods & Services, and is likely to cause consumers to believe, contrary to fact, that Defendant's Goods & Services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant's Goods & Services are, in some way, affiliated with or sponsored by Plaintiff.

157.    Despite having the knowledge of Plaintiff's PEBBLES® branded goods and services since at least as early as September 6, 2023, or much earlier, Defendant has ignored Plaintiff's PEBBLES® Registrations and willfully continued to infringe upon Plaintiff's PEBBLES® Mark, and Defendant has refused to stop its above-described trademark infringement.

158.    Not only the above, Plaintiff also learned recently that Defendant has also been using the terms PEBBLE and PEBBLES to offer software API tools and software for automation of tests, in what appears to be Defendant's knowing and willful expansion of the use of the Infringing PEBBLE Marks and other marks containing the term PEBBLE or PEBBLES further into Plaintiff's Industry.

159.    Defendant's actions were and are willful, knowing, and intended to cause confusion, to cause mistake, or to deceive.

160.    Thus, in doing Defendant's acts of infringement complained of herein, Defendant has willfully and intentionally infringed Plaintiff's rights under the Trademark Laws of the United States 15 U.S.C. §§ 1114 et seq.

161.    Defendant's actions are "exceptional" within the meaning of 15 U.S.C. § 1117.

162.    As a result of Defendant's actions, Plaintiff has suffered and continues to suffer irreparable harm, which is presumed under the Trademark Modernization Act of 2020, 15 U.S.C. § 1116(a), and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

163.    Defendant's conduct will continue to both damage Plaintiff and confuse the public unless the Court enjoins it.

164.    Plaintiff has no adequate remedy at law.

165.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damage, Defendant's profits, enhanced damages, punitive damages, reasonable attorneys' fees, and costs of this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together

with prejudgment and post-judgment interest.

## CLAIM II

**(Unfair Competition and False Designation of Origin – 15 U.S.C. § 1125(a) [Lanham Act § 43(a)])**

166.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as if fully set forth in detail herein.

167.    Plaintiff is the rightful and sole owner of Patel's-Marks.

168.    Plaintiff and his predecessor-in-interest have continuously used Patel's-Marks in connection with the PEBBLES Goods and Services, including software development tools and software API tools for assisting software developers to design and create their own software applications, and for automation of tests, since prior to any date of first use of the Infringing PEBBLE Marks Defendant can establish.

169.    By virtue of his earlier use of Patel's Marks, Plaintiff also owns earlier unregistered rights in Patel's-Marks, and he is the senior user of Patel's-Marks.

170.    BatchTest has a non-exclusive non-transferable limited license to use Patel's-Marks.

171.    Plaintiff has not authorized Defendant to use Patel's-Marks, or any other mark or name incorporating the term "PEBBLES" or "PEBBLE."

172.    As alleged above, a likelihood of confusion exists between Patel's-Marks and the Infringing PEBBLE Marks.

173.    Defendant's actions were and are willful, knowing, and intended to cause confusion, to cause mistake, or to deceive.

174.    Defendant's actions are "exceptional" within the meaning of 15 U.S.C. § 1117.

175.    As a result of Defendant's actions, Plaintiff has suffered and continues to suffer irreparable harm, which is presumed under the Trademark Modernization Act of 2020, 15 U.S.C. § 1116(a), and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

176.    Defendant's conduct will continue to both damage Plaintiff and confuse the public unless the Court enjoins it.

177.    Plaintiff has no adequate remedy at law.

178.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damage, Defendant's profits, enhanced damages, punitive damages, reasonable attorneys' fees, and costs this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## CLAIM III

### (Common Law Trademark Infringement and Unfair Competition)

179.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as if fully set forth in detail herein.

180.    Plaintiff owns all rights, title, and interest in and to Patel's-Marks, including, but not limited to all registered and unregistered rights in such marks, due to Plaintiff's earlier use of Patel's-Marks in this district and elsewhere.

181.    BatchTest has a non-exclusive non-transferable limited license to use Patel's-Marks.

182.    Plaintiff has not authorized Defendant to use Patel's-Marks or any other mark or trade name incorporating the term "PEBBLES" or "PEBBLE."

183.    As alleged above, a likelihood of confusion exists between Patel's-Marks and the Infringing PEBBLE Marks.

184.    Defendant's actions, as alleged above, constitute trademark infringement and unfair competition under District of Columbia Common Law.

185.    In acting as alleged above, Defendant has been unjustly enriched in that Defendant has knowingly benefitted at the expense of Plaintiff in a manner such that allowance of Defendant to retain the benefits that it received would be unjust.

186.    Defendant's actions were and are willful, knowing, and intended to cause confusion, to cause mistake, or to deceive.

187.    Defendant's conduct has been and is causing immediate and irreparable harm and injury to Plaintiff, and to Plaintiff's goodwill and reputation.

188.    Defendant's conduct will continue to both damage Plaintiff and confuse the public unless the Court enjoins it.

189.    Plaintiff has no adequate remedy at law.

190.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages, punitive damages, reasonable attorneys' fees, and costs of the action under District of Columbia Common Law, together with prejudgment and post-judgment interest.

## CLAIM IV

### (Declaratory Relief Pursuant To 28 U.S.C. § 2201)

191.     Plaintiff re-alleges and incorporates by reference each and every allegation contained above as if fully set forth in detail herein.

192.     This Court has the power under 15 U.S.C. § 1119 (Lanham Act § 37) and 28 U.S.C. § 2201 to determine Defendant's right to registration of the PEBBLE STREAM mark or any other mark containing the term PEBBLE or PEBBLES.

193.     Plaintiff is the rightful and sole owner of the PEBBLES® Registrations.

194.     Pursuant to 15 U.S.C. § 1057(b), the certificates of registration for the PEBBLES® Mark are *prima facie* evidence of the validity of the PEBBLES® Registrations.

195.     Pursuant to 15 U.S.C. § 1057(b), the certificates of registration for the PEBBLES® Mark are also prima facie evidence of Plaintiff's exclusive right to use the PEBBLES® Mark in commerce on and in connection with the goods and services specified in the certificates of the PEBBLES® Registrations.

196.     Plaintiff is also the owner of the PEBBLE-Formative Marks and he has superior rights due to his and his predecessor's senior use of the PEBBLE-Formative Marks in commerce.

197.     BatchTest has a limited non-exclusive non-transferable license to use Patel's-Marks.

198.     Defendant's use of the Infringing PEBBLE Marks on the '703 Goods & Services and software development tools, including software API tools, and on automated testing tools, while also attacking Plaintiff's standing to bring a legal action in the '564 Opposition which relates to Plaintiff's PEBBLES® Mark , establishes an actual, immediate, real, and substantial controversy between the parties having adverse legal interests regarding the '799 Registration and ownership of the PEBBLES® mark as recited on the '799 Registration, and his superior unregistered rights in marks containing the term PEBBLE or PEBBLES on the PEBBLES Goods & Services.

199.     The standard character PEBBLE STREAM mark, the subject of the '703 Application, so resemble Plaintiff's PEBBLES® Mark and the PEBBLE-Formative marks as to be likely to cause confusion, or to cause mistake, or to deceive. Registration of the '703 Application should therefore be refused under 15 U.S.C. § 1052(d).

200.     The USPTO has indicated that it may refuse registration of Plaintiff's PEBBLE™ Applications due to a likelihood of confusion with the mark recited on Defendant's '703 Application.

201.     For the reasons set forth above, Plaintiff is entitled to a declaration that:

a.   Plaintiff is the senior user of the PEBBLES® Mark;

b.   Plaintiff has not abandoned the PEBBLES® Mark;

c.   The PEBBLES® Registrations are valid and enforceable;

d.   The assignment of the PEBBLES® Registration to Plaintiff was valid;

e.   Plaintiff has the exclusive right to use the PEBBLES® Mark and any PEBBLE-Formative Marks in commerce on and in connection with the goods and services recited in the PEBBLES® Registrations;

f.   Plaintiff also has the exclusive right to use the PEBBLE-Formative Marks in commerce on and in connection with PEBBLES Goods & Services;

g.   Defendant has no ownership interest in any mark comprising of the term PEBBLE or PEBBLES or PEBBLE STREAM for use in connection with any goods and services recited on the '704 Application, software development tools and software for automated testing;

h.   Defendant has infringed on Plaintiff's PEBBLES® Mark and the PEBBLE-Formative marks;

i.   There is a likelihood of confusion between Plaintiff's PEBBLES® Mark and the PEBBLE STREAM mark; and

j.   There is a likelihood of confusion between Patel's-Marks and the Infringing PEBBLE Marks;

202.     Further, Plaintiff has suffered and continues to suffer irreparable harm for which he is entitled to preliminary and permanent injunctive relief.

203.     Plaintiff seeks an Order directing the TTAB to refuse registration of the mark recited on the '703 Application and terminate the '564 Opposition in Plaintiff's favor with prejudice.

///

**WHEREFORE** Plaintiff prays this Honorable Court for relief as follows:

1. Enter judgment in favor of Plaintiff on Claims for Relief I-1V, inclusive;

2. Declare Plaintiff the senior user of the PEBBLES® Mark;

3. Declare the PEBBLES® Registrations valid and enforceable;

4. Declare that Plaintiff has the exclusive right to use Patel's-Marks and any mark or trade name incorporating the term PEBBLES or PEBBLE in commerce on and in connection with the PEBBLES Goods & Services, including the goods and services recited in the PEBBLES® Registrations;

5. An Order directing Defendant to recall its unlawful products or materials at its own expense, terminate any and all contracts and licenses of any and all PEBBLE, PEBBLES, and/or PEBBLE STREAM branded goods and services, remove any and all websites, app store listings, displays, advertisement, and marketing material containing or referencing the Infringing PEBBLE Marks;

6. Award Plaintiff his actual damages against Defendant in an amount to be determined at trial in an amount of not less than $50,000;

7. Award Plaintiff Defendant's profits, gains, and advantages derived from Defendant's aforementioned activities in an amount of not less than $100,000;

8. Declare this an "exceptional" case and award Plaintiff all of his costs and reasonable attorneys' fees in this action as authorized by 15 U.S.C. § 1117, and other applicable laws;

9. Award Plaintiff punitive and treble damages against Defendant based upon Defendant's willful and knowing infringement of Plaintiff's PEBBLES® Mark;

10. Award Plaintiff the costs of filing the '564 Opposition;

11. Award Plaintiff pre-judgment and post-judgment interest at the maximum legal rate and costs;

12. Award Plaintiff an accounting for damages and for all profits, together with those profits Plaintiff lost, due to Defendant's misconduct alleged herein;

13. Preliminarily and permanently enjoin Defendant, and their predecessors, successors, assigns, divisions, subsidiaries, and joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, employees, agents, attorneys, representatives, and those acting in privity or concert with them, or on their behalf, from:

    a.   Using the mark PEBBLES, PEBBLE, PEBBLE STREAM, or any trade name or mark or

internet address incorporating the term "PEBBLES" or "PEBBLE", regardless of stylization and design, in connection with goods and services recited on GSH's Applications, and goods and services in Plaintiff's Industry in the United States;

        b.    Promoting, advertising or marketing any mark incorporating the term "PEBBLES", "PEBBLE", or "PEBBLE STREAM," regardless of stylization and design, in connection with any goods and services related to or used in connection with Plaintiff's Industry, or in signage, displays, menus, letterhead, business cards, marketing materials, websites or social media in the United States;

        c.    Seeking to register any mark incorporating the term "PEBBLES", "PEBBLE" or "PEBBLE STREAM", regardless of stylization and design, in connection with any goods and Services related to or used in connection with Plaintiff's Industry in the United States;

        d.    Opposing Plaintiff's Applications to register, or seeking to cancel Plaintiff's registrations, for any mark incorporating the term PEBBLES, PEBBLE, or PEBBLE STREAM;

14. Order the TTAB to affirm the validity of the PEBBLES® Registrations;

15. Order the TTAB to void The '703 Application and terminate the '564 Opposition in Plaintiff's favor with prejudice; and

16. Award such other and further relief as the Court may deem just and equitable.

///

Dated: August 22, 2024

Respectfully submitted,

By: _____

DINESH PATEL (Plaintiff)

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable herein.

Dated: August 22, 2024

Respectfully submitted,

By: _____

DINESH PATEL (Plaintiff)

Exhibit 1

Generated on: This page was generated by TSDR on 2024-08-21 19:23:32 EDT

Mark: PEBBLES

# PEBBLES

| | | | |
|---|---|---|---|
| US Serial Number: | 88983079 | Application Filing Date: | Jan. 08, 2020 |
| US Registration Number: | 6557978 | Registration Date: | Nov. 16, 2021 |
| Filed as TEAS RF: | Yes | Currently TEAS RF: | Yes |
| Register: | Principal | | |
| Mark Type: | Trademark | | |

TM5 Common Status Descriptor:

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

Status: Registered. The registration date is used to determine when post-registration maintenance documents are due.

Status Date: Nov. 16, 2021

Publication Date: Aug. 31, 2021

## Mark Information

| | |
|---|---|
| Mark Literal Elements: | PEBBLES |
| Standard Character Claim: | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| Mark Drawing Type: | 4 - STANDARD CHARACTER MARK |

## Related Properties Information

Child Of: 88751781

## Goods and Services

Note:
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

For: Downloadable computer software for developing other computer software and graphical user interface; Downloadable software and downloadable software utility for creating graphical user interface; Downloadable software for assisting developers in creating program code for use in multiple application software, and user's manuals and instructional manuals sold as a unit therewith; Downloadable software components, namely, software in the nature of controls and indicators for creating Human-Machine-Interface, and user's manuals and instructional manuals sold as a unit therewith

| | | | |
|---|---|---|---|
| International Class(es): | 009 - Primary Class | U.S Class(es): | 021, 023, 026, 036, 038 |
| Class Status: | ACTIVE | | |
| Basis: | 1(a) | | |
| First Use: | Feb. 11, 2015 | Use in Commerce: | Feb. 11, 2015 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| Filed Use: | Yes | Currently Use: | Yes |
| Filed ITU: | No | Currently ITU: | No |
| Filed 44D: | No | Currently 44D: | No |

| | | | |
|---|---|---|---|
| **Filed 44E:** No | | **Currently 44E:** No | |
| **Filed 66A:** No | | **Currently 66A:** No | |
| **Filed No Basis:** No | | **Currently No Basis:** No | |

## Current Owner(s) Information

**Owner Name:** PATEL, DINESH

**Owner Address:** 2118 WALSH AVE
SUITE 240
SANTA CLARA, CALIFORNIA UNITED STATES 95050

**Legal Entity Type:** INDIVIDUAL        **Citizenship:** UNITED STATES

## Attorney/Correspondence Information

**Attorney of Record - None**

**Correspondent**

**Correspondent Name/Address:** Patel, Dinesh
2118 Walsh Ave
Suite 240
Santa Clara, CALIFORNIA UNITED STATES 95050

**Phone:** 408-454-8378

**Correspondent e-mail:** btcroot@gmail.com        **Correspondent e-mail Authorized:** Yes

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jun. 27, 2024 | REGISTERED - SEC. 7 REQUEST ABANDONED | |
| Sep. 14, 2022 | POST REGISTRATION ACTION MAILED - SEC. 7 | |
| Sep. 07, 2022 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | |
| Jun. 23, 2022 | AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP | |
| Apr. 04, 2022 | TEAS SECTION 7 REQUEST RECEIVED | |
| Nov. 16, 2021 | REGISTERED-PRINCIPAL REGISTER | |
| Oct. 04, 2021 | DIVISIONAL PROCESSING COMPLETE | |
| Jun. 16, 2021 | DIVISIONAL REQUEST RECEIVED | |
| Oct. 01, 2021 | WITHDRAWN FROM ISSUE - SENIOR ATTORNEY REQUEST | |
| Sep. 07, 2021 | CASE ASSIGNED TO INTENT TO USE PARALEGAL | |
| Aug. 31, 2021 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Aug. 31, 2021 | PUBLISHED FOR OPPOSITION | |
| Aug. 11, 2021 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Jul. 27, 2021 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Jul. 22, 2021 | SUSPENSION CHECKED - TO ATTORNEY FOR ACTION | |
| Jul. 20, 2021 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| Jul. 20, 2021 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Jul. 20, 2021 | ASSIGNED TO LIE | |
| Jun. 28, 2021 | TEAS RESPONSE TO SUSPENSION INQUIRY RECEIVED | |
| Jun. 16, 2021 | TEAS REQUEST TO DIVIDE RECEIVED | |
| Sep. 28, 2020 | NOTIFICATION OF LETTER OF SUSPENSION E-MAILED | |
| Sep. 28, 2020 | LETTER OF SUSPENSION E-MAILED | |
| Sep. 28, 2020 | SUSPENSION LETTER WRITTEN | |
| Sep. 14, 2020 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| Sep. 12, 2020 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Sep. 12, 2020 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Mar. 18, 2020 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| Mar. 18, 2020 | NON-FINAL ACTION E-MAILED | |
| Mar. 18, 2020 | NON-FINAL ACTION WRITTEN | |

| | |
|---|---|
| Mar. 11, 2020 | ASSIGNED TO EXAMINER |
| Jan. 13, 2020 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED |
| Jan. 11, 2020 | NEW APPLICATION ENTERED |

## TM Staff and Location Information

TM Staff Information - None

### File Location

| | | | |
|---|---|---|---|
| Current Location: | PUBLICATION AND ISSUE SECTION | Date in Location: | Jun. 27, 2024 |

## Assignment Abstract Of Title Information

### Summary

| | | | |
|---|---|---|---|
| Total Assignments: | 1 | Registrant: | BatchTest Corporation |

### Assignment 1 of 1

| | | | |
|---|---|---|---|
| Conveyance: | ASSIGNS THE ENTIRE INTEREST | | |
| Reel/Frame: | 7560/0783 | Pages: | 2 |
| Date Recorded: | Jan. 17, 2022 | | |
| Supporting Documents: | assignment-tm-7560-0783.pdf | | |

#### Assignor

| | | | |
|---|---|---|---|
| Name: | BATCHTEST CORPORATION | Execution Date: | Jan. 14, 2022 |
| Legal Entity Type: | CORPORATION | State or Country Where Organized: | CALIFORNIA |
| DBA, AKA, TA, Formerly: | FORMERLY ICWARE SYSTEMS, INC. | | |

#### Assignee

| | | | |
|---|---|---|---|
| Name: | PATEL, DINESH | Citizenship: | UNITED STATES |
| Legal Entity Type: | INDIVIDUAL | | |
| Address: | 2118 WALSH AVE SUITE 240 SANTA CLARA, CALIFORNIA 95050 | | |

#### Correspondent

| | |
|---|---|
| Correspondent Name: | PATEL DINESH |
| Correspondent Address: | 2118 WALSH AVE SUITE 240 SANTA CLARA, CA 95050 |

Domestic Representative - Not Found

## Proceedings

### Summary

| | |
|---|---|
| Number of Proceedings: | 5 |

### Type of Proceeding: Opposition

| | | | |
|---|---|---|---|
| Proceeding Number: | 91288564 | Filing Date: | Dec 04, 2023 |
| Status: | Pending | Status Date: | Dec 04, 2023 |
| Interlocutory Attorney: | TASHIA A BUNCH | | |

#### Defendant

| | |
|---|---|
| Name: | Georgetown Software House, Inc. |
| Correspondent Address: | DARRIN A. AUITO HEA LAW PLLC 8000 TOWERS CRESCENT DRIVE, 13TH FLOOR MCLEAN VA UNITED STATES , 22182 |

| | |
|---|---|
| Correspondent e-mail: | darrin@hea-ip.com , trademarks@hea-ip.com , usptomail@hea-ip.com |

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLE STREAM | | 97685703 | |

**Plaintiff(s)**

| | |
|---|---|
| Name: | Dinesh Patel |
| Correspondent Address: | DINESH PATEL<br>2118 WALSH AVE, SUITE 240<br>SANTA CLARA CA UNITED STATES , 95050 |
| Correspondent e-mail: | btcroot@gmail.com |

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLES | | 88983079 | 6557978 |
| PEBBLES | | 88751781 | 6557799 |

**Prosecution History**

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 4 | ANSWER | Jan 12, 2024 | |
| 3 | INSTITUTED | Dec 04, 2023 | |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Dec 04, 2023 | Jan 13, 2024 |
| 1 | FILED AND FEE | Dec 04, 2023 | |

---

**Type of Proceeding: Opposition**

| | | | |
|---|---|---|---|
| Proceeding Number: | 91288025 | Filing Date: | Nov 02, 2023 |
| Status: | Suspended | Status Date: | May 30, 2024 |
| Interlocutory Attorney: | REBECCA J STEMPIEN_COYLE | | |

**Defendant**

| | |
|---|---|
| Name: | PAL USA, Inc. |
| Correspondent Address: | KIRSTIN M JAHN<br>JAHN & ASSOCIATES LLC<br>1942 BROADWAY SUITE 314<br>BOULDER CO UNITED STATES , 80302 |
| Correspondent e-mail: | kirstin@jahnlaw.com , tmadmin@jahnlaw.com |

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLE | | 90730274 | |
| PEBBLE POS | | 90730279 | |

**Plaintiff(s)**

| | |
|---|---|
| Name: | Dinesh Patel |
| Correspondent Address: | DINESH PATEL<br>2118 WALSH AVE, SUITE 240<br>SANTA CLARA CA UNITED STATES , 95050 |
| Correspondent e-mail: | btcroot@gmail.com |

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLES | | 88983079 | 6557978 |
| PEBBLES | | 88751781 | 6557799 |

**Prosecution History**

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|

| 16 | SUSP PEND DISP OF CIVIL ACTION | Aug 01, 2024 |
| 15 | P REPLY IN SUPPORT OF MOTION | Jun 06, 2024 |
| 14 | SUSP PEND DISP OF OUTSTNDNG MOT | May 30, 2024 |
| 13 | D OPP/RESP TO MOTION | May 30, 2024 |
| 12 | P MOT TO SUSP PEND DISP CIV ACTION | May 10, 2024 |
| 11 | AMENDED COUNTERCLAIM | May 07, 2024 |
| 10 | PROCEEDINGS RESUMED | Apr 16, 2024 |
| 9 | P REPLY IN SUPPORT OF MOTION | Feb 19, 2024 |
| 8 | D OPP/RESP TO MOTION | Feb 07, 2024 |
| 7 | SUSP PEND DISP OF OUTSTNDNG MOT | Jan 25, 2024 |
| 6 | P MOT TO DISMISS COUNTERCLAIM: FRCP 12(B) | Jan 18, 2024 |
| 5 | TRIAL DATES RESET | Dec 19, 2023 |
| 4 | ANSWER AND COUNTERCLAIM ( FFF) | Dec 11, 2023 |
| 3 | INSTITUTED | Nov 02, 2023 |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Nov 02, 2023 | Dec 12, 2023 |
| 1 | FILED AND FEE | Nov 02, 2023 |

## Type of Proceeding: Opposition

| | | | |
|---|---|---|---|
| Proceeding Number: | 91286182 | Filing Date: | Jul 20, 2023 |
| Status: | Suspended | Status Date: | Apr 08, 2024 |
| Interlocutory Attorney: | REBECCA J STEMPIEN_COYLE | | |

### Defendant

Name: PAL USA, Inc.

Correspondent Address: KIRSTIN M JAHN
JAHN & ASSOCIATES LLC
1942 BROADWAY, SUITE 314
BOULDER CO UNITED STATES , 80302

Correspondent e-mail: kirstin@jahnlaw.com , tmadmin@jahnlaw.com

Associated marks

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLE STAY | | 90730731 | |

### Plaintiff(s)

Name: Dinesh Patel

Correspondent Address: DINESH PATEL
2118 WALSH AVE, SUITE 240
SANTA CLARA CA UNITED STATES , 95050

Correspondent e-mail: btcroot@gmail.com

Associated marks

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLES | | 88983079 | 6557978 |
| PEBBLES | | 88751781 | 6557799 |

### Prosecution History

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 18 | SUSP PEND DISP OF CIVIL ACTION | Jul 18, 2024 | |
| 17 | P REPLY IN SUPPORT OF MOTION | May 18, 2024 | |
| 16 | P REPLY IN SUPPORT OF MOTION | May 10, 2024 | |
| 15 | D OPP/RESP TO MOTION | Apr 28, 2024 | |
| 14 | SUSP PEND DISP OF OUTSTNDNG MOT | Apr 24, 2024 | |
| 13 | D OPP/RESP TO MOTION | Apr 22, 2024 | |
| 12 | P MOT TO COMPEL DISCOVERY | Apr 08, 2024 | |
| 11 | P MOT TO SUSP PEND DISP CIV ACTION | Apr 04, 2024 | |

| 10 | ANSWER | Jan 05, 2024 | |
| 9 | TRIAL DATES RESET | Dec 15, 2023 | |
| 8 | P REPLY IN SUPPORT OF MOTION | Oct 13, 2023 | |
| 7 | D OPP/RESP TO MOTION | Oct 05, 2023 | |
| 6 | SUSP PEND DISP OF OUTSTNDNG MOT | Sep 20, 2023 | |
| 5 | P MOT TO STRIKE | Sep 19, 2023 | |
| 4 | ANSWER | Aug 29, 2023 | |
| 3 | INSTITUTED | Jul 21, 2023 | |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Jul 21, 2023 | Aug 30, 2023 |
| 1 | FILED AND FEE | Jul 20, 2023 | |

**Type of Proceeding: Opposition**

| | | | |
|---|---|---|---|
| **Proceeding Number:** | 91277707 | **Filing Date:** | Aug 02, 2022 |
| **Status:** | Terminated | **Status Date:** | May 26, 2023 |
| **Interlocutory Attorney:** | WENDY COHEN | | |

**Defendant**

| | |
|---|---|
| **Name:** | Google LLC |
| **Correspondent Address:** | BRIAN J. FOCARINO<br>COOLEY LLP<br>500 BOYLSTON ST, 14TH FLOOR<br>BOSTON MA UNITED STATES , 02116 |
| **Correspondent e-mail:** | bfocarino@cooley.com , bhughes@cooley.com , trademarks@cooley.com |

**Associated marks**

| Mark | | Application Status | Serial Number | Registration Number |
|---|---|---|---|---|
| PEBBLE | | | 90691995 | |

**Plaintiff(s)**

| | |
|---|---|
| **Name:** | Dinesh Patel |
| **Correspondent Address:** | DINESH PATEL<br>2118 WALSH AVE, SUITE 240<br>SANTA CLARA CA UNITED STATES , 95050 |
| **Correspondent e-mail:** | btcroot@gmail.com , Batchtest_TM@batchtest.com |

**Associated marks**

| Mark | | Application Status | Serial Number | Registration Number |
|---|---|---|---|---|
| PEBBLES | | | 88983079 | 6557978 |
| PEBBLES | | | 88751781 | 6557799 |

**Prosecution History**

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 12 | TERMINATED | May 26, 2023 | |
| 11 | BD DECISION: OPP SUSTAINED | May 26, 2023 | |
| 10 | PROCEEDINGS RESUMED | Nov 17, 2022 | |
| 9 | ANSWER | Nov 14, 2022 | |
| 8 | PROCEEDINGS RESUMED | Nov 09, 2022 | |
| 7 | SUSPENDED | Nov 09, 2022 | |
| 6 | D MOT TO JOIN/SUBSTITUTE PARTY | Nov 07, 2022 | |
| 5 | SUSPENDED | Aug 30, 2022 | |
| 4 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Aug 30, 2022 | |
| 3 | INSTITUTED | Aug 03, 2022 | |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Aug 03, 2022 | Sep 12, 2022 |
| 1 | FILED AND FEE | Aug 02, 2022 | |

**Type of Proceeding: Opposition**

| | | | |
|---|---|---|---|
| **Proceeding Number:** | 91275690 | **Filing Date:** | Apr 19, 2022 |
| **Status:** | Terminated | **Status Date:** | May 26, 2023 |
| **Interlocutory Attorney:** | WENDY COHEN | | |

### Defendant

**Name:** Sidewalk Labs LLC

**Correspondent Address:** BRIAN FOCARINO
COOLEY LLP
500 BOYLSTON ST., 14TH FLOOR
BOSTON MA UNITED STATES , 02116

**Correspondent e-mail:** bfocarino@cooley.com , bhughes@cooley.com , trademarks@cooley.com

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLE | | 88489689 | |

### Plaintiff(s)

**Name:** Dinesh Patel

**Correspondent Address:** DINESH PATEL
2118 WALSH AVE. SUITE 240
SANTA CLARA CA UNITED STATES , 95050

**Correspondent e-mail:** btcroot@gmail.com , Batchtest_TM@batchtest.com

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLES | | 88751781 | 6557799 |
| PEBBLES | | 88983079 | 6557978 |

### Prosecution History

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 27 | TERMINATED | May 26, 2023 | |
| 26 | BD DECISION: OPP SUSTAINED | May 26, 2023 | |
| 25 | W/DRAW OF APPLICATION | May 19, 2023 | |
| 24 | SUSPENDED | Apr 12, 2023 | |
| 23 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Apr 12, 2023 | |
| 22 | SUSPENDED | Feb 13, 2023 | |
| 21 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Feb 13, 2023 | |
| 20 | SUSPENDED | Jan 12, 2023 | |
| 19 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Jan 12, 2023 | |
| 18 | SUSPENDED | Dec 15, 2022 | |
| 17 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Dec 15, 2022 | |
| 16 | PROCEEDINGS RESUMED | Nov 18, 2022 | |
| 15 | D REPLY IN SUPPORT OF MOTION | Nov 14, 2022 | |
| 14 | SUSP PEND DISP OF OUTSTNDNG MOT | Oct 27, 2022 | |
| 13 | SUSPENDED | Sep 03, 2022 | |
| 12 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Aug 17, 2022 | |
| 11 | SUSP PEND DISP OF OUTSTNDNG MOT | Aug 17, 2022 | |
| 10 | P OPP/RESP TO MOTION | Aug 02, 2022 | |
| 9 | SUSPENDED | Jul 25, 2022 | |
| 8 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Jul 19, 2022 | |
| 7 | D MOT TO JOIN/SUBSTITUTE PARTY | Jul 14, 2022 | |
| 6 | TRIAL DATES RESET | Jun 29, 2022 | |
| 5 | P REQ FOR DISCOVERY CONFERENCE-ESTTA | Jun 09, 2022 | |
| 4 | ANSWER | May 20, 2022 | |
| 3 | INSTITUTED | Apr 19, 2022 | |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Apr 19, 2022 | May 29, 2022 |

1                    FILED AND FEE                                                    Apr 19, 2022

# United States of America

## United States Patent and Trademark Office

# PEBBLES

**Reg. No. 6,557,978**

**Registered Nov. 16, 2021**

**Int. Cl.: 9**

**Trademark**

**Principal Register**

BatchTest Corporation (CALIFORNIA CORPORATION)
Suite 240
2118 Walsh Ave
Santa Clara, CALIFORNIA 95050

CLASS 9: Downloadable computer software for developing other computer software and graphical user interface; Downloadable software and downloadable software utility for creating graphical user interface; Downloadable software for assisting developers in creating program code for use in multiple application software, and user's manuals and instructional manuals sold as a unit therewith; Downloadable software components, namely, software in the nature of controls and indicators for creating Human-Machine-Interface, and user's manuals and instructional manuals sold as a unit therewith

FIRST USE 2-11-2015; IN COMMERCE 2-11-2015

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-983,079, FILED 01-08-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

## REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

900670110    01/17/2022

## TRADEMARK ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

ETAS ID: TM702540

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT OF THE ENTIRE INTEREST AND THE GOODWILL |

### CONVEYING PARTY DATA

| Name | Formerly | Execution Date | Entity Type |
|---|---|---|---|
| BatchTest Corporation | FORMERLY ICware Systems, Inc. | 01/14/2022 | Corporation: CALIFORNIA |

### RECEIVING PARTY DATA

| | |
|---|---|
| Name: | Dinesh Patel |
| Street Address: | 2118 WALSH AVE |
| Internal Address: | Suite 240 |
| City: | Santa Clara |
| State/Country: | CALIFORNIA |
| Postal Code: | 95050 |
| Entity Type: | INDIVIDUAL: UNITED STATES |

### PROPERTY NUMBERS Total: 2

| Property Type | Number | Word Mark |
|---|---|---|
| Registration Number: | 6557978 | PEBBLES |
| Registration Number: | 6557799 | PEBBLES |

### CORRESPONDENCE DATA

**Fax Number:**

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| Phone: | 408-454-8378 |
| Email: | Batchtest_IM@batchtest.com |
| Correspondent Name: | Patel Dinesh |
| Address Line 1: | 2118 Walsh Ave |
| Address Line 2: | Suite 240 |
| Address Line 4: | Santa Clara, CALIFORNIA 95050 |

| NAME OF SUBMITTER: | Patel Dinesh |
|---|---|
| SIGNATURE: | /Dinesh Patel/ |
| DATE SIGNED: | 01/17/2022 |

**Total Attachments: 1**

source=BatchTest Trademark Assignment - PEBBLES#page1.tif

OP $65.00 6557978

**TRADEMARK**
**REEL: 007560 FRAME: 0783**

## TRADEMARK ASSIGNMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, **BatchTest Corporation** ("Assignor"), a California corporation having an address at 2118 Walsh Ave, Suite 240, Santa Clara, CA 95050, for itself and its successors and assigns, hereby assigns to **Dinesh Patel**, a United States citizen with his address at 2118 Walsh Ave, Suite 240, Santa Clara, CA 95050 ("Assignee"), his successors and assigns, all right, title, interest in and to the mark "PEBBLES" with respect to the United States of America, its territories and possessions, including U.S. Trademark Registrations No. **6557978** and **6557799**, for the mark "PEBBLES", together with all goodwill associated therewith.

This Trademark Assignment includes the right to claim for any and all damages by reasons of past infringement of such mark, with the right to sue for and collect the same for Assignee's own use and enjoyment and for the use and enjoyment of its successors and assigns.

*IN WITNESS WHEREOF*, Assignor has caused this Trademark Assignment to be executed by its duly authorized representative as of this 14th day of January 2022.

**BatchTest Corporation**

Dated: January 14, 2022

By: _____

Name: Dinesh Patel

Title: President

Exhibit 2

| Generated on: | This page was generated by TSDR on 2024-08-21 19:28:11 EDT |
| Mark: | PEBBLES |

# PEBBLES

| US Serial Number: | 88751781 | | Application Filing Date: | Jan. 08, 2020 |
| US Registration Number: | 6557799 | | Registration Date: | Nov. 16, 2021 |
| Filed as TEAS RF: | Yes | | Currently TEAS RF: | Yes |
| Register: | Principal | | | |
| Mark Type: | Service Mark | | | |
| TM5 Common Status Descriptor: |  | | LIVE/REGISTRATION/Issued and Active |
| | | | The trademark application has been registered with the Office. |

| Status: | Registered. The registration date is used to determine when post-registration maintenance documents are due. |
| Status Date: | Nov. 16, 2021 |
| Publication Date: | Aug. 31, 2021 |

## Mark Information

| Mark Literal Elements: | PEBBLES |
| Standard Character Claim: | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| Mark Drawing Type: | 4 - STANDARD CHARACTER MARK |

## Related Properties Information

| Parent Of: | 88983079 |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| For: | Providing temporary use of on-line non-downloadable software for developing other computer software and graphical user interface; providing temporary use of on-line non-downloadable software and software utility for creating graphical user interface; providing temporary use of on-line non-downloadable software for assisting developers in creating program code for use in multiple application software, and user's manuals and instructional manuals sold as a unit therewith; designing and providing temporary use of on-line non-downloadable software components, namely, software in the nature of controls and indicators, for creating Human-Machine-Interface, and user's manuals and instructional manuals sold as a unit therewith |
| International Class(es): | 042 - Primary Class | | U.S Class(es): | 100, 101 |
| Class Status: | ACTIVE | | | |
| Basis: | 1(a) | | | |
| First Use: | Jun. 05, 2010 | | Use in Commerce: | Feb. 29, 2012 |

## Basis Information (Case Level)

| Filed Use: | Yes | | Currently Use: | Yes |
| Filed ITU: | No | | Currently ITU: | No |
| Filed 44D: | No | | Currently 44D: | No |

| | | | |
|---|---|---|---|
| Filed 44E: | No | Currently 44E: | No |
| Filed 66A: | No | Currently 66A: | No |
| Filed No Basis: | No | Currently No Basis: | No |

## Current Owner(s) Information

Owner Name: PATEL, DINESH
Owner Address: 2118 WALSH AVE
SUITE 240
SANTA CLARA, CALIFORNIA UNITED STATES 95050
Legal Entity Type: INDIVIDUAL                    Citizenship: UNITED STATES

## Attorney/Correspondence Information

**Attorney of Record - None**

**Correspondent**

Correspondent Name/Address: Dinesh Patel
2118 Walsh Ave
Suite 240
Santa Clara, CALIFORNIA UNITED STATES 95050
Phone: 408-454-8378
Correspondent e-mail: btcroot@gmail.com      Correspondent e-mail Authorized: Yes

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Dec. 19, 2023 | COUNTERCLAIM OPP. NO. 999999 | 288025 |
| Sep. 02, 2022 | POST REGISTRATION ACTION MAILED - SEC. 7 | |
| Aug. 31, 2022 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | |
| Jun. 23, 2022 | AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP | |
| Apr. 04, 2022 | TEAS SECTION 7 REQUEST RECEIVED | |
| Nov. 16, 2021 | REGISTERED-PRINCIPAL REGISTER | |
| Oct. 04, 2021 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| Oct. 04, 2021 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Oct. 04, 2021 | DIVISIONAL PROCESSING COMPLETE | |
| Jun. 16, 2021 | DIVISIONAL REQUEST RECEIVED | |
| Oct. 01, 2021 | WITHDRAWN FROM ISSUE - SENIOR ATTORNEY REQUEST | |
| Sep. 07, 2021 | CASE ASSIGNED TO INTENT TO USE PARALEGAL | |
| Aug. 31, 2021 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Aug. 31, 2021 | PUBLISHED FOR OPPOSITION | |
| Aug. 11, 2021 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Jul. 27, 2021 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Jul. 22, 2021 | SUSPENSION CHECKED - TO ATTORNEY FOR ACTION | |
| Jul. 20, 2021 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| Jul. 20, 2021 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Jul. 20, 2021 | ASSIGNED TO LIE | |
| Jun. 28, 2021 | TEAS RESPONSE TO SUSPENSION INQUIRY RECEIVED | |
| Jun. 16, 2021 | TEAS REQUEST TO DIVIDE RECEIVED | |
| Sep. 28, 2020 | NOTIFICATION OF LETTER OF SUSPENSION E-MAILED | |
| Sep. 28, 2020 | LETTER OF SUSPENSION E-MAILED | |
| Sep. 28, 2020 | SUSPENSION LETTER WRITTEN | |
| Sep. 14, 2020 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| Sep. 12, 2020 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Sep. 12, 2020 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Mar. 18, 2020 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |

| | |
|---|---|
| Mar. 18, 2020 | NON-FINAL ACTION E-MAILED |
| Mar. 18, 2020 | NON-FINAL ACTION WRITTEN |
| Mar. 11, 2020 | ASSIGNED TO EXAMINER |
| Jan. 13, 2020 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED |
| Jan. 11, 2020 | NEW APPLICATION ENTERED |

## TM Staff and Location Information

**TM Staff Information - None**

**File Location**

Current Location: TMO LAW OFFICE 120              Date in Location: Sep. 02, 2022

## Assignment Abstract Of Title Information

**Summary**

Total Assignments: 1                              Registrant: BatchTest Corporation

### Assignment 1 of 1

Conveyance: ASSIGNS THE ENTIRE INTEREST

Reel/Frame: 7560/0783                             Pages: 2

Date Recorded: Jan. 17, 2022

Supporting Documents: assignment-tm-7560-0783.pdf

**Assignor**

Name: BATCHTEST CORPORATION                       Execution Date: Jan. 14, 2022

Legal Entity Type: CORPORATION                    State or Country Where Organized: CALIFORNIA

DBA, AKA, TA, Formerly: FORMERLY ICWARE SYSTEMS, INC.

**Assignee**

Name: PATEL, DINESH

Legal Entity Type: INDIVIDUAL                     Citizenship: UNITED STATES

Address: 2118 WALSH AVE
SUITE 240
SANTA CLARA, CALIFORNIA 95050

**Correspondent**

Correspondent Name: PATEL DINESH

Correspondent Address: 2118 WALSH AVE
SUITE 240
SANTA CLARA, CA 95050

**Domestic Representative - Not Found**

## Proceedings

**Summary**

Number of Proceedings: 6

### Type of Proceeding: Opposition

Proceeding Number: 91288564                       Filing Date: Dec 04, 2023

Status: Pending                                   Status Date: Dec 04, 2023

Interlocutory Attorney: TASHIA A BUNCH

**Defendant**

Name: Georgetown Software House, Inc.

Correspondent: DARRIN A. AUITO

| Address: | HEA LAW PLLC |
|---|---|
| | 6000 TOWERS CRESCENT DRIVE, 13TH FLOOR |
| | MCLEAN VA UNITED STATES , 22182 |
| Correspondent e-mail: | darrin@hea-ip.com , trademarks@hea-ip.com , usptomail@hea-ip.com |

**Associated marks**

| Mark | | Application Status | Serial Number | Registration Number |
|---|---|---|---|---|
| PEBBLE STREAM | | | 97685703 | |

### Plaintiff(s)

| Name: | Dinesh Patel |
|---|---|
| Correspondent Address: | DINESH PATEL |
| | 2118 WALSH AVE, SUITE 240 |
| | SANTA CLARA CA UNITED STATES , 95050 |
| Correspondent e-mail: | btcroot@gmail.com |

**Associated marks**

| Mark | | Application Status | Serial Number | Registration Number |
|---|---|---|---|---|
| PEBBLES | | | 88983079 | 6557978 |
| PEBBLES | | | 88751781 | 6557799 |

### Prosecution History

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 4 | ANSWER | Jan 12, 2024 | |
| 3 | INSTITUTED | Dec 04, 2023 | |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Dec 04, 2023 | Jan 13, 2024 |
| 1 | FILED AND FEE | Dec 04, 2023 | |

### Type of Proceeding: Opposition

| Proceeding Number: | 91288025 | Filing Date: | Nov 02, 2023 |
|---|---|---|---|
| Status: | Suspended | Status Date: | May 30, 2024 |
| Interlocutory Attorney: | REBECCA J STEMPIEN_COYLE | | |

### Defendant

| Name: | PAL USA, Inc. |
|---|---|
| Correspondent Address: | KIRSTIN M JAHN |
| | JAHN & ASSOCIATES LLC |
| | 1942 BROADWAY SUITE 314 |
| | BOULDER CO UNITED STATES , 80302 |
| Correspondent e-mail: | kirstin@jahnlaw.com , tmadmin@jahnlaw.com |

**Associated marks**

| Mark | | Application Status | Serial Number | Registration Number |
|---|---|---|---|---|
| PEBBLE | | | 90730274 | |
| PEBBLE POS | | | 90730279 | |

### Plaintiff(s)

| Name: | Dinesh Patel |
|---|---|
| Correspondent Address: | DINESH PATEL |
| | 2118 WALSH AVE, SUITE 240 |
| | SANTA CLARA CA UNITED STATES , 95050 |
| Correspondent e-mail: | btcroot@gmail.com |

**Associated marks**

| Mark | | Application Status | Serial Number | Registration Number |
|---|---|---|---|---|
| PEBBLES | | | 88983079 | 6557978 |

PEBBLES                                                              88751781          6557799

### Prosecution History

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 16 | SUSP PEND DISP OF CIVIL ACTION | Aug 01, 2024 | |
| 15 | P REPLY IN SUPPORT OF MOTION | Jun 06, 2024 | |
| 14 | SUSP PEND DISP OF OUTSTNDNG MOT | May 30, 2024 | |
| 13 | D OPP/RESP TO MOTION | May 30, 2024 | |
| 12 | P MOT TO SUSP PEND DISP CIV ACTION | May 10, 2024 | |
| 11 | AMENDED COUNTERCLAIM | May 07, 2024 | |
| 10 | PROCEEDINGS RESUMED | Apr 16, 2024 | |
| 9 | P REPLY IN SUPPORT OF MOTION | Feb 19, 2024 | |
| 8 | D OPP/RESP TO MOTION | Feb 07, 2024 | |
| 7 | SUSP PEND DISP OF OUTSTNDNG MOT | Jan 25, 2024 | |
| 6 | P MOT TO DISMISS COUNTERCLAIM: FRCP 12(B) | Jan 18, 2024 | |
| 5 | TRIAL DATES RESET | Dec 19, 2023 | |
| 4 | ANSWER AND COUNTERCLAIM ( FEE) | Dec 11, 2023 | |
| 3 | INSTITUTED | Nov 02, 2023 | |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Nov 02, 2023 | Dec 12, 2023 |
| 1 | FILED AND FEE | Nov 02, 2023 | |

### Type of Proceeding: Opposition

| | |
|---|---|
| **Proceeding Number:** | 91286182 |
| **Status:** | Suspended |
| **Interlocutory Attorney:** | REBECCA J STEMPIEN_COYLE |

**Filing Date:** Jul 20, 2023
**Status Date:** Apr 08, 2024

#### Defendant

**Name:** PAL USA, Inc.
**Correspondent Address:** KIRSTIN M JAHN
JAHN & ASSOCIATES LLC
1942 BROADWAY, SUITE 314
BOULDER CO UNITED STATES , 80302
**Correspondent e-mail:** kirstin@jahnlaw.com , tmadmin@jahnlaw.com

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLE STAY | | 90730731 | |

#### Plaintiff(s)

**Name:** Dinesh Patel
**Correspondent Address:** DINESH PATEL
2118 WALSH AVE, SUITE 240
SANTA CLARA CA UNITED STATES , 95050
**Correspondent e-mail:** btcrool@gmail.com

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLES | | 88983079 | 6557978 |
| PEBBLES | | 88751781 | 6557799 |

### Prosecution History

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 18 | SUSP PEND DISP OF CIVIL ACTION | Jul 18, 2024 | |
| 17 | P REPLY IN SUPPORT OF MOTION | May 18, 2024 | |
| 16 | P REPLY IN SUPPORT OF MOTION | May 10, 2024 | |
| 15 | D OPP/RESP TO MOTION | Apr 28, 2024 | |
| 14 | SUSP PEND DISP OF OUTSTNDNG MOT | Apr 24, 2024 | |

| 13 | D OPP/RESP TO MOTION | Apr 22, 2024 | |
| 12 | P MOT TO COMPEL DISCOVERY | Apr 08, 2024 | |
| 11 | P MOT TO SUSP PEND DISP CIV ACTION | Apr 04, 2024 | |
| 10 | ANSWER | Jan 05, 2024 | |
| 9 | TRIAL DATES RESET | Dec 15, 2023 | |
| 8 | P REPLY IN SUPPORT OF MOTION | Oct 13, 2023 | |
| 7 | D OPP/RESP TO MOTION | Oct 05, 2023 | |
| 6 | SUSP PEND DISP OF OUTSTNDNG MOT | Sep 20, 2023 | |
| 5 | P MOT TO STRIKE | Sep 19, 2023 | |
| 4 | ANSWER | Aug 29, 2023 | |
| 3 | INSTITUTED | Jul 21, 2023 | |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Jul 21, 2023 | Aug 30, 2023 |
| 1 | FILED AND FEE | Jul 20, 2023 | |

### Type of Proceeding: Opposition

| | | | |
|---|---|---|---|
| **Proceeding Number:** | 91277707 | **Filing Date:** Aug 02, 2022 | |
| **Status:** | Terminated | **Status Date:** May 26, 2023 | |
| **Interlocutory Attorney:** | WENDY COHEN | | |

#### Defendant

| | |
|---|---|
| **Name:** | Google LLC |
| **Correspondent Address:** | BRIAN J. FOCARINO<br>COOLEY LLP<br>500 BOYLSTON ST, 14TH FLOOR<br>BOSTON MA UNITED STATES , 02116 |
| **Correspondent e-mail:** | bfocarino@cooley.com , bhughes@cooley.com , trademarks@cooley.com |

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLE | | 90691995 | |

#### Plaintiff(s)

| | |
|---|---|
| **Name:** | Dinesh Patel |
| **Correspondent Address:** | DINESH PATEL<br>2118 WALSH AVE, SUITE 240<br>SANTA CLARA CA UNITED STATES , 95050 |
| **Correspondent e-mail:** | btcroot@gmail.com , Batchtest_TM@batchtest.com |

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLES | | 86983079 | 6557978 |
| PEBBLES | | 88751781 | 6557799 |

#### Prosecution History

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 12 | TERMINATED | May 26, 2023 | |
| 11 | BD DECISION: OPP SUSTAINED | May 26, 2023 | |
| 10 | PROCEEDINGS RESUMED | Nov 17, 2022 | |
| 9 | ANSWER | Nov 14, 2022 | |
| 8 | PROCEEDINGS RESUMED | Nov 09, 2022 | |
| 7 | SUSPENDED | Nov 09, 2022 | |
| 6 | D MOT TO JOIN/SUBSTITUTE PARTY | Nov 07, 2022 | |
| 5 | SUSPENDED | Aug 30, 2022 | |
| 4 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Aug 30, 2022 | |
| 3 | INSTITUTED | Aug 03, 2022 | |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Aug 03, 2022 | Sep 12, 2022 |

| 1 | FILED AND FEE | Aug 02, 2022 |
|---|---|---|

## Type of Proceeding: Opposition

| | | | |
|---|---|---|---|
| **Proceeding Number:** | 91275690 | **Filing Date:** | Apr 19, 2022 |
| **Status:** | Terminated | **Status Date:** | May 26, 2023 |
| **Interlocutory Attorney:** | WENDY COHEN | | |

### Defendant

| | |
|---|---|
| **Name:** | Sidewalk Labs LLC |
| **Correspondent Address:** | BRIAN FOCARINO<br>COOLEY LLP<br>500 BOYLSTON ST., 14TH FLOOR<br>BOSTON MA UNITED STATES , 02116 |
| **Correspondent e-mail:** | bfocarino@cooley.com , bhughes@cooley.com , trademarks@cooley.com |

**Associated marks**

| Mark | | Application Status | Serial Number | Registration Number |
|---|---|---|---|---|
| PEBBLE | | | 88489689 | |

### Plaintiff(s)

| | |
|---|---|
| **Name:** | Dinesh Patel |
| **Correspondent Address:** | DINESH PATEL<br>2118 WALSH AVE, SUITE 240<br>SANTA CLARA CA UNITED STATES , 95050 |
| **Correspondent e-mail:** | btcroot@gmail.com , Batchtest_TM@batchtest.com |

**Associated marks**

| Mark | | Application Status | Serial Number | Registration Number |
|---|---|---|---|---|
| PEBBLES | | | 88751781 | 6557799 |
| PEBBLES | | | 88983079 | 6557978 |

### Prosecution History

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 27 | TERMINATED | May 26, 2023 | |
| 26 | BD DECISION: OPP SUSTAINED | May 26, 2023 | |
| 25 | W/DRAW OF APPLICATION | May 19, 2023 | |
| 24 | SUSPENDED | Apr 12, 2023 | |
| 23 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Apr 12, 2023 | |
| 22 | SUSPENDED | Feb 13, 2023 | |
| 21 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Feb 13, 2023 | |
| 20 | SUSPENDED | Jan 12, 2023 | |
| 19 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Jan 12, 2023 | |
| 18 | SUSPENDED | Dec 15, 2022 | |
| 17 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Dec 15, 2022 | |
| 16 | PROCEEDINGS RESUMED | Nov 18, 2022 | |
| 15 | D REPLY IN SUPPORT OF MOTION | Nov 14, 2022 | |
| 14 | SUSP PEND DISP OF OUTSTNDNG MOT | Oct 27, 2022 | |
| 13 | SUSPENDED | Sep 03, 2022 | |
| 12 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Aug 17, 2022 | |
| 11 | SUSP PEND DISP OF OUTSTNDNG MOT | Aug 17, 2022 | |
| 10 | P OPP/RESP TO MOTION | Aug 02, 2022 | |
| 9 | SUSPENDED | Jul 25, 2022 | |
| 8 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Jul 19, 2022 | |
| 7 | D MOT TO JOIN/SUBSTITUTE PARTY | Jul 14, 2022 | |
| 6 | TRIAL DATES RESET | Jun 29, 2022 | |
| 5 | P REQ FOR DISCOVERY CONFERENCE-ESTTA | Jun 09, 2022 | |

| | | | |
|---|---|---|---|
| 4 | ANSWER | May 20, 2022 | |
| 3 | INSTITUTED | Apr 19, 2022 | |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Apr 19, 2022 | May 29, 2022 |
| 1 | FILED AND FEE | Apr 19, 2022 | |

## Type of Proceeding: Cancellation

| | | | |
|---|---|---|---|
| **Proceeding Number:** | 92074420 | **Filing Date:** | Jun 08, 2020 |
| **Status:** | Terminated | **Status Date:** | Jun 26, 2021 |
| **Interlocutory Attorney:** | GEOFFREY MCNUTT | | |

### Defendant

| | |
|---|---|
| **Name:** | Xperiel, Inc. |
| **Correspondent Address:** | STEVEN A ABREU SUNSTEIN LLP 100 HIGH STREET BOSTON MA UNITED STATES , 02110-2321 |
| **Correspondent e-mail:** | sabreu@sunsteinlaw.com , ksoule@sunsteinlaw.com |

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLES | | 87953946 | 5753143 |

### Plaintiff(s)

| | |
|---|---|
| **Name:** | BatchTest Corporation |
| **Correspondent Address:** | DINESH PATEL BATCHTEST CORPORATION 2118 WALSH AVE, SUITE 240 SANTA CLARA CA UNITED STATES , 95050 |
| **Correspondent e-mail:** | BatchTest_TM@BatchTest.com , btcroot@gmail.com |

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLES | | 88751781 | |

### Prosecution History

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 19 | TERMINATED | Jun 26, 2021 | |
| 18 | COMMR ORDER CANCELLING REG | Jun 26, 2021 | |
| 17 | BD DECISION: CAN GRANTED | Jun 23, 2021 | |
| 16 | VOLUNTARY SURRENDER OF REGISTRATION | Jun 16, 2021 | |
| 15 | SUSPENDED | Apr 29, 2021 | |
| 14 | D MOT TO SUSP W/ CONSENT PEND SETTL NEGOTIATIONS | Apr 29, 2021 | |
| 13 | EXTENSION OF TIME GRANTED | Apr 12, 2021 | |
| 12 | D MOT FOR EXT W/ CONSENT | Apr 12, 2021 | |
| 11 | EXTENSION OF TIME GRANTED | Jan 14, 2021 | |
| 10 | D MOT FOR EXT W/ CONSENT | Jan 14, 2021 | |
| 9 | EXTENSION OF TIME GRANTED | Dec 03, 2020 | |
| 8 | D MOT FOR EXT W/ CONSENT | Dec 03, 2020 | |
| 7 | EXTENSION OF TIME GRANTED | Nov 04, 2020 | |
| 6 | D MOT FOR EXT W/ CONSENT | Nov 04, 2020 | |
| 5 | P CHANGE OF CORRESP ADDRESS | Oct 07, 2020 | |
| 4 | ANSWER | Jul 17, 2020 | |
| 3 | INSTITUTED | Jun 08, 2020 | |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Jun 08, 2020 | Jul 18, 2020 |
| 1 | FILED AND FEE | Jun 08, 2020 | |

# United States of America
## United States Patent and Trademark Office

# PEBBLES

**Reg. No. 6,557,799**

**Registered Nov. 16, 2021**

**Int. Cl.: 42**

**Service Mark**

**Principal Register**

BatchTest Corporation  (CALIFORNIA CORPORATION)
Suite 240
2118 Walsh Ave
Santa Clara, CALIFORNIA 95050

CLASS 42: Providing temporary use of on-line non-downloadable software for developing other computer software and graphical user interface; providing temporary use of on-line non-downloadable software and software utility for creating graphical user interface; providing temporary use of on-line non-downloadable software for assisting developers in creating program code for use in multiple application software, and user's manuals and instructional manuals sold as a unit therewith; designing and providing temporary use of on-line non-downloadable software components, namely, software in the nature of controls and indicators, for creating Human-Machine-Interface, and user's manuals and instructional manuals sold as a unit therewith

FIRST USE 6-5-2010; IN COMMERCE 2-29-2012

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-751,781, FILED 01-08-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

Exhibit 3

Generated on: This page was generated by TSDR on 2024-08-21 19:35:15 EDT
Mark: PEBBLE

# PEBBLE

| | | | |
|---|---|---|---|
| **US Serial Number:** | 98037258 | **Application Filing Date:** | Jun. 12, 2023 |
| **Filed as TEAS Plus:** | Yes | **Currently TEAS Plus:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |

**TM5 Common Status Descriptor:**

LIVE/APPLICATION/Under Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner.

**Status:** An Office action suspending further action on the application has been sent (issued) to the applicant. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

**Status Date:** Jun. 30, 2024

## Mark Information

**Mark Literal Elements:** PEBBLE

**Standard Character Claim:** Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

**Mark Drawing Type:** 4 - STANDARD CHARACTER MARK

## Related Properties Information

**Claimed Ownership of US Registrations:** 6557799, 6557978

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Electromechanical controls for use in industrial and home automation; Access control and alarm monitoring systems; Apparatus and instruments for conveying, distributing, transforming, storing, regulating or controlling electric current; Automated digital controls for commercial and industrial food service equipment; Automated self contained electronic surveillance devices that can be deployed to gather evidence or intelligence in remote locations; Computer controls for the operation of machine tools; Downloadable computer application software for mobile phones, handheld computers, wearable electronic devices, and virtual reality devices, namely, software for providing locally and remotely accessible human-machine-interface for embedded systems, electronic and electromechanical sensors, industrial automation systems, and home automation devices; Downloadable computer graphics; Downloadable computer graphics software; Downloadable computer programs for user interface design; Downloadable computer programs using artificial intelligence for use in machine learning and image processing; Downloadable computer programs using artificial intelligence for use in automated kitchen appliances; Downloadable computer software development tools; Downloadable computer software for use as an application programming interface (API); Downloadable computer software for computer system and application development, deployment and management; Downloadable computer software for controlling and managing patient medical information; Downloadable computer software for use in computer access control; Downloadable computer software for use in the encryption and decryption of digital files, including audio, video, text, binary, still images, graphics and multimedia files; Downloadable computer software that provides real-time, integrated business management intelligence by combining information from various databases and presenting it in an easy-to-understand user interface; Downloadable computer software to monitor and control factory manufacturing processes; Downloadable computer software using artificial intelligence for use in machine learning and image processing; Downloadable computer software using artificial intelligence for use in automated kitchen appliances; Downloadable computer-aided manufacturing (CAM) software for general use; Downloadable computer-aided manufacturing (CAM) software for integrated circuits; Downloadable factory automation software, namely, software to integrate manufacturing machine operations, track problems and generate production reports; Downloadable graphical user interface software; Downloadable industrial process control software;

Downloadable software development kits (SDK); Downloadable software for connecting, operating, and managing networked vehicles and kitchen appliances in the internet of things (IoT); Downloadable software for monitoring and controlling communication between computers and automated machine systems; Downloadable software for processing images, graphics and text; Downloadable software for remote control of household electrical appliances; Downloadable software in the nature of a mobile application for providing locally and remotely accessible human-machine-interface for embedded systems, electronic and electromechanical sensors, industrial automation systems, and home automation devices; Electric control panels; Electric current control devices; Electrical controllers; Electrical controlling devices; Electrical integrated control systems for use in the field of industrial and home automation; Electronic circuit board; Electronic apparatus for the remote control of industrial operations; Electronic control systems for machines; Electronic controllers for servo motors; Electronic controls for motors; Industrial automation controls; Power controllers; Programmable logic controllers; Recorded computer application software for mobile phones, handheld computers, wearable electronic devices, and virtual reality devices, namely, software for providing locally and remotely accessible human-machine-interface for embedded systems, electronic and electromechanical sensors, industrial automation systems, and home automation devices; Recorded computer programs using artificial intelligence for use in machine learning and image processing; Recorded computer programs using artificial intelligence for use in automated kitchen appliances; Recorded computer software development tools; Recorded computer software for use as an application programming interface (API); Recorded computer software using artificial intelligence for use in machine learning and image processing; Recorded computer software using artificial intelligence for use in automated kitchen appliances; Semiconductor testing apparatus; Testing apparatus for testing printed circuit boards; User interfaces, namely, Supervisory Control and Data Acquisition (SCADA) control panels for electrotechnical and electronic devices

| | |
|---|---|
| **International Class(es):** | 009 - Primary Class |
| **U.S Class(es):** | 021, 023, 026, 036, 038 |
| **Class Status:** | ACTIVE |
| **Basis:** | 1(b) |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | No | **Currently Use:** | No |
| **Filed ITU:** | Yes | **Currently ITU:** | Yes |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | Patel, Dinesh |
| **Owner Address:** | 2118 Walsh Ave, Suite 240<br>Santa Clara, CALIFORNIA UNITED STATES 95050 |
| **Legal Entity Type:** | INDIVIDUAL |
| **Citizenship:** | UNITED STATES |

## Attorney/Correspondence Information

**Attorney of Record - None**

**Correspondent**

| | |
|---|---|
| **Correspondent Name/Address:** | Patel, Dinesh<br>2118 Walsh Ave, Suite 240<br>Santa Clara, CALIFORNIA United States 95050 |
| **Correspondent e-mail:** | btcroot@gmail.com |
| **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jun. 30, 2024 | NOTIFICATION OF LETTER OF SUSPENSION E-MAILED | |
| Jun. 30, 2024 | LETTER OF SUSPENSION E-MAILED | |
| Jun. 30, 2024 | SUSPENSION LETTER WRITTEN | |
| Jun. 09, 2024 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| Jun. 08, 2024 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Jun. 08, 2024 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Mar. 09, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| Mar. 09, 2024 | NON-FINAL ACTION E-MAILED | |
| Mar. 09, 2024 | NON-FINAL ACTION WRITTEN | |

| | |
|---|---|
| Mar. 01, 2024 | ASSIGNED TO EXAMINER |
| Jul. 15, 2023 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED |
| Jun. 15, 2023 | NEW APPLICATION ENTERED |

## TM Staff and Location Information

**TM Staff Information**

TM Attorney: FICKES, JERI J

Law Office LAW OFFICE 107
Assigned:

**File Location**

Current Location: TMEG LAW OFFICE 107

Date in Location: Jun. 30, 2024

# PEBBLE

# Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 98037258**
**Filing Date: 06/12/2023**

*NOTE: Data fields with the * are mandatory under TEAS Plus. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

### The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| TEAS Plus | YES |
| **MARK INFORMATION** | |
| *MARK | PEBBLE |
| *STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | PEBBLE |
| *MARK STATEMENT | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Patel, Dinesh |
| *MAILING ADDRESS | 2118 Walsh Ave, Suite 240 |
| *CITY | Santa Clara |
| *STATE (Required for U.S. applicants) | California |
| *COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| *ZIP/POSTAL CODE (Required for U.S. and certain international addresses) | 95050 |
| *EMAIL ADDRESS | XXXX |
| **LEGAL ENTITY INFORMATION** | |
| *TYPE | INDIVIDUAL |
| * COUNTRY/REGION/JURISDICTION/U.S. TERRITORY OF CITIZENSHIP | United States |
| **OWNER DOMICILE ADDRESS(NEW)** | |
| *ADDRESS | XXXX |
| *CITY | XXXX |
| *STATE (Required for U.S. applicants) | XXXX |

| *COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | XXXX |
|---|---|
| *ZIP/POSTAL CODE<br>(Required for U.S. and certain international addresses) | XXXX |

## GOODS AND/OR SERVICES AND BASIS INFORMATION

| *INTERNATIONAL CLASS | 009 |
|---|---|
| *IDENTIFICATION | Electromechanical controls for use in **industrial and home automation**; Access control and alarm monitoring systems; Apparatus and instruments for conveying, distributing, transforming, storing, regulating or controlling electric current; Automated digital controls for commercial and industrial food service equipment; Automated self contained electronic surveillance devices that can be deployed to gather evidence or intelligence in remote locations; Computer controls for the operation of machine tools; Downloadable computer graphics; Downloadable computer graphics software; Downloadable computer software development tools; Downloadable computer software for computer system and application development, deployment and management; Downloadable computer software for controlling and managing patient medical information; Downloadable computer software for use in computer access control; Downloadable computer software for use in the encryption and decryption of digital files, including audio, video, text, binary, still images, graphics and multimedia files; Downloadable computer software to monitor and control factory manufacturing processes; Downloadable computer-aided manufacturing (CAM) software for general use; Downloadable computer-aided manufacturing (CAM) software for integrated circuits; Downloadable factory automation software, namely, software to integrate manufacturing machine operations, track problems and generate production reports; Downloadable graphical user interface software; Downloadable industrial process control software; Downloadable software development kits (SDK); Downloadable software for connecting, operating, and managing networked **vehicles and kitchen appliances** in the internet of things (IoT); Downloadable software for monitoring and controlling communication between computers and automated machine systems; Downloadable software for processing images, graphics and text; Downloadable software for remote control of household electrical appliances; Electric control panels; Electric current control devices; Electrical controllers; Electrical controlling devices; Electrical integrated control systems for use in the field of **industrial and home automation**; Electronic circuit board; Electronic apparatus for the remote control of industrial operations; Electronic control systems for machines; Electronic controllers for servo motors; Electronic controls for motors; Industrial automation controls; Power controllers; Programmable logic controllers; Recorded computer software development tools; Semiconductor testing apparatus; Testing apparatus for testing printed circuit boards; User interfaces, namely, **Supervisory Control and Data Acquisition (SCADA) control panels** for electrotechnical and electronic devices |
| *FILING BASIS | SECTION 1(b) |
| *INTERNATIONAL CLASS | 009 |
| | Downloadable computer application software for mobile phones, handheld computers, wearable electronic devices, |

| *IDENTIFICATION | and virtual reality devices, namely, software for **providing locally and remotely accessible human-machine-interface for embedded systems, electronic and electromechanical sensors, industrial automation systems, and home automation devices**; Downloadable computer programs for user interface design; Downloadable computer programs using artificial intelligence for **use in machine learning and image processing**; Downloadable computer programs using artificial intelligence for **use in automated kitchen appliances**; Downloadable computer software for use as an application programming interface (API); Downloadable computer software that provides real-time, integrated business management intelligence by combining information from various databases and presenting it in an easy-to-understand user interface; Downloadable computer software using artificial intelligence for **use in machine learning and image processing**; Downloadable computer software using artificial intelligence for **use in automated kitchen appliances**; Downloadable software in the nature of a mobile application for **providing locally and remotely accessible human-machine-interface for embedded systems, electronic and electromechanical sensors, industrial automation systems, and home automation devices**; Recorded computer application software for **mobile phones, handheld computers, wearable electronic devices, and virtual reality devices**, namely, software for **providing locally and remotely accessible human-machine-interface for embedded systems, electronic and electromechanical sensors, industrial automation systems, and home automation devices**; Recorded computer programs using artificial intelligence for **use in machine learning and image processing**; Recorded computer programs using artificial intelligence for **use in automated kitchen appliances**; Recorded computer software for use as an application programming interface (API); Recorded computer software using artificial intelligence for **use in machine learning and image processing**; Recorded computer software using artificial intelligence for **use in automated kitchen appliances** |
|---|---|
| *FILING BASIS | SECTION 1(b) |

## ADDITIONAL STATEMENTS SECTION

| *TRANSLATION<br>(if applicable) | |
|---|---|
| *TRANSLITERATION<br>(if applicable) | |
| *CLAIMED PRIOR REGISTRATION<br>(if applicable) | The applicant claims ownership of active prior U.S. Registration Number(s) 6557978 and 6557799. |
| *CONSENT (NAME/LIKENESS)<br>(if applicable) | |
| *CONCURRENT USE CLAIM<br>(if applicable) | |

## CORRESPONDENCE INFORMATION

| NAME | Patel, Dinesh |
|---|---|
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | btcroot@gmail.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | NOT PROVIDED |

## FEE INFORMATION

| APPLICATION FILING OPTION | TEAS Plus |
|---|---|
| NUMBER OF CLASSES | 1 |
| APPLICATION FOR REGISTRATION PER CLASS | 250 |
| *TOTAL FEES DUE | 250 |
| *TOTAL FEES PAID | 250 |
| SIGNATURE INFORMATION | |
| * SIGNATURE | /Dinesh Patel/ |
| * SIGNATORY'S NAME | Dinesh Patel |
| * SIGNATORY'S POSITION | Owner |
| * DATE SIGNED | 06/12/2023 |
| SIGNATURE METHOD | Signed directly within the form |

PTO/... 4/2
Approval Tor Information Collection under the Paperwork Reduction Act...
U.S. Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

Serial Number: 98037258
Filing Date: 06/12/2023

### To the Commissioner for Trademarks:

**MARK:** PEBBLE (Standard Characters, see mark)
The literal element of the mark consists of PEBBLE. The mark consists of standard characters, without claim to any particular font style, size, or color.
The applicant, Dinesh Patel, a citizen of United States, having an address of

2118 Walsh Ave, Suite 240
Santa Clara, California 95050
United States
XXXX

and a domicile address of

XXXX
XXXX, XXXX XXXX
XXXX

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

**For specific filing basis information for each item, you must view the display within the Input Table.**
International Class 009: Electromechanical controls for use in industrial and home automation; Access control and alarm monitoring systems; Apparatus and instruments for conveying, distributing, transforming, storing, regulating or controlling electric current; Automated digital controls for commercial and industrial food service equipment; Automated self contained electronic surveillance devices that can be deployed to gather evidence or intelligence in remote locations; Computer controls for the operation of machine tools; Downloadable computer application software for mobile phones, handheld computers, wearable electronic devices, and virtual reality devices, namely, software for providing locally and remotely accessible human-machine-interface for embedded systems, electronic and electromechanical sensors, industrial automation systems, and home automation devices; Downloadable computer graphics; Downloadable computer graphics software; Downloadable computer programs for user interface design; Downloadable computer programs using artificial intelligence for use in machine learning and image processing; Downloadable computer programs using artificial intelligence for use in automated kitchen appliances; Downloadable computer software development tools; Downloadable computer software for use as an application programming interface (API); Downloadable computer software for computer system and application development, deployment and management; Downloadable computer software for controlling and managing patient medical information; Downloadable computer software for use in computer access control; Downloadable computer software for use in the encryption and decryption of digital files, including audio, video, text, binary, still images, graphics and multimedia files; Downloadable computer software that provides real-time, integrated business management intelligence by combining information from various databases and presenting it in an easy-to-understand user interface; Downloadable computer software to monitor and control factory manufacturing processes; Downloadable computer software using artificial intelligence for use in machine learning and image processing; Downloadable computer software using artificial intelligence for use in automated kitchen appliances; Downloadable computer-aided manufacturing (CAM) software for general use; Downloadable computer-aided manufacturing (CAM) software for integrated circuits; Downloadable factory automation software, namely, software to integrate manufacturing machine operations, track problems and generate production reports; Downloadable graphical user interface software; Downloadable industrial process control software; Downloadable software development kits (SDK); Downloadable software for connecting, operating, and managing networked vehicles and kitchen appliances in the internet of things (IoT); Downloadable software for monitoring and controlling communication between computers and automated machine systems; Downloadable software for processing images, graphics and text; Downloadable software for remote control of household electrical appliances; Downloadable software in the nature of a mobile application for providing locally and remotely accessible human-machine-interface for embedded systems, electronic and electromechanical sensors, industrial automation systems, and home automation devices; Electric control panels; Electric current control devices; Electrical controllers; Electrical controlling devices; Electrical integrated control systems for use in the field of industrial and home automation; Electronic circuit board; Electronic apparatus for the remote control of industrial operations; Electronic control systems for machines; Electronic controllers for servo motors; Electronic controls for motors; Industrial automation controls; Power

controllers; Programmable logic controllers; Recorded computer application software for mobile phones, handheld computers, wearable electronic devices, and virtual reality devices, namely, software for providing locally and remotely accessible human-machine-interface for embedded systems, electronic and electromechanical sensors, industrial automation systems, and home automation devices; Recorded computer programs using artificial intelligence for use in machine learning and image processing; Recorded computer programs using artificial intelligence for use in automated kitchen appliances; Recorded computer software development tools; Recorded computer software for use as an application programming interface (API); Recorded computer software using artificial intelligence for use in machine learning and image processing; Recorded computer software using artificial intelligence for use in automated kitchen appliances; Semiconductor testing apparatus; Testing apparatus for testing printed circuit boards; User interfaces, namely, Supervisory Control and Data Acquisition (SCADA) control panels for electrotechnical and electronic devices
Intent to Use: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services. (15 U.S.C. Section 1051(b)).

**Claim of Active Prior Registration(s)**
The applicant claims ownership of active prior U.S. Registration Number(s) 6557978 and 6557799.

The applicant's current Correspondence Information:

Patel, Dinesh
PRIMARY EMAIL FOR CORRESPONDENCE: btcroot@gmail.com
SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): NOT PROVIDED

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).
A fee payment in the amount of $250 has been submitted with the application, representing payment for 1 class(es).

**Declaration**

☐ **Basis:**
**If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**And/Or**
**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☐ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☐ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☐ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /Dinesh Patel/   Date: 06/12/2023
Signatory's Name: Dinesh Patel
Signatory's Position: Owner
Signature method: Signed directly within the form
Payment Sale Number: 98037258
Payment Accounting Date: 06/12/2023

Serial Number: 98037258
Internet Transmission Date: Mon Jun 12 03:31:43 ET 2023
TEAS Stamp: USPTO/FTK-XX.XXX.XX.XX-20230612033144116
095-98037258-86036cf659bd626b254bc5960c2
e0e48840589ab041449e8e63514ca5ff80e55a72
-CC-31435008-20230612032800765748

PEBBLE

Exhibit 4

Generated on: This page was generated by TSDR on 2024-08-21 19:38:43 EDT

Mark: PEBBLE

# PEBBLE

US Serial Number: 98037260

Application Filing Date: Jun. 12, 2023

Filed as TEAS Plus: Yes

Currently TEAS Plus: Yes

Register: Principal

Mark Type: Service Mark

TM5 Common Status Descriptor:



LIVE/APPLICATION/Under Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner.

Status: An Office action suspending further action on the application has been sent (issued) to the applicant. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page.

Status Date: Jun. 30, 2024

## Mark Information

Mark Literal Elements: PEBBLE

Standard Character Claim: Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

Mark Drawing Type: 4 - STANDARD CHARACTER MARK

## Related Properties Information

Claimed Ownership of US Registrations: 6557799, 6557978

## Goods and Services

Note:
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

For: Advanced product research in the field of artificial intelligence; Application service provider (ASP) featuring software using artificial intelligence for use in machine learning and image processing for industrial automation; Application service provider (ASP) featuring software using artificial intelligence for use in automated kitchen appliances; Computer graphics design services; Computer graphics services; Computer hardware development; Computer monitoring service which tracks application software performance, performs periodic maintenance and provides reports and alerts concerning such performance; Computer monitoring service which tracks hardware performance and processes and sends out historical reports and alerts; Computer software development; Computer software development and computer programming development for others; Computer software development in the field of mobile applications; Consultancy in the field of artificial intelligence technology; Consulting services in the field of design and development of engineering processes; Creation of control programs for automated measurement, assembly, adjustment, and related visualisation; Creation of control programs for electric operation control and drive modules; Data automation and collection service using proprietary software to evaluate, analyze and collect service data; Design and development of automated controller systems, namely, temperature, humidity and electrical controllers; Design and development of automated home controller systems, namely, temperature, humidity, and electrical controllers; Design and development of computer firmware; Design and development of computer hardware; Design and development of computer hardware and software; Design and development of computer hardware for the manufacturing industries; Design and development of computer software; Design and development of computer software in the field of tablet applications; Design and testing for new product development; Design and testing of new products for others; Design of information graphics and data visualization materials; Developing customized software for others; Development of computer platforms; Development of computer programs recorded on data media (software) designed for use in construction and automated manufacturing (cad/cam); Development of software for secure network operations; Product development; Product development and engineering services for others; Product development for others; Product quality testing; Product research and development; Product testing; Providing a website featuring non-downloadable software using artificial intelligence for use in machine learning and image processing; Providing a

website featuring non-downloadable software using artificial intelligence for use in automated kitchen appliances; Providing a website featuring non-downloadable software using artificial intelligence for use in industrial automation; Providing a website technology enabling users to remotely view, monitor, program, operate and control large and small appliances, electrical systems and security systems in homes, offices and vehicles; Providing on-line non-downloadable software using artificial intelligence for use in machine learning and image processing; Providing on-line non-downloadable software using artificial intelligence for use in automated kitchen appliances; Providing technical information updates of industrial process control computer software via the global computer network; Providing temporary use of non-downloadable cloud-based software for connecting, operating, and managing networked vehicles in the internet of things (IoT); Providing temporary use of non-downloadable cloud-based software for connecting, operating, and managing networked kitchen appliances in the internet of things (IoT); Providing temporary use of non-downloadable cloud-based software for connecting, operating, and managing networked data acquisition and control devices in the internet of things (IoT); Providing temporary use of on-line non-downloadable cloud computing software using artificial intelligence for use in automated kitchen appliances; Providing temporary use of on-line non-downloadable cloud computing software using artificial intelligence for use in machine learning and image processing; Providing temporary use of on-line non-downloadable software and applications using artificial intelligence for use in machine learning and image processing; Providing temporary use of on-line non-downloadable software and applications using artificial intelligence for use in automated kitchen appliances; Providing temporary use of on-line non-downloadable software development tools; Research and development of computer software; Research and development of new products; Research in the field of artificial intelligence; Research in the field of artificial intelligence technology; Scientific research and development; Software as a service (SAAS) services featuring software using artificial intelligence for use in machine learning and image processing; Software as a service (SAAS) services featuring software using artificial intelligence for use in automated kitchen appliances; Testing of computing equipment; Website development for others

| | |
|---|---|
| International Class(es): | 042 - Primary Class |
| | U.S Class(es): 100, 101 |
| Class Status: | ACTIVE |
| Basis: | 1(b) |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| Filed Use: | No | Currently Use: | No |
| Filed ITU: | Yes | Currently ITU: | Yes |
| Filed 44D: | No | Currently 44D: | No |
| Filed 44E: | No | Currently 44E: | No |
| Filed 66A: | No | Currently 66A: | No |
| Filed No Basis: | No | Currently No Basis: | No |

## Current Owner(s) Information

| | |
|---|---|
| Owner Name: | Patel, Dinesh |
| Owner Address: | 2118 Walsh Ave, Suite 240 Santa Clara, CALIFORNIA UNITED STATES 95050 |
| Legal Entity Type: | INDIVIDUAL |
| Citizenship: | UNITED STATES |

## Attorney/Correspondence Information

**Attorney of Record - None**

**Correspondent**

| | |
|---|---|
| Correspondent Name/Address: | Patel, Dinesh 2118 Walsh Ave, Suite 240 Santa Clara, CALIFORNIA United States 95050 |
| Correspondent e-mail: | btcroot@gmail.com |
| Correspondent e-mail Authorized: | Yes |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jun. 30, 2024 | NOTIFICATION OF LETTER OF SUSPENSION E-MAILED | |
| Jun. 30, 2024 | LETTER OF SUSPENSION E-MAILED | |
| Jun. 30, 2024 | SUSPENSION LETTER WRITTEN | |
| Jun. 09, 2024 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| Jun. 08, 2024 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Jun. 08, 2024 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Mar. 09, 2024 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |

| | |
|---|---|
| Mar. 09, 2024 | NON-FINAL ACTION E-MAILED |
| Mar. 09, 2024 | NON-FINAL ACTION WRITTEN |
| Mar. 01, 2024 | ASSIGNED TO EXAMINER |
| Jul. 15, 2023 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED |
| Jun. 15, 2023 | NEW APPLICATION ENTERED |

## TM Staff and Location Information

**TM Staff Information**

**TM Attorney:** FICKES, JERI J

**Law Office Assigned:** LAW OFFICE 107

**File Location**

**Current Location:** TMEG LAW OFFICE 107

**Date in Location:** Jun. 30, 2024

## Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 98037260**
**Filing Date: 06/12/2023**

*NOTE: Data fields with the \* are mandatory under TEAS Plus. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

### The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| TEAS Plus | YES |
| **MARK INFORMATION** | |
| *MARK | PEBBLE |
| *STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | PEBBLE |
| *MARK STATEMENT | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Patel, Dinesh |
| *MAILING ADDRESS | 2118 Walsh Ave, Suite 240 |
| *CITY | Santa Clara |
| *STATE (Required for U.S. applicants) | California |
| *COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| *ZIP/POSTAL CODE (Required for U.S. and certain international addresses) | 95050 |
| *EMAIL ADDRESS | XXXX |
| **LEGAL ENTITY INFORMATION** | |
| *TYPE | INDIVIDUAL |
| * COUNTRY/REGION/JURISDICTION/U.S. TERRITORY OF CITIZENSHIP | United States |
| **OWNER DOMICILE ADDRESS(NEW)** | |
| *ADDRESS | XXXX |
| *CITY | XXXX |
| *STATE (Required for U.S. applicants) | XXXX |

| *COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | XXXX |
|---|---|
| *ZIP/POSTAL CODE<br>(Required for U.S. and certain international addresses) | XXXX |

| GOODS AND/OR SERVICES AND BASIS INFORMATION | |
|---|---|
| *INTERNATIONAL CLASS | 042 |
| *IDENTIFICATION | Advanced product research in the field of artificial intelligence; Application service provider (ASP) featuring software using artificial intelligence for use in machine learning and image processing for industrial automation; Application service provider (ASP) featuring software using artificial intelligence for use in automated kitchen appliances; Computer graphics design services; Computer graphics services; Computer hardware development; Computer monitoring service which tracks application software performance, performs periodic maintenance and provides reports and alerts concerning such performance; Computer monitoring service which tracks hardware performance and processes and sends out historical reports and alerts; Computer software development; Computer software development and computer programming development for others; Computer software development in the field of mobile applications; Consultancy in the field of artificial intelligence technology; Consulting services in the field of design and development of engineering processes; Creation of control programs for automated measurement, assembly, adjustment, and related visualisation; Creation of control programs for electric operation control and drive modules; Data automation and collection service using proprietary software to evaluate, analyze and collect service data; Design and development of automated controller systems, namely, temperature, humidity and electrical controllers; Design and development of automated home controller systems, namely, temperature, humidity, and electrical controllers; Design and development of computer firmware; Design and development of computer hardware; Design and development of computer hardware and software; Design and development of computer hardware for the manufacturing industries; Design and development of computer software; Design and development of computer software in the field of tablet applications; Design and testing for new product development; Design and testing of new products for others; Design of information graphics and data visualization materials; Developing customized software for others; Development of computer platforms; Development of computer programs recorded on data media (software) designed for use in construction and automated manufacturing (cad/cam); Development of software for secure network operations; Product development; Product development and engineering services for others; Product development for others; Product quality testing; Product research and development; Product testing; Providing a website featuring non-downloadable software using artificial intelligence for use in machine learning and image processing; Providing a website featuring non-downloadable software using artificial intelligence for use in automated kitchen appliances; Providing a website featuring non-downloadable software using artificial intelligence for use in industrial automation; Providing a website featuring technology enabling users to remotely view, monitor, program, operate and control large and small appliances, electrical systems and security systems in homes, |

|  | offices and vehicles; Providing on-line non-downloadable software using artificial intelligence for **use in machine learning and image processing**; Providing on-line non-downloadable software using artificial intelligence for **use in automated kitchen appliances**; Providing technical information updates of industrial process control computer software via the global computer network; Providing temporary use of non-downloadable cloud-based software for connecting, operating, and managing networked **vehicles** in the internet of things (IoT); Providing temporary use of non-downloadable cloud-based software for connecting, operating, and managing networked **kitchen appliances** in the internet of things (IoT); Providing temporary use of non-downloadable cloud-based software for connecting, operating, and managing networked **data acquisition and control devices** in the internet of things (IoT); Providing temporary use of on-line non-downloadable cloud computing software using artificial intelligence for **use in machine learning and image processing**; Providing temporary use of on-line non-downloadable cloud computing software using artificial intelligence for **use in automated kitchen appliances**; Providing temporary use of on-line non-downloadable software and applications using artificial intelligence for **use in machine learning and image processing**; Providing temporary use of on-line non-downloadable software and applications using artificial intelligence for **use in automated kitchen appliances**; Providing temporary use of on-line non-downloadable software development tools; Research and development of computer software; Research and development of new products; Research in the field of artificial intelligence; Research in the field of artificial intelligence technology; Scientific research and development; Software as a service (SAAS) services featuring software using artificial intelligence for **use in machine learning and image processing**; Software as a service (SAAS) services featuring software using artificial intelligence for **use in automated kitchen appliances**; Testing of computing equipment; Website development for others |
|---|---|
| *FILING BASIS | SECTION 1(b) |

## ADDITIONAL STATEMENTS SECTION

| *TRANSLATION (if applicable) | |
|---|---|
| *TRANSLITERATION (if applicable) | |
| *CLAIMED PRIOR REGISTRATION (if applicable) | The applicant claims ownership of active prior U.S. Registration Number(s) 6557978 and 6557799. |
| *CONSENT (NAME/LIKENESS) (if applicable) | |
| *CONCURRENT USE CLAIM (if applicable) | |

## CORRESPONDENCE INFORMATION

| NAME | Patel, Dinesh |
|---|---|
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | btcroot@gmail.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | NOT PROVIDED |

## FEE INFORMATION

| APPLICATION FILING OPTION | TEAS Plus |
|---|---|
| NUMBER OF CLASSES | 1 |
| APPLICATION FOR REGISTRATION PER CLASS | 250 |
| *TOTAL FEES DUE | 250 |
| *TOTAL FEES PAID | 250 |

## SIGNATURE INFORMATION

| * SIGNATURE | /Dinesh Patel/ |
|---|---|
| * SIGNATORY'S NAME | Dinesh Patel |
| * SIGNATORY'S POSITION | Owner |
| * DATE SIGNED | 06/12/2023 |
| SIGNATURE METHOD | Signed directly within the form |

PTO 1 478
Statement may be in S4 change 14040 e3u3.1  OSUB 2564-2050
U.S. Patent and Trademark Office (U.S. PAT[illegible]MARK) this attachments
Under the Paperwork Reduction Act of 1[illegible], no persons are required to respond to a collection of information unless it displays a valid OMB control number

# Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

Serial Number: 98037260
Filing Date: 06/12/2023

## To the Commissioner for Trademarks:

**MARK:** PEBBLE (Standard Characters, see mark)
The literal element of the mark consists of PEBBLE. The mark consists of standard characters, without claim to any particular font style, size, or color.
The applicant, Dinesh Patel, a citizen of United States, having an address of
    2118 Walsh Ave, Suite 240
    Santa Clara, California 95050
    United States
    XXXX

and a domicile address of

    XXXX
    XXXX, XXXX XXXX
    XXXX

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

**For specific filing basis information for each item, you must view the display within the Input Table.**
International Class 042:  Advanced product research in the field of artificial intelligence; Application service provider (ASP) featuring software using artificial intelligence for use in machine learning and image processing for industrial automation; Application service provider (ASP) featuring software using artificial intelligence for use in automated kitchen appliances; Computer graphics design services; Computer graphics services; Computer hardware development; Computer monitoring service which tracks application software performance, performs periodic maintenance and provides reports and alerts concerning such performance; Computer monitoring service which tracks hardware performance and processes and sends out historical reports and alerts; Computer software development; Computer software development and computer programming development for others; Computer software development in the field of mobile applications; Consultancy in the field of artificial intelligence technology; Consulting services in the field of design and development of engineering processes; Creation of control programs for automated measurement, assembly, adjustment, and related visualisation; Creation of control programs for electric operation control and drive modules; Data automation and collection service using proprietary software to evaluate, analyze and collect service data; Design and development of automated controller systems, namely, temperature, humidity and electrical controllers; Design and development of automated home controller systems, namely, temperature, humidity, and electrical controllers; Design and development of computer firmware; Design and development of computer hardware; Design and development of computer hardware and software; Design and development of computer hardware for the manufacturing industries; Design and development of computer software; Design and development of computer software in the field of tablet applications; Design and testing for new product development; Design and testing of new products for others; Design of information graphics and data visualization materials; Developing customized software for others; Development of computer platforms; Development of computer programs recorded on data media (software) designed for use in construction and automated manufacturing (cad/cam); Development of software for secure network operations; Product development; Product development and engineering services for others; Product development for others; Product quality testing; Product research and development; Product testing; Providing a website featuring non-downloadable software using artificial intelligence for use in machine learning and image processing; Providing a website featuring non-downloadable software using artificial intelligence for use in automated kitchen appliances; Providing a website featuring non-downloadable software using artificial intelligence for use in industrial automation; Providing a website featuring technology enabling users to remotely view, monitor, program, operate and control large and small appliances, electrical systems and security systems in homes, offices and vehicles; Providing on-line non-downloadable software using artificial intelligence for use in machine learning and image processing; Providing on-line non-downloadable software using artificial intelligence for use in automated kitchen appliances; Providing technical information updates of industrial process control computer software via the global computer network; Providing temporary use of non-downloadable cloud-based software for connecting, operating, and managing networked vehicles in the internet of things (IoT); Providing temporary use of non-downloadable cloud-based software for connecting, operating, and managing networked kitchen appliances in the internet of things (IoT);

Providing temporary use of non-downloadable cloud-based software for connecting, operating, and managing networked data acquisition and control devices in the internet of things (IoT); Providing temporary use of on-line non-downloadable cloud computing software using artificial intelligence for use in machine learning and image processing; Providing temporary use of on-line non-downloadable cloud computing software using artificial intelligence for use in automated kitchen appliances; Providing temporary use of on-line non-downloadable software and applications using artificial intelligence for use in machine learning and image processing; Providing temporary use of on-line non-downloadable software and applications using artificial intelligence for use in automated kitchen appliances; Providing temporary use of on-line non-downloadable software development tools; Research and development of computer software; Research and development of new products; Research in the field of artificial intelligence; Research in the field of artificial intelligence technology; Scientific research and development; Software as a service (SAAS) services featuring software using artificial intelligence for use in machine learning and image processing; Software as a service (SAAS) services featuring software using artificial intelligence for use in automated kitchen appliances; Testing of computing equipment; Website development for others

Intent to Use: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services. (15 U.S.C. Section 1051(b)).

**Claim of Active Prior Registration(s)**
The applicant claims ownership of active prior U.S. Registration Number(s) 6557978 and 6557799.

The applicant's current Correspondence Information:
    Patel, Dinesh
      PRIMARY EMAIL FOR CORRESPONDENCE: btcroot@gmail.com
      SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): NOT PROVIDED

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).
A fee payment in the amount of $250 has been submitted with the application, representing payment for 1 class(es).

<p align="center">Declaration</p>

☐ **Basis:**
   **If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

   **And/Or**
   **If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☐ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☐ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☐ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /Dinesh Patel/   Date: 06/12/2023
Signatory's Name: Dinesh Patel
Signatory's Position: Owner
Signature method: Signed directly within the form
Payment Sale Number: 98037260
Payment Accounting Date: 06/12/2023

Serial Number: 98037260
Internet Transmission Date: Mon Jun 12 03:35:17 ET 2023
TEAS Stamp: USPTO/FTK-XX.XXX.XX.XX-20230612033518484
569-98037260-860778cce0eb2ad3eef91fc7d15
fad7d7efeceec24302a92475e8ea1bf505cc-CC-
35175108-20230612033255339923

# PEBBLE

Exhibit 5

      Support ▼     

# Manage batchtest.com

← Back to Manage Domains

Registration     Contacts     Configuration

---

**Registrant Contact**                                                        Edit

👤 Dinesh Patel

✉ btcroot@gmail.com

📞 +1.4084548378

📍 2118 Walsh Ave
   Suite 240
   Santa Clara, CA 95050
   US

---

**Administrator Contact**                                                     Edit

👤 Dinesh Patel

✉ btcroot@gmail.com

📞 +1.4084548378

📍 2118 Walsh Ave
   Suite 240
   Santa Clara, CA 95050
   US

---

**Technical Contact**                                                         Edit

👤 Dinesh Patel

Skip to   tcroot@gmail.com

content   1.4084548378

📍 2118 Walsh Ave
   Suite 240



**Billing Contact**

Edit

👤 Dinesh Patel

✉ btcroot@gmail.com

📞 +1.4084548378

📍 2118 Walsh Ave
Suite 240
Santa Clara, CA 95050
US

**WHOIS**

```
Domain name: BATCHTEST.COM
Registry Domain ID:
Registrar WHOIS Server: whois.cloudflare.com
Registrar URL: https://www.cloudflare.com/
Updated Date: 2023-12-08T20:18:10Z
```

View more ▶

## Domain Details

Status

Active

Auto-renew

✓ Auto

Expiry date

December 31, 2024

## Quick actions

Update DNS configuration

Add Pages site

Skip to
content

Contact

What we do



  

Global network ↗

## Resources

Documentation ↗

Blog ↗

Case studies ↗

Partners ↗

API ↗

## Support

Help Center ↗

Community ↗

System status ↗

Trust & Safety ↗

## About us

Our team ↗

Careers ↗

Press ↗

Website Terms of Use ↗

Self-serve Subscription Agreement ↗

Privacy Policy ↗

Your Privacy Choices

Exhibit 6

Domain Registration | BTCroot | Cloudflare

                    + Add ▼    Support ▼     ▼

# Manage pebblesui.com

← Back to Manage Domains

Registration    Contacts    Configuration

---

### Registrant Contact                                    Edit

👤 Dinesh Patel

✉ btcroot@gmail.com

📞 +1.4084548378

📍 2118 Walsh Ave
   Suite 240
   Santa Clara, CA 95050
   US

---

### Administrator Contact                                Edit

👤 Dinesh Patel

✉ btcroot@gmail.com

📞 +1.4084548378

📍 2118 Walsh Ave
   Suite 240
   Santa Clara, CA 95050
   US

---

### Technical Contact                                    Edit

👤 Dinesh Patel

Skip to        tcroot@gmail.com

content        1.4084548378

📍 2118 Walsh Ave
   Suite 240



## Billing Contact

Edit

👤 Dinesh Patel

✉ btcroot@gmail.com

📞 +1.4084548378

📍 2118 Walsh Ave
Suite 240
Santa Clara, CA 95050
US

## WHOIS

```
Domain name: PEBBLESUI.COM
Registry Domain ID:
Registrar WHOIS Server: whois.cloudflare.com
Registrar URL: https://www.cloudflare.com/
Updated Date: 2023-11-30T20:11:18Z
```

View more ▶

## Domain Details

Status
Active

Auto-renew
✓ Auto

Expiry date
**February 2, 2025**

## Quick actions

Update DNS configuration

Add Pages site

Skip to
content

## Contact

## What we do

Domain Registration | BTCroot | Cloudflare





Global network 🗗

## Resources

Documentation 🗗

Blog 🗗

Case studies 🗗

Partners 🗗

API 🗗

## Support

Help Center 🗗

Community 🗗

System status 🗗

Trust & Safety 🗗

## About us

Our team 🗗

Careers 🗗

Press 🗗

Website Terms of Use 🗗

Self-serve Subscription Agreement 🗗

Privacy Policy 🗗

Your Privacy Choices

Exhibit 7

The Wayback Machine - https://web.archive.org/web/20220520224027/https://batchtest.com/embedded-systems-product...

 BatchTest™

## Product Design & Development Engineering Services



CONTACT US ▸

New client hourly discount: $20/hr off for first 200 hours!

BatchTest Provides full design services for your products and technology development. BatchTest team has the unique advantage of expertise in designing Embedded Systems (electronics) based products as well as building Automated Test Equipment for contract manufacturers, supporting manufacturing & testing of products from a wide range of industries. Our well equipped facility also has all necessary tools in-house for microcontroller, microprocessor, and FPGA based designs.

# Planning



BatchTest offers management & planning services for initial as well as continuing stages of a project:

- Idea Feasibility Assessment
- Project Management
- Specifications
- Requirements
- Product Architecture
- Technology research & development (including rapid prototyping and Hardware-in-the-loop systems if needed)
- Continued Product Cycles Support including manufacturing

Product Design & Development Engineering Services | BatchTest

# Electronics Design



Our facility is fully equipped with all tools necessary for in-house hardware design & development, including PCB layout. Our expertise includes:

- ARM and most other 8 ~ 32 bit microcontrollers/processors
- Configurable hardware using Xilinx FPGA
- Ethernet, Serial, CAN/DeviceNet, I$^2$C/SPI, etc communications.
- RF protocols including WiFi, Bluetooth, Zigbee, Firmware programming
- GPRS/GSM mobile communications
- LCD/Touch User Interface

# Software Design



We design and develop cutting edge software; Our extensive software development expertise is in developing Desktop & Cloud Applications, Automation Control Suites, firmware programming, iOS/Android, and cloud-based infrastructure applications. We provide services & solutions using:

- C#, C++/CLI, VB.NET, and Objective-C (MacOS X & iOS)
- LabVIEW & TestStand
- Firmware programming
- SQL, Python, PHP, XML, and HTML/CSS (cloud & SaaS applications)

8/21/24, 5:06 PM

Product Design & Development Engineering Services | BatchTest

# User Experience



Leverage our extensive experience in developing intuitive Pebbles® Human-Machine-Interfaces, some of which include:

- Graphical User Interface
- Web-based User Interface
- Touch Interface
- Touch-free (optical & sound) Interface
- iOS / Android Mobile Interface

BatchTest provides User Interface solutions based on Windows, Mac OSX, iOS, and Android platforms. BatchTest also provides web-based solutions which are platform independent.

# Mechanical



Projects requiring minimal mechanical designs are handled in-house by BatchTest engineering, for extensive mechanical design & tooling needs we work with our trusted business partner to take care of all project needs. As such, our clients have the convenience of working with one point of contact at BatchTest for all project needs.

# Manufacturing Support



BatchTest has extensive expertise in providing manufacturing support including turn-key Industrial Automation Solutions as well as a variety of Automated Test Equipment:

- Full Factory Automation
- Real-time Production Monitoring
- Automated Test Equipment
- Automated Functionality Testers
- Data-mining Servers
- Automated transfer of design testing from R&D to Manufacturing
- Real-time Configurable Reports



Automated Test Equipment

Pebbles™ UI

BatchTest License Manager

Automation

Product Design & Development Engineering Services

Medical Devices

LabVIEW Consultants

About Us

Contact Us



Exhibit 8

8/21/24, 5:12 PM                          LabVIEW Consultants | BatchTest

The Wayback Machine – https://web.archive.org/web/20220811171129/https://batchtest.com/labview-consultants/



## LabVIEW Consultants



CONTACT US ▸

New client hourly discount: $20/hr off for first 200 hours!

If you have a need for well designed LabVIEW application or temporary help with extra LabVIEW resources, our expert engineers with experience spanning multiple industries are the best fit.

# Top NI Certification

You will have the assurance that your need is handled by experts in LabVIEW who also have expertise in electrical engineering and hardware design. Our **Certified LabVIEW Architect** expertise includes designs on Windows & MacOS X, as well as LabVIEW RT on real-time targets.



# Wide range of Expertise

Our expertise includes designs on Windows & MacOS X, as well as LabVIEW RT/FPGA on real-time targets. You will have the assurance that your need is handled by experts in LabVIEW who also have background in electrical engineering and hardware design, as well as industry experience in:

- Medical Devices / Bio-Technology
- Contract Manufacturing
- Semiconductor
- Automotive
- Defense
- Photonics
- Support on Windows, MacOS X, and Linux platforms

# Creative & robust designs



BatchTest is the maker of Pebbles UI for LabVIEW, an add-on toolkit that significantly enhances graphical feel of LabVIEW user interface. We are also designers of BTC State-Machine, a highly optimized state-machine controller design that simplifies LabVIEW application designs while preventing messy designs.

# Graphics & Vision



Our unique grapics & animations expertise on LabVIEW platform enables us to provide graphics and vision solutions to clients which no one else in the world can offer. BatchTest is the only LabVIEW consultant in the world with the technology to provide creation, manipulation, and interfacing of vector graphics (.SVG, .AI, etc) on LabVIEW graphical user interface (front-panel), including transparency manipulation (alpha-channel; 8~64 bit colors) and HDR graphics.

# Full Product-cycle Services

In addition to having top-rated LabVIEW expertise since late 1980s, we also have several decades of experience in providing full product-cycle services to help clients in realization of their concepts into designed-for-manufacturing products.

- Software, Hardware, Simulation, and Test Engineering
- Rapid prototyping
- Modelling & Simulation (including MATLAB/Simulink with LabVIEW)
- DFMEA, 510k FDA submissions
- Parametric & Functional Testers (R&D)
- High-speed End-of-Line Automated Testers (Production)
- Expertise in "Designed for Manufacturing"

# NI Alliance Partner

BatchTest is NI Alliance Partner in Santa Clara; we are located only minutes from some of the major Silicon Valley companies. We support most NI hardware including PXI and cRIO. We also support all NI software tools including LabVIEW, LabVIEW RT/FPGA, TestStand, and LabWINDOWS/CVI.







Automation

Product Design & Development Engineering Services

Medical Devices

LabVIEW Consultants

About Us

Contact Us

Exhibit 9

HOME / SUPPORT / SOFTWARE AND DRIVER DOWNLOADS / NI TOOLS NETWORK /
DOWNLOAD DETAIL PAGE



## Pebbles UI State Machine Controller

BatchTest Corporation

The Pebbles UI State Machine Controller provides a UI with drag-and-drop features for creating state machines.

The Pebbles UI State Machine Controller is a software add-on that provides new controls and indicators for LabVIEW front panels, made using Adobe technology and vector graphics. The add-on includes predefined states, such as Init, Main, and Shutdown, that you can use to automate tasks. You can also automatically manage timing of periodic tasks such as screen refresh. Additionally, the Pebbles UI State Machine Controller features an enumerated type-based design for high performance and to help you avoid the user errors of a string-based state machine.

- Read Less

## DOWNLOADS

**Supported OS**

Windows

**Version**

Latest

**Included Editions**
Full

**Application Bitness**

32-bit and 64-bit

**Language**

English

**Disclaimer:** The Third-Party Add-Ons for LabVIEW on this page are offered by independent third-party providers who are solely responsible for these products. NI has no responsibility whatsoever for the performance, product descriptions, specifications, referenced content, or any and all claims or representations of these third-party providers. NI makes no warranty whatsoever, neither express nor implied with respect to the goods, the referenced contents, or any and all claims or representations of the third-party providers.

**Technical Support:** Contact BatchTest Corporation

## Pebbles UI State Machine Controller Latest

**Release Date**
May/16/2017

> **Supported OS**

> **Language**

> **Checksum**

**Note:** Install JKI VI Package Manager (VIPM) before installing this product. VIPM helps you discover, create, and install LabVIEW add-ons.

### Download - https://www.ni.com/en/support/downloads/tools-network/download/unpackaged.pebbles-ui-state-machine-controller.374409.html

**File Size**
514.98 B

Exhibit 10

The Wayback Machine - https://web.archive.org/web/20220811171046/https://batchtest.com/automated-test-equipment/



## Automated Test Equipment



CONTACT US ▸

Whether you need an upgrade to your Data-acquisition System or looking for a turnkey high-speed assembly line (End-of-line) automated tester, BatchTest is your one-stop shop for your Automation & Automated Testing needs. We provide custom turn-key Automation and Automated Testing solutions to a wide range of industries including Semiconductor, Automotive, Defense/Aerospace, and Contract manufacturers. We also offer Product Design & Development Services.

Automated Test Equipment | BatchTest

# Automation Servers



Use our SKYNET Automation Server to:

- Control, track, and maintain of multiple compatible equipment from one centralized location
- Remotely deploy software updates and equipment setup
- Get a centralized real-time access to your processes
- Synchronize and maintain equipment setup files, firmware, and software across all your compatible equipment (a functionality similar to that of Dropbox, but made for automation equipment)
- Gather data from various sources, streamlined into standard format for real-time reporting and predictive analysis

# Automated Functionality Testers



Features of our Synchronizing Automated Tester<sup>TM</sup>:

- Easily user-programmable and customizable
- Automatically synchronizes equipment setup, firmware, and software with other compatible equipment
- Customized per your requirements
- Intuitive Desktop and/or Web-based user interface
- Able to automatically generate test sequences
- Option of Touch-screen and Hands-free user interface
- Numerous readily available modules – CAN/DeviceNet, Serial RS232/422/485, EtherCAT, Digital & Analog I/O, and many more automatically downloadable from our Library Server

8/21/24, 5:27 PM                          Automated Test Equipment | BatchTest

# Rapid Prototypes



Save time and costs while dramatically increasing pace of your device development using our rapid prototypes. BatchTest specializes in offering rapid electrical/electronic prototypes tailored to client's custom needs. We provide rapid prototyping using several of National Instrument off-the-shelf configurable hardware along with configurable software on client's choice of development platform.

# Data Acquisition Systems



If your need is for simple data acquisition, BatchTest can implement a cost-effective custom data acquisition that suits your needs. We design configurable and upgradable DAQ systems for long-term usage, our object-oriented design also ensures that components in our designs are re-usable in your future projects.

- Temperature, Voltage, Current, etc monitoring and data recording
- Vision modules for inspection
- High-speed DAQ, for eg, for optical industry

# Hardware-In-the-Loop Systems



We design custom Hardware-In-the-Loop systems per client requirements using two hardware platforms: National Instruments PXI, and dSPACE. We ensure that your models (usually MATLAB/Simulink or Ni LabVIEW) run real-time on these platform with required input/putputs that can be interfaced with rest of your system. We have the capability to also support large models with components deployed over various nodes within an inter-connected system.



Automated Test Equipment

Pebbles™ UI

BatchTest License Manager

Automation

Product Design & Development Engineering Services

Medical Devices

LabVIEW Consultants

About Us

Contact Us

8/21/24, 5:27 PM                                    Automated Test Equipment | BatchTest



Exhibit 11

2/21/24, 12:29 PM

API (Integration) ‹ — WordPress

1/3

Dashboard
Posts
Media
Pages
Comments
Appearance
Plugins
Users
Tools
Settings
Pebbles®

Manage Licenses
Add/Edit Licenses
Manage Template
Add/Edit Template
Settings
Security (SSL)
**API (Integration)**
Administration
Maintenance
Sync

## The Pebbles® API:    Third Party Integration

The following data is unique to your website. You are very strongly advised to keep it confidential to ensure continued safe operation of your website

The Pebbles® API authentication POST URL for your site ("post-url") is:

https://skynet.pebb1esu1.com/█████

(Please note that the above URL will not be accessible through a web-browser because it only responds if valid authentication data are POSTed using HTTPS)

Only for reference >>  The unique ID issued by our Master Pebbles® Server specifically for this instance of Pebble™ X server on this website ("site-key") is:

1120 ████

The following key ("app-key") must be used by any outside interface to programmatically create Pebbles® licenses and/or manage Pebbles® options and configurations with the Pebbles® API and this instance of the Pebble™ X server:

0336 ████

## 3rd Party Integration / Shopping Cart Integration

To integrate a 3rd party payment system (for example, PayPal, Square, Stripe, etc) or your shopping cart with the Pebbles® Manager, please see the following steps or contact BatchTest.

1. Use your 3rd party payment service hook to start the following steps
(for example, to integrate PayPal checkout with Pebbles® Manager, please first review PayPal's API at
https://developer.paypal.com/docs/checkout/standard/integrate/ and once a payment is completed, call the following steps while using the transaction data provided by PayPal)
2. Generate POST data (see the example below or see the Pebbles® API documentation)
3. Send POST data to the above POST URL
4. Process the returned data
(Please note that the Pebble™ X server only supports HTTPS POST protocol), you may obtain a free SSL certificate for your website through

https://skynet.pebblesui.com/wp-admin/admin.php?page=pebbles_integration_help_page

2/21/24, 12:29 PM

API (Integration) ‹ — WordPress

https://letsencrypt.org (if needed)

## POST Values

The Pebble™ X server expects a certain set of variables to be sent to it via HTTPS POST. These variables are:

Required Variables: (See Pebbles® API documentation for details)

a. **app-key** - A unique/secret API key for authentication (you can find the secret key value in the settings menu of this plugin)

b. **login** – a valid user ID on this website to whom the license is assigned

c. **fx** – The function (or action) being performed. The values can be pebbles_create_new or pebbles_activate or pebbles_deactivate. To use Microsoft Excel based templates, use "fx=xlsx" to download (or upload) and process Excel spreadsheets using Pebbles®.

Optional Variables
----------------------

d. Customer First Name: The first name of the customer

e. Customer Last Name: The last name of the customer

f. Customer Login ID: The login ID of the customer

g. Company Name: The customer's company name

h. Maximum Domains Allowed: The number of domains this license key can be used on

i. Transaction ID: A unique transaction ID to reference the transaction

## Return Value

Only upon successful processing, the Pebble™ X server will return a delimiter-separated (defined by you; default is "@@") plain text message similar to the following:

`ok@@...........................93366@@user_id@@license_key@@MPL...........................7100...`

or

`Error@@appkey is invalid@@...`

1. The first line is an indication of success or error

2. The second line is the result.

3. The third line is additional message that resulted from the request.

## Sample PHP Code

Below is a sample PHP code that shows how you can create a license via the API

```
/*** Required data ***/
// Post URL (Please note that the Pebble™ X server *only* works with HTTPS POST protocol)
```

### Sidebar menu (left)

- Collapse menu
- Dashboard
- Posts
- Media
- Pages
- Comments
- Appearance
- Plugins
- Users
- Tools
- Settings
- **Pebbles®**
  - Manage Licenses
  - Add/Edit Licenses
  - Manage Templates
  - Add/Edit Template
  - Settings
  - Security (SSL)
  - **API (Integration)**
  - Administration
  - Maintenance
  - Sync

2/3

2/21/24, 12:29 PM

API (Integration) ‹ — WordPress

Collapse menu

- Dashboard

- Posts
- Media

- Pages
- Comments

- Appearance

- Plugins
- Users
- Tools
- Settings

- Pebbles®

  Manage Licenses
  Add/Edit Licenses
  Manage Templates
  Add/Edit Template
  Settings
  Security SSL

**API (Integration)**
  Administration
  Maintenance
  Sync

```php
$postURL = "https://skynet.pebblesui.com.           ;

// NOTE - you do not need to specify the SiteKey as it is automatically used by Pebbles® modules and for the
use of Pebbles® API through Pebble™ X server.

// The following Appkey is assigned to your license of Pebbles®",
// please keep it confidential and use it for development but do not share with others.
$appKey =           0336";

/*** Optional Data ***/
$firstname = "John";
$lastname = "Doe";
$login_id = "a_valid_user_id";     // The above user ID must already exist on the website;
                                    // A user must create an account before a license is assigned to it.

// prepare the data
$data = array ();
$data['site-key'] = $siteKey;
$data['app-key'] = $appKey;
$data['fx'] = 'pebbles_create_new';
$data['first_name'] = $firstname;
$data['last_name'] = $lastname;
$data['login'] = $login_id;

// send data to post URL
$ch = curl_init ($postURL);
curl_setopt ($ch, CURLOPT_POST, true);
curl_setopt ($ch, CURLOPT_POSTFIELDS, $data);
curl_setopt ($ch, CURLOPT_RETURNTRANSFER, true);
$returnValue = curl_exec ($ch);

// Process the return values
//var_dump($returnValue);
```

*Thank you for creating with WordPress.*

Version 6.4.3

Exhibit 12

8/21/24, 6:14 PM                                    Add/Edit Template ‹ Pebbles® — WordPress



Dashboard
Posts
Media
Pages
Comments
Appearance
Plugins 4
Users
Tools
Settings
Pebbles®
Manage Licenses
Add/Edit Licenses
Manage Templates
Add/Edit Template
Settings
Security (SSL)
API Integration
Administration
Maintenance
Sync
Collapse menu

WordPress 6.6.1 is available! Please update now.

# Pebbles®: Add/Edit Templates

You can add a new Template or edit an existing one through this interface.

## Template Details

**Template Name**

This field must have a unique identifier/name for the current Template. When adding a new record or editing an existing record, this field cannot be left blank. You can change this field to a suitable name if you like.

[ Save Record ]

### Operating Mode (click to change)

[ NORMAL MODE ]

(Keep "EDIT" mode only when editing this template)

### Spreadsheet Template File Upload or Download

[ Choose File ] No file chosen        [ Upload Template ]   |   [ Download Template ]

(Upoad or Download template file in Excel format (.XLSX); Contact Pebbles® Admin for options in XML and CSV formats)

**Please specify the matching Pebbles® software version on your XLSX spreadsheet. You may find the software version on "About..." dropdown menu of our downloadable software or under "Settings" submenu of Pebbles® menu on the left hand side of this page.**

(The software version to use with current website is v.276, enter only the numeric portion of the software version on your template)

[ Save Record ]

[ Manage Templates ]



Thank you for creating with WordPress.

Get Version 6.6.1

Dashboard

Posts

Media

Pages

Comments

Appearance

Plugins  4

Users

Tools

Settings

Pebbles

Add/Edit Template

Exhibit 13

Generated on: This page was generated by TSDR on 2024-08-21 21:18:47 EDT

Mark: PEBBLE STREAM

Pebble Stream

US Serial Number: 97685703

Application Filing Date: Nov. 21, 2022

Filed as TEAS Plus: Yes

Currently TEAS Plus: Yes

Register: Principal

Mark Type: Trademark, Service Mark

TM5 Common Status Descriptor:

LIVE/APPLICATION/Opposition Pending

The pending trademark application has been examined by the Office and was published for opposition, at which time one or more oppositions were filed but they have not yet been decided.

Status: An opposition after publication is pending at the Trademark Trial and Appeal Board. For further information, see TTABVUE on the Trademark Trial and Appeal Board web page.

Status Date: Dec. 04, 2023

Publication Date: Oct. 10, 2023

## Mark Information

Mark Literal Elements: PEBBLE STREAM

Standard Character Claim: Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

Mark Drawing Type: 4 - STANDARD CHARACTER MARK

## Goods and Services

Note:
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

For: Downloadable software for deploying enterprise-scale analytical and business logic on multiple application platforms, including the web, server, cloud, and mobile phones applications utilizing spreadsheets

International Class(es): 009 - Primary Class

U.S Class(es): 021, 023, 026, 036, 038

Class Status: ACTIVE

Basis: 1(a)

First Use: Jun. 18, 2019

Use in Commerce: Aug. 16, 2019

For: Software as a service (SAAS) services featuring software for deploying enterprise scale analytical and business logic on multiple application platforms, including the web, server, cloud, and mobile phones utilizing spreadsheets

International Class(es): 042 - Primary Class

U.S Class(es): 100, 101

Class Status: ACTIVE

Basis: 1(a)

First Use: Jun. 18, 2019

Use in Commerce: Aug. 16, 2019

## Basis Information (Case Level)

Filed Use: Yes

Currently Use: Yes

Filed ITU: No

Currently ITU: No

| | | | | |
|---|---|---|---|---|
| **Filed 44D:** | No | | **Currently 44D:** | No |
| **Filed 44E:** | No | | **Currently 44E:** | No |
| **Filed 66A:** | No | | **Currently 66A:** | No |
| **Filed No Basis:** | No | | **Currently No Basis:** | No |

## Current Owner(s) Information

**Owner Name:** Georgetown Software House, Inc.

**Owner Address:** 6704 5th St NW
Washington, DISTRICT OF COLUMBIA UNITED STATES 20012

**Legal Entity Type:** CORPORATION    **State or Country Where Organized:** DISTRICT OF COLUMBIA

## Attorney/Correspondence Information

### Attorney of Record

**Attorney Name:** DARRIN A. AUITO    **Docket Number:** GSH-002-TM

**Attorney Primary Email Address:** darrin@hea-ip.com    **Attorney Email Authorized:** Yes

### Correspondent

**Correspondent Name/Address:** DARRIN A. AUITO
HEA LAW PLLC
8000 TOWERS CRESCENT DRIVE
13TH FLOOR
MCLEAN, VIRGINIA UNITED STATES 22182

**Phone:** 571-933-6437

**Correspondent e-mail:** darrin@hea-ip.com trademarks@hea-ip.com uspto mail@hea-ip.com    **Correspondent e-mail Authorized:** Yes

### Domestic Representative - Not Found

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Dec. 04, 2023 | OPPOSITION INSTITUTED NO. 999999 | 288564 |
| Oct. 19, 2023 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Oct. 19, 2023 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Oct. 19, 2023 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Oct. 19, 2023 | EXTENSION OF TIME TO OPPOSE RECEIVED | |
| Oct. 10, 2023 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Oct. 10, 2023 | PUBLISHED FOR OPPOSITION | |
| Sep. 20, 2023 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Sep. 02, 2023 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Sep. 02, 2023 | ASSIGNED TO EXAMINER | |
| Dec. 12, 2022 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Nov. 24, 2022 | NEW APPLICATION ENTERED | |

## TM Staff and Location Information

### TM Staff Information

**TM Attorney:** NEPTUNE, EVONNE MARIE    **Law Office Assigned:** LAW OFFICE 127

### File Location

**Current Location:** PUBLICATION AND ISSUE SECTION    **Date in Location:** Sep. 07, 2023

## Proceedings

**Summary**

**Number of** 2

Proceedings:

## Type of Proceeding: Opposition

| | | | | |
|---|---|---|---|---|
| Proceeding Number: | 91288564 | | Filing Date: | Dec 04, 2023 |
| Status: | Pending | | Status Date: | Dec 04, 2023 |
| Interlocutory Attorney: | TASHIA A BUNCH | | | |

### Defendant

| | |
|---|---|
| Name: | Georgetown Software House, Inc. |
| Correspondent Address: | DARRIN A. AUITO<br>HEA LAW PLLC<br>8000 TOWERS CRESCENT DRIVE, 13TH FLOOR<br>MCLEAN VA UNITED STATES , 22182 |
| Correspondent e-mail: | darrin@hea-ip.com , trademarks@hea-ip.com , usptomail@hea-ip.com |

Associated marks

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLE STREAM | | 97685703 | |

### Plaintiff(s)

| | |
|---|---|
| Name: | Dinesh Patel |
| Correspondent Address: | DINESH PATEL<br>2118 WALSH AVE, SUITE 240<br>SANTA CLARA CA UNITED STATES , 95050 |
| Correspondent e-mail: | btcroof@gmail.com |

Associated marks

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLES | | 88983079 | 6557978 |
| PEBBLES | | 88751781 | 6557799 |

### Prosecution History

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 4 | ANSWER | Jan 12, 2024 | |
| 3 | INSTITUTED | Dec 04, 2023 | |
| 2 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | Dec 04, 2023 | Jan 13, 2024 |
| 1 | FILED AND FEE | Dec 04, 2023 | |

## Type of Proceeding: Extension of Time

| | | | | |
|---|---|---|---|---|
| Proceeding Number: | 97685703 | | Filing Date: | Oct 19, 2023 |
| Status: | Terminated | | Status Date: | Dec 09, 2023 |
| Interlocutory Attorney: | | | | |

### Defendant

| | |
|---|---|
| Name: | Georgetown Software House, Inc. |
| Correspondent Address: | KHANDOKER SHAHED KADER<br>LAW OFFICE OF K.S. KADER, PLLC<br>1629 K ST. NW, SUITE 300<br>WASHINGTON DC UNITED STATES , 20006 |
| Correspondent e-mail: | ksk@kaderlaw.com , bedlako.george@georgetownsoftware.house |

Associated marks

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| PEBBLE STREAM | | 97685703 | |

### Potential Opposer(s)

|  |  |
|---|---|
| **Name:** | Dinesh Patel |
| **Correspondent Address:** | DINESH PATEL<br>2118 WALSH AVE, SUITE 240<br>SANTA CLARA CA UNITED STATES , 95050 |
| **Correspondent e-mail:** | btcroot@gmail.com |

**Associated marks**

| Mark | Application Status | Serial Number | Registration Number |
|---|---|---|---|
| | | | |

## Prosecution History

| Entry Number | History Text | Date | Due Date |
|---|---|---|---|
| 2 | EXT GRANTED | Oct 19, 2023 | |
| 1 | FIRST 30-DAY REQUEST TO EXT TIME TO OPPOSE | Oct 19, 2023 | |

## Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 97685703**
**Filing Date: 11/21/2022**

*NOTE: Data fields with the * are mandatory under TEAS Plus. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

### The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| TEAS Plus | YES |
| **MARK INFORMATION** | |
| *MARK | Pebble Stream |
| *STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | Pebble Stream |
| *MARK STATEMENT | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| REGISTER | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Georgetown Software House, Inc. |
| *MAILING ADDRESS | 6704 5th St NW |
| *CITY | Washington |
| *STATE (Required for U.S. applicants) | District of Columbia |
| *COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| *ZIP/POSTAL CODE (Required for U.S. and certain international addresses) | 20012 |
| PHONE | 202-257-7334 |
| *EMAIL ADDRESS | XXXX |
| WEBSITE ADDRESS | http://www.georgetownsoftware.house |
| **LEGAL ENTITY INFORMATION** | |
| *TYPE | CORPORATION |
| * STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY OF INCORPORATION | District of Columbia |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| *INTERNATIONAL CLASS | 009 |

| *IDENTIFICATION | Downloadable software for **deploying enterprise-scale analytical and business logic on multiple application platforms, including the web, server, cloud, and mobile phones applications utilizing spreadsheets.** |
|---|---|
| *FILING BASIS | SECTION 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 06/18/2019 |
| FIRST USE IN COMMERCE DATE | At least as early as 08/16/2019 |
| SPECIMEN FILE NAME(S) | |
| JPG FILE(S) | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1 \ FTK0005.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0006.JPG |
| ORIGINAL PDF FILE | SPE0-751031086-2022112110 1432156909 _. Pebble_Stream_Docs_Page.pdf |
| CONVERTED PDF FILE(S) (1 page) | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0003.JPG |
| ORIGINAL PDF FILE | SPE0-751031086-2022112110 1432156909 _. Pebble_Stream_Website.pdf |
| CONVERTED PDF FILE(S) (1 page) | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0004.JPG |
| ORIGINAL PDF FILE | SPE0-751031086-2022112110 1432156909 _. Pebble_Stream_-_How_it_Works_copy.pdf |
| CONVERTED PDF FILE(S) (13 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0007.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0008.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0009.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0010.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0011.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0012.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0013.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0014.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0015.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0016.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0017.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT |

| | |
|---|---|
| | 18\976\857\97685703\xml1\ FTK0018.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0019.JPG |
| SPECIMEN DESCRIPTION | 1. Screenshot of Pebble Stream website 2. Screenshot of Pebble Stream Documents page 3. Screenshot of Pebble Stream patent page 4. Pebble Stream How it Works document for marketing 5. Pebble Streams Directives page |
| WEBPAGE URL | https://www.pebblestream.com/ |
| WEBPAGE DATE OF ACCESS | 11/17/2022 |
| WEBPAGE URL | https://docs.pebblestream.com/docs |
| WEBPAGE DATE OF ACCESS | 11/17/2022 |
| WEBPAGE URL | https://www.pebblestream.com/patents |
| WEBPAGE DATE OF ACCESS | 11/21/2022 |
| *INTERNATIONAL CLASS | 042 |
| *IDENTIFICATION | Software as a service (SAAS) services featuring software for deploying enterprise scale analytical and business logic on multiple application platforms, including the web, server, cloud, and mobile phones utilizing spreadsheets. |
| *FILING BASIS | SECTION 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 06/18/2019 |
| FIRST USE IN COMMERCE DATE | At least as early as 08/16/2019 |
| SPECIMEN FILE NAME(S) | |
| JPG FILE(S) | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1 \ FTK0036.JPG |
| ORIGINAL PDF FILE | SPE0-1-751031086-20221121_101432156909_._Pebble_Stream_-_How_it_Works_copy.pdf |
| CONVERTED PDF FILE(S) (13 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0020.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0021.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0022.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0023.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0024.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0025.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0026.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0027.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0028.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0029.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0030.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0031.JPG |
| | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0032.JPG |
| ORIGINAL PDF FILE | SPE0-1-751031086-20221121_101432156909_._Pebble_Str eam_Docs_Page.pdf |
| CONVERTED PDF FILE(S) (1 page) | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0033.JPG |
| ORIGINAL PDF FILE | SPE0-1-751031086-20221121_101432156909_._Pebble_Str eam_Website.pdf |
| CONVERTED PDF FILE(S) (1 page) | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0034.JPG |
| ORIGINAL PDF FILE | SPE0-751031086-2022112110_1432156909_._Pebble-Strea m_Patents_Page_with_date_and_time.pdf |
| CONVERTED PDF FILE(S) (1 page) | \\TICRS\EXPORT18\IMAGEOUT 18\976\857\97685703\xml1\ FTK0035.JPG |
| SPECIMEN DESCRIPTION | 1. Screenshot of Pebble Stream website 2. Screenshot of Pebble Stream Documents page 3. Screenshot of Pebble Stream patent page 4. Pebble Stream How it Works document for marketing 5. Pebble Streams Directives page |
| WEBPAGE URL | https://www.pebblestream.com/ |
| WEBPAGE DATE OF ACCESS | 11/17/2022 |
| WEBPAGE URL | https://docs.pebblestream.com/docs |
| WEBPAGE DATE OF ACCESS | 11/17/2022 |
| WEBPAGE URL | https://www.pebblestream.com/patents |
| WEBPAGE DATE OF ACCESS | 11/21/2022 |
| **ADDITIONAL STATEMENTS INFORMATION** | |
| *TRANSLATION (if applicable) | |
| *TRANSLITERATION (if applicable) | |
| *CLAIMED PRIOR REGISTRATION (if applicable) | |
| *CONSENT (NAME/LIKENESS) (if applicable) | |
| *CONCURRENT USE CLAIM (if applicable) | |
| **ATTORNEY INFORMATION** | |
| NAME | Khandoker Shahed Kader |
| ATTORNEY BAR MEMBERSHIP NUMBER | XXX |
| YEAR OF ADMISSION | XXXX |

| U.S. STATE/ COMMONWEALTH/ TERRITORY | XX |
|---|---|
| FIRM NAME | Law Office of K.S. Kader, PLLC |
| INTERNAL ADDRESS | Suite 300 |
| STREET | 1629 K St. NW |
| CITY | Washington |
| STATE | District of Columbia |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| ZIP/POSTAL CODE | 20006 |
| PHONE | 202-599-2289 |
| EMAIL ADDRESS | ksk@kaderlaw.com |
| **CORRESPONDENCE INFORMATION** | |
| NAME | Khandoker Shahed Kader |
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | ksk@kaderlaw.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | bediako.george@georgetownsoftware.house |
| **FEE INFORMATION** | |
| APPLICATION FILING OPTION | TEAS Plus |
| NUMBER OF CLASSES | 2 |
| APPLICATION FOR REGISTRATION PER CLASS | 250 |
| *TOTAL FEES DUE | 500 |
| *TOTAL FEES PAID | 500 |
| **SIGNATURE INFORMATION** | |
| * SIGNATURE | /Khandoker Shahed Kader/ |
| * SIGNATORY'S NAME | Khandoker Shahed Kader |
| * SIGNATORY'S POSITION | Attorney of Record, District of Columbia and Maryland Bar Member |
| SIGNATORY'S PHONE NUMBER | 202-599-2289 |
| * DATE SIGNED | 11/21/2022 |
| SIGNATURE METHOD | Signed directly within the form |

# Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number:** 97685703
**Filing Date:** 11/21/2022

## To the Commissioner for Trademarks:

**MARK:** Pebble Stream (Standard Characters, see mark)
The literal element of the mark consists of Pebble Stream. The mark consists of standard characters, without claim to any particular font style, size, or color.
The applicant, Georgetown Software House, Inc., a corporation of District of Columbia, having an address of
    6704 5th St NW
    Washington, District of Columbia 20012
    United States
    202-257-7334(phone)
    XXXX

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

**For specific filing basis information for each item, you must view the display within the Input Table.**
International Class 009: Downloadable software for deploying enterprise-scale analytical and business logic on multiple application platforms, including the web, server, cloud, and mobile phones applications utilizing spreadsheets.

Use in Commerce: The applicant is using the mark in commerce on or in connection with the identified goods/services. The applicant attaches, or will later submit, one specimen as a JPG/PDF image file showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, regardless of whether the mark itself is in the standard character format or is a stylized or design mark. The specimen image file may be in color, and the image must be in color if color is being claimed as a feature of the mark.

In International Class 009, the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 06/18/2019, and first used in commerce at least as early as 08/16/2019, and is now in use in such commerce. The applicant is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, consisting of a(n) 1. Screenshot of Pebble Stream website 2. Screenshot of Pebble Stream Documents page 3. Screenshot of Pebble Stream patent page 4. Pebble Stream How it Works document for marketing 5. Pebble Streams Directives page.
**JPG file(s):**
Specimen File1
Specimen File2
**Original PDF file:**
SPE0-751031086-2022112110_1432156909_._Pebble_Strea m_Docs_Page.pdf
**Converted PDF file(s)** (1 page)
Specimen File1
**Original PDF file:**
SPE0-751031086-2022112110_1432156909_._Pebble_Strea m_Website.pdf
**Converted PDF file(s)** (1 page)
Specimen File1
**Original PDF file:**
SPE0-751031086-2022112110_1432156909_._Pebble_Strea m_-_How_it_Works_copy.pdf
**Converted PDF file(s)** (13 pages)
Specimen File1
Specimen File2
Specimen File3
Specimen File4
Specimen File5

Specimen File6
Specimen File7
Specimen File8
Specimen File9
Specimen File10
Specimen File11
Specimen File12
Specimen File13

Webpage URL: https://www.pebblestream.com/
Webpage Date of Access: 11/17/2022
Webpage URL: https://docs.pebblestream.com/docs
Webpage Date of Access: 11/17/2022
Webpage URL: https://www.pebblestream.com/patents
Webpage Date of Access: 11/21/2022

**For specific filing basis information for each item, you must view the display within the Input Table.**
International Class 042: Software as a service (SAAS) services featuring software for deploying enterprise scale analytical and business logic on multiple application platforms, including the web, server, cloud, and mobile phones utilizing spreadsheets.

Use in Commerce: The applicant is using the mark in commerce on or in connection with the identified goods/services. The applicant attaches, or will later submit, one specimen as a JPG/PDF image file showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, regardless of whether the mark itself is in the standard character format or is a stylized or design mark. The specimen image file may be in color, and the image must be in color if color is being claimed as a feature of the mark.

In International Class 042, the mark was first used by the applicant or the applicant's related company or licensee predecessor in interest at least as early as 06/18/2019, and first used in commerce at least as early as 08/16/2019, and is now in use in such commerce. The applicant is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods/services, consisting of a(n) 1. Screenshot of Pebble Stream website 2. Screenshot of Pebble Stream Documents page 3. Screenshot of Pebble Stream patent page 4. Pebble Stream How it Works document for marketing 5. Pebble Streams Directives page.
**JPG file(s):**
Specimen File1
**Original PDF file:**
SPE0-1-751031086-20221121 101432156909 . Pebble_Str eam _ How_it_Works_copy.pdf
**Converted PDF file(s)** (13 pages)
Specimen File1
Specimen File2
Specimen File3
Specimen File4
Specimen File5
Specimen File6
Specimen File7
Specimen File8
Specimen File9
Specimen File10
Specimen File11
Specimen File12
Specimen File13
**Original PDF file:**
SPE0-1-751031086-20221121 101432156909 . Pebble_Str eam _Docs_Page.pdf
**Converted PDF file(s)** (1 page)
Specimen File1
**Original PDF file:**
SPE0-1-751031086-20221121 101432156909 . Pebble_Str eam _Website.pdf
**Converted PDF file(s)** (1 page)
Specimen File1
**Original PDF file:**
SPE0-751031086-2022112110 1432156909 . Pebble-Strea m _Patents_Page_with_date_and_time.pdf
**Converted PDF file(s)** (1 page)
Specimen File1

Webpage URL: https://www.pebblestream.com/
Webpage Date of Access: 11/17/2022
Webpage URL: https://docs.pebblestream.com/docs
Webpage Date of Access: 11/17/2022
Webpage URL: https://www.pebblestream.com/patents
Webpage Date of Access: 11/21/2022

For informational purposes only, applicant's website address is: http://www.georgetownsoftware.house
The owner's/holder's proposed attorney information: Khandoker Shahed Kader. Khandoker Shahed Kader of Law Office of K.S. Kader, PLLC, is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, is located at

    Suite 300
    1629 K St. NW
    Washington, District of Columbia 20006
    United States
    202-599-2289(phone)
    ksk@kaderlaw.com

Khandoker Shahed Kader submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.
The applicant's current Correspondence Information:

    Khandoker Shahed Kader
    PRIMARY EMAIL FOR CORRESPONDENCE: ksk@kaderlaw.com
    SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): bediako.george@georgetownsoftware.house

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).
A fee payment in the amount of $500 has been submitted with the application, representing payment for 2 class(es).

<p align="center">**Declaration**</p>

☐ **Basis:**
    **If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

    **And/Or**
    **If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☐ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☐ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☐ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration

resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /Khandoker Shahed Kader/   Date: 11/21/2022
Signatory's Name: Khandoker Shahed Kader
Signatory's Position: Attorney of Record, District of Columbia and Maryland Bar Member
Signatory's Phone Number: 202-599-2289
Signature method: Signed directly within the form
Payment Sale Number: 97685703
Payment Accounting Date: 11/21/2022

Serial Number: 97685703
Internet Transmission Date: Mon Nov 21 10:39:49 ET 2022
TEAS Stamp: USPTO/FTK-XX.XXX.XX.XX-2022112110395121 7
815-97685703-82073fa37569a4b6b19c351c77b
10e6011abb048373924ae75d5b442666962c9ed-
CC-39494227-20221121101432156909

# Pebble Stream



**Pebble Stream**

v1.0

Documentation | Recipes

Getting Started with Pebbl... | Join Zen's Slack

ENTERPRISE DOCUMENTATION

Getting Started with Pebble Stream
Spreadsheet Design Best Practices
Writing Performant Spreadsheets
Supported Spreadsheet Functions
Runtime API
Release Notes

DIRECTIVES
Transformative Directives
Annotative Directives
Generative Directives

ZEN DOCUMENTATION
Introduction
Best Practices
Getting Started with Zen for Google Sheets
Features
Directives
Troubleshooting

Community Discussions

# Getting Started with Pebble Stream

This page will help you get started with Pebble Stream.

> Pebblers are spreadsheet users that design Pebble Stream compatible spreadsheets.

We believe Pebblers are bonafide software developers, and the spreadsheet is the perfect Integrated Development Environment (IDE)!

## Introduction

This document contains information a business analyst would need in order to convert an Excel spreadsheet into cloud-enabled software.

It covers Pebble Stream's capabilities and limitations, as well as best practices for creating performant spreadsheets.

It also introduces the powerful concept of spreadsheet directives.

## Philosophy

Business Analysts use Excel to create models to solve business problems.

Traditionally, business analysts relied on software developers to convert Excel models into cloud executable

⊕ Suggest Edits

TABLE OF CONTENTS

Introduction
Philosophy
Methodology
Input
Isolated
Notes
Transient
Output
Worksheet Design
Supported Spreadsheet Functions
Excel Errors
Unsupported Excel Features
Worksheet Dependencies
Pebble Stream Directives

Log In

Search



Pebble Stream

Company    Docs

Get in touch

New Product   We've just launched Zen! Learn more

# Simplify your business logic, deploy immediately.

We've created an innovative methodology for deploying enterprise scale applications using the humble spreadsheet. Enhance your business potential with more efficient spreadsheets.

Get in touch









The Pebble Stream Proposition

## The Pebble Stream Proposition

Today, business analysts use Excel to create models to solve business problems. Traditionally, business analysts rely on software developers to convert Excel models into scalable software. This can takes months to complete.

Pebble Stream technology automates the conversion of Excel models into cloud executable software called **Pebbles.**

This conversion happens in seconds. No more waiting for developers to understand the business model, then manually code a solution.

Developers run Pebbles in their applications using the **Pebble Stream runtime.**



runtime



spreadsheet



pebble



Pebble Stream Technology

# Enhanced Spreadsheets with Powerful Data Directives

Financial analysts can use Pebble Stream's built-in directives to enhance Excel and ensure safe model execution.

Pebble Stream directives allow analysts to apply filter, join, outer join, cross product, group, and sort operations to Excel worksheets.

Other directives describe input validations, model warnings, and fail conditions.

No VBA knowledge is needed to apply directives.

Analysts use Excel's comment or notes features to add directives to a worksheet.

Directives are executed by the Pebble Stream runtime.

From Transactions
Filter Buys
Sort By Date

From Buys
Join Sales
By CUSIP

IF DIVID then return
0

Fail if Sales is not
sorted by transaction
date.

spreadsheet







Pebble Stream Technology

# Extremely Testable

Developers and business analysts can unit test pebbles.

Developers can inspect a pebbles input and output worksheets programmatically.

The Pebble Stream runtime also includes an automated test harness.

The test harness can automatically generate thousands of test input scenarios using metadata obtained during the spreadsheet transformation to a pebble.

This test harness can execute hundreds or thousands of test input data against a pebble.

This test functionally supports stress testing and performance testing requirements.

The results produced by pebbles are seamlessly represented in a spreadsheet format.





Pebble Stream Technology

# Proven Technology

**Pebble Stream is emerging from stealth after 3+ years of continuous development.**

A Big Four accounting firm uses our technology to compute partnership sharing percentages and income allocations.

Several of the partnership structures include thousands of partners in hundreds of multi-tiered partnerships.

The pebble computed results are submitted to the IRS as K-1 reports.

**Contact pediako.george@georgetownsoftwarehouse.com or visit www.pebblestream.com to learn more.**

Pebble Stream



Wrapping it up









**The Pebble Stream Proposition**

Today, business analysts use Excel to create models to solve business problems. Traditionally, business analysts rely on software developers to convert Excel models into scalable software. This can takes months to complete.

Pebble Stream technology automates the conversion of Excel models into cloud executable software called **Pebbles.**

This conversion happens in seconds. No more waiting for developers to understand the business model, then manually code a solution.

Developers run Pebbles in their applications using the **Pebble Stream runtime.**



spreadsheet



runtime



pebble



Pebble Stream Technology

# Enhanced Spreadsheets with
## Powerful Data Directives

Financial analysts can use Pebble Stream's built-in directives to enhance Excel and ensure safe model execution.

Pebble Stream directives allow analysts to apply filter, join, outer join, cross product, group, and sort operations to Excel worksheets.

Other directives describe input validations, model warnings, and fail conditions.

No VBA knowledge is needed to apply directives.

Analysts use Excel's comment or notes features to add directives to a worksheet.

Directives are executed by the Pebble Stream runtime.



From Transactions
Filter Buys
Sort By Date

From Buys
Join Sales
By CUSIP

IF DIV/0 then return
0

Fail if Sales is not
sorted by transaction
date.

spreadsheet





Pebble Stream Technology

# Execute Pebbles at Cloud-Scale

Once a spreadsheet is transformed into a Pebble, developers can run that single Pebble on as many processors as desired.

A popular use case involves executing hundreds or thousands of spreadsheet models at once.

The Pebble Stream runtime is designed to be embedded in mission critical applications.

The runtime is lightweight, thread-safe, and cluster deployable.

replicate





Pebble Stream Technology

# DevOps Ops
# Integration

Pebbles are simply files; they can be versioned controlled using Git, Mercury or Visual Source Safe.

Since they are files, pebbles can be loaded dynamically during development, or statically embedded in the application for production release.

Pebbles are fully deployable as part of the normal application development process.

Pebble Stream's technology is designed to fit into continuous integration and continuous deployment Agile operations.



Github

GitLab

Azure
Pipelines

pebble

deploy

aws

Travis-CI













# Getting Started with Pebble Stream

This page will help you get started with Pebble Stream.

Pebblers are spreadsheet users that design Pebble Stream compatible spreadsheets.

We believe Pebblers are bonafide software developers, and the spreadsheet is the perfect integrated Development Environment (IDE)!

## Introduction

This document contains information a business analyst would need in order to convert an Excel spreadsheet into cloud-enabled software.

It covers Pebble Stream's capabilities and limitations, as well as best practices for creating performant spreadsheets.

It also introduces the powerful concept of spreadsheet directives.

## Philosophy

Business Analysts use Excel to create models to solve business problems.

Traditionally, business analysts relied on software developers to convert Excel models into cloud executable

---

Brave  File  Edit  View  History  Bookmarks  Profiles  Tab  Window  Help

Pebble Stream    Join Zen's Slack

Getting Started with Pebble S...

pebble.docs. zen.com

Log In

Search

v1.0    Documentation    Recipes    Community Discussions

Suggest Edits

**ENTERPRISE DOCUMENTATION**

Getting Started with Pebble Stream

Spreadsheet Design Best Practices

Writing Performant Spreadsheets

Supported Spreadsheet Functions

Runtime API

Release Notes

**DIRECTIVES**

Transformative Directives

Annotative Directives

Generative Directives

**ZEN DOCUMENTATION**

Introduction

Best Practices

Getting Started with Zen for Google Sheets

Features

Directives

Troubleshooting

TABLE OF CONTENTS

Introduction

Philosophy

Methodology

Input

Isolated

Transient

Notes

Output

Worksheet Design

Supported Spreadsheet Functions

Excel Errors

Unsupported Excel Features

Worksheet Dependencies

Pebble Stream Directives



Pebble Stream

New Product We've just launched Zen! Learn more

# Simplify your business logic, deploy immediately.

We've created an innovative methodology for deploying enterprise scale applications using the humble spreadsheet. Enhance your business potential with more efficient spreadsheets.

Get in touch

Company    Docs    Get in touch

Company    Docs    Get in touch

Pebble Stream

# Patents

PebbleStream provides the global team including governmental partners with tools for identifying and tracking the uploading of technologies that may be subject to policies and licensing restrictions in their focus. In the case of the company list of products of the US Nuclear Regulation.

## Patent Marking and Notice

The following products are governed by patents which US trade law enforces. The website is provided to satisfy the virtual patent marking provisions of the applicable patent marking law and includes a list of the patents covered and associated resources. See 35 U.S.C. 287(a). See this page and others may not be all inclusive, and every product or every product or service may be marked with its patent numbers. In the United States and elsewhere that one may not include all products that may be patented or may be covered patents embodied in those, and product elsewhere may be protected by one or more patents embodied in addition to, and in addition to the products may be protected by one or more patents in addition to, and the following U.S. patents.

| Patented Article / Name | Patented Products | Associated Patent Number(s) |
|---|---|---|
| Systems and techniques for securely processing disparate data set in secured hosts | Runtime<br>Compiler<br>Slingshot<br>Zen<br>Lake | 11238214 |

Home   Contact   Recommender   Product

Make it free and visit the easy transform speed products into category to make a unit application.

©2022 Copyright Pebble Stream   Privacy Policy   Terms



Exhibit 14

VIA EMAIL AND CERTIFIED MAIL

# TRADEMARK CEASE AND DESIST LETTER

**From:**

Dinesh Patel

2118 Walsh Ave, Suite 240

Santa Clara, CA 95050, USA

Email: btcroot@gmail.com


**To:**

Georgetown Software House, Inc.

6704 5th St NW

Washington, District of Columbia 20012


**Via their attorney:**

Khandoker Shahed Kader

Law Office of K.S. Kader, PLLC

1629 K St. NW, SUITE 300

Washington, District of Columbia 20006

Email: ksk@kaderlaw.com

Phone: 202-599-2289

(Attorney for Georgetown Software House, Inc.)


Re: **Georgetown Software House, Inc's infringement of the PEBBLES® trademarks**


To Whom It May Concern:                              September 6, 2023


This Trademark Cease and Desist Letter (the "Letter") demands that Georgetown Software House, Inc. ("GSH" or "you" or "your") **stop infringement** on my federally registered PEBBLES® trademarks in the United States commerce. This Letter relates to your alleged use in the United States commerce of the "PEBBLE", "PEBBLES", "PEBBLE STREAM", and any other mark comprising of the term "PEBBLE" or "PEBBLES" (collectively, the "PEBBLE

Marks"). Today I became aware of your U.S. Trademark Application Nos. 97685703 (for the "PEBBLE STREAM" mark; referred to as the "'703 Application" in this letter) for goods and services in Class 9 and 42 which are substantively identical to the same goods and services recited on registrations of my PEBBLES® Trademarks.

I have the **exclusive right** to use the PEBBLES® trademarks in the United States commerce for the following reasons:

    1.  I am the sole owner of the **PEBBLES®** trademarks which are federally registered with the United States Patent and Trademark Office (the "USPTO"), Trademark Registration No. 6557978 and 6557799 (the "PEBBLES® Registrations") for the standard character "PEBBLES" trademark in Class 9 and 42 (the "PEBBLES® Trademarks"); attached hereto as **Exhibit A** are true and correct copies of the certificates for my PEBBLES® Registrations (the "PEBBLES® Certificates") which were assigned to me by BatchTest Corporation in January 2022 (*Id.*), and they are also publicly viewable on the USPTO's trademark search website.

    2.  Pursuant to 15 U.S.C. § 1057(b), the PEBBLES® Certificates are *prima facie* evidence of the validity of the PEBBLES® Registrations.

    3.  I believe that my PEBBLES® Trademarks have been used in the United States commerce since **well over a decade prior to any date** of first use you can establish for use of the PEBBLE Marks on any good(s) and/or service(s) recited in the PEBBLES® Registrations; I have been unable to find any evidence of your use of the PEBBLE Marks in the United States commerce that predates my use of the PEBBLES® Trademarks which I have used in connection with, but not limited to, software development tools, and tools for others to develop their own software and network-based infrastructure, and data security and collection. The following show some of my PEBBLES® software development tools which significantly predate any alleged use of the PEBBLE Marks you have made in the United States commerce:

My websites at https://pebblesui.com/ and https://BatchTest.com/Pebbles-ui/
and
https://www.ni.com/en/support/downloads/tools-network/download.pebbles-ui-state-machine-controller.html#374409
and
https://www.youtube.com/watch?v=2om2yGN6O2A&ab_channel=BatchTest

4. I believe that my PEBBLES® branded goods and services are <u>identical and very similar</u> to the goods and services bearing the PEBBLE Marks which you appear to be offering, marketing, distributing, advertising, promoting, licensing, selling, and/or re-selling to consumers.

5. You are **not authorized to use or license** the PEBBLE Marks.

Further, you may also review my PEBBLES® platform used in medical device surgeries hardware, software, and cloud-based infrastructure in the following link (warning, graphic video in which I am teaching use of an implantable medical device, surgery software, and the overall user interface to orthopedic surgeons in a cadaver lab, not appropriate for folks who cannot handle sight of blood; you can see my PEBBLES® at approx. 20 seconds into the video): https://www.youtube.com/watch?v=hf3Mqg0sl3c&ab_channel=ProvidenceSpokane

The above link shows actual use of my PEBBLES® branded goods and services on MacOS and iOS platforms which has been in continuous use since at least the mid-2000s. My PEBBLES® branded goods and services are also used to offer Kiosk-based interface for rapid Covid detection stations which involve two-way interaction of my PEBBLES® branded goods and services with Microsoft Excel spreadsheets and related parameters automatically downloaded and synchronized with a remote server, for a significant part of the application functional logic, data analysis, and for printing reports which use Excel spreadsheet as a template.

As the USPTO's publicly viewable records also show, I have vigorously protected my PEBBLES® trademarks through several opposition and cancellation proceedings and I will continue to do so.

<u>**Your infringing use of the PEBBLE Marks**</u>

The Trademark Status & Document Retrieval ("TSDR") of the United States Patent and Trademark Office (the "USPTO") shows the '703 Application, which I will oppose if you do not **abandon** it voluntarily. Further, I will also seek remedies at the District Court if you do not immediately abandon the use of the PEBBLE Marks which are infringing on my PEBBLES® Trademarks. Your websites at https://www.georgetownsoftware.house/#company and https://www.pebblestream.com/ show what appears to be your unauthorized current use of the PEBBLE Marks. Further, the '703 Application appears to claim that you have been allegedly using the PEBBLE STREAM mark since at least August 16, 2019, and the specimen which you

have filed under the '703 Application (the "'703 Specimen") also shows your unauthorized use of "PEBBLES" and "PEBBLE" marks on software development tools, including such development tools in association with Microsoft Excel, which are identical or very similar to my PEBBLES® branded offerings which let consumers develop their own applications and automation with ready-to-use function blocks that interact two-way with Microsoft Excel.

Further, the '703 Specimen shows that not only you refer to your goods and services as "PEBBLE", "PEBBLES", "PEBBLE STREAM" and use the PEBBLE Marks on software development tools, but that the '703 Specimen also describes your infringing use of the PEBBLE Marks in your claims of "Pebble Stream Design Development" (the '703 Specimen, p 4), "Developers run Pebbles in their applications using the Pebble Stream runtime" (*Id.* p 7), and "Developers can choose to run the Pebble Stream runtime in JavaScript, Java, C#, C++, C, Clojure, Scala, and Groovy applications. Other languages like Python are supported via Pebble Stream's C binding adapter. A Python adapter is coming soon" (*Id.* p 10). Your described nature of your alleged goods and services is **identical** to my PEBBLES® branded goods and services, and it is gravely concerning that despite having the benefit of a trademark attorney, you are engaged in reckless infringement of my PEBBLES® Trademarks in the United States commerce.

You are not authorized to use the PEBBLE Marks on goods and services which I believe are identical and very similar to my PEBBLES® branded goods and services, and **you must cease and desist** any and all such use of the PEBBLE Marks, and promptly:

  A.  Withdraw/abandon the '703 Application;
  B.  Remove <u>any and all</u> references of the terms "PEBBLE", "PEBBLES", and the PEBBLE Marks from any and all of your website(s), advertising and/or promotional material, press-releases, distribution, re-distribution, any communication to consumers, and sale and/or re-sale of goods and services similar to my PEBBLES® branded goods and services, which are directed to the United States consumers;
  C.  Stop any and all use of the PEBBLE Marks on your goods and services in the United States;
  D.  Stop any and all use of internet domain "pebblestream.com" to advertise, promote, sell, resell, any goods and services with the PEBBLE Marks which are similar or identical to my PEBBLES® branded goods and services;
  E.  Recall any and all of your goods and services bearing the PEBBLE Marks in the

United States commerce, and remove or rebrand your remaining inventory that bear the PEBBLE Marks;

F.  Notify consumers with whom you have made licensing agreement related to the goods and services, which are similar or identical to my PEBBLES® branded goods and services, that I am the exclusive owner of the PEBBLES® Trademarks through a statement with my written prior-approval on your website; and

G.  Agree that you will not make any future unauthorized use of the PEBBLE Marks in any form or use the term "PEBBLE" or "PEBBLES" in any form in connection with goods and services similar to my PEBBLES® branded goods and services.

I ask that you confirm in writing by **September 21, 2023**, that you will cease all use of the PEBBLE Marks and that you have promptly taken the steps listed above in items **A** to **I**. In the event I do not receive your written confirmation by September 21, 2023 as demanded above, I will be forced to seek legal action to stop your infringement on my PEBBLES® Trademarks.

I intend to fully enforce and protect my valuable trademark rights; I strongly suggest that you promptly consult with your trademark attorney as time is very short. To avoid legal costs and an action at the District Court seeking injunctive relief, I strongly suggest that you promptly abandon the '703 Application and stop use of the PEBBLE Marks before I file an opposition. If you have any questions about this Letter, you should have your attorney contact me.

Sincerely,

Dinesh Patel

# Exhibit A



# United States of America
## United States Patent and Trademark Office

# PEBBLES

**Reg. No. 6,557,978**

**Registered Nov. 16, 2021**

**Int. Cl.: 9**

**Trademark**

**Principal Register**

BatchTest Corporation  (CALIFORNIA CORPORATION)
Suite 240
2118 Walsh Ave
Santa Clara, CALIFORNIA 95050

CLASS 9: Downloadable computer software for developing other computer software and graphical user interface; Downloadable software and downloadable software utility for creating graphical user interface; Downloadable software for assisting developers in creating program code for use in multiple application software, and user's manuals and instructional manuals sold as a unit therewith; Downloadable software components, namely, software in the nature of controls and indicators for creating Human-Machine-Interface, and user's manuals and instructional manuals sold as a unit therewith

FIRST USE 2-11-2015; IN COMMERCE 2-11-2015

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-983,079, FILED 01-08-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.



# United States of America
## United States Patent and Trademark Office

# PEBBLES

**Reg. No. 6,557,799**

**Registered Nov. 16, 2021**

**Int. Cl.: 42**

**Service Mark**

**Principal Register**

BatchTest Corporation (CALIFORNIA CORPORATION)
Suite 240
2118 Walsh Ave
Santa Clara, CALIFORNIA 95050

CLASS 42: Providing temporary use of on-line non-downloadable software for developing other computer software and graphical user interface; providing temporary use of on-line non-downloadable software and software utility for creating graphical user interface; providing temporary use of on-line non-downloadable software for assisting developers in creating program code for use in multiple application software, and user's manuals and instructional manuals sold as a unit therewith; designing and providing temporary use of on-line non-downloadable software components, namely, software in the nature of controls and indicators, for creating Human-Machine-Interface, and user's manuals and instructional manuals sold as a unit therewith

FIRST USE 6-5-2010; IN COMMERCE 2-29-2012

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-751,781, FILED 01-08-2020





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

900670110    01/17/2022

# TRADEMARK ASSIGNMENT COVER SHEET

Electronic Version v1.1                                          ETAS ID: TM702540
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
| --- | --- |
| NATURE OF CONVEYANCE: | ASSIGNMENT OF THE ENTIRE INTEREST AND THE GOODWILL |

### CONVEYING PARTY DATA

| Name | Formerly | Execution Date | Entity Type |
| --- | --- | --- | --- |
| BatchTest Corporation | FORMERLY ICware Systems, Inc. | 01/14/2022 | Corporation: CALIFORNIA |

### RECEIVING PARTY DATA

| | |
| --- | --- |
| Name: | Dinesh Patel |
| Street Address: | 2118 WALSH AVE |
| Internal Address: | Suite 240 |
| City: | Santa Clara |
| State/Country: | CALIFORNIA |
| Postal Code: | 95050 |
| Entity Type: | INDIVIDUAL: UNITED STATES |

### PROPERTY NUMBERS Total: 2

| Property Type | Number | Word Mark |
| --- | --- | --- |
| Registration Number: | 6557978 | PEBBLES |
| Registration Number: | 6557799 | PEBBLES |

### CORRESPONDENCE DATA

**Fax Number:**
*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*
**Phone:** 408-454-8378
**Email:** Batchtest_TM@batchtest.com
**Correspondent Name:** Patel Dinesh
**Address Line 1:** 2118 Walsh Ave
**Address Line 2:** Suite 240
**Address Line 4:** Santa Clara, CALIFORNIA 95050

| NAME OF SUBMITTER: | Patel Dinesh |
| --- | --- |
| SIGNATURE: | /Dinesh Patel/ |
| DATE SIGNED: | 01/17/2022 |

**Total Attachments: 1**
source=BatchTest Trademark Assignment - PEBBLES#page1.tif

**TRADEMARK**
**REEL: 007560 FRAME: 0783**

## TRADEMARK ASSIGNMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, **BatchTest Corporation** ("Assignor"), a California corporation having an address at 2118 Walsh Ave, Suite 240, Santa Clara, CA 95050, for itself and its successors and assigns, hereby assigns to **Dinesh Patel**, a United States citizen with his address at 2118 Walsh Ave, Suite 240, Santa Clara, CA 95050 ("Assignee"), his successors and assigns, all right, title, interest in and to the mark "PEBBLES" with respect to the United States of America, its territories and possessions, including U.S. Trademark Registrations No. **6557978** and **6557799**, for the mark "PEBBLES", together with all goodwill associated therewith.

This Trademark Assignment includes the right to claim for any and all damages by reasons of past infringement of such mark, with the right to sue for and collect the same for Assignee's own use and enjoyment and for the use and enjoyment of its successors and assigns.

*IN WITNESS WHEREOF*, Assignor has caused this Trademark Assignment to be executed by its duly authorized representative as of this 14th day of January 2022.

BatchTest Corporation

Dated:  January 14, 2022

By: _____

Name: Dinesh Patel

Title: President

Exhibit 15

| ESTTA Tracking number: | **ESTTA1326291** |
|---|---|
| Filing date: | **12/04/2023** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

## Notice of Opposition

Notice is hereby given that the following party opposes registration of the indicated application.

## Opposer information

| Name | Dinesh Patel |
|---|---|
| Granted to date of previous extension | 12/09/2023 |
| Address | 2118 WALSH AVE<br>SUITE 240<br>SANTA CLARA, CA 95050<br>UNITED STATES |

| Correspondence information | DINESH PATEL<br>2118 WALSH AVE<br>SUITE 240<br>SANTA CLARA, CA 95050<br>UNITED STATES<br>Primary email: btcroot@gmail.com<br>No phone number provided |
|---|---|

## Applicant information

| Application no. | 97685703 | Publication date | 10/10/2023 |
|---|---|---|---|
| Opposition filing date | 12/04/2023 | Opposition period ends | 12/09/2023 |
| Applicant | Georgetown Software House, Inc.<br>6704 5TH ST NW<br>WASHINGTON, DC 20012<br>UNITED STATES | | |

## Goods/services affected by opposition

| Class 009. First Use: Jun 18, 2019 First Use In Commerce: Aug 16, 2019<br>All goods and services in the class are opposed, namely: Downloadable software for deploying enterprise-scale analytical and business logic on multiple application platforms, including the web, server, cloud, and mobile phones applications utilizing spreadsheets |
|---|
| Class 042. First Use: Jun 18, 2019 First Use In Commerce: Aug 16, 2019<br>All goods and services in the class are opposed, namely: Software as a service (SAAS) services featuring software for deploying enterprise scale analytical and business logic on multiple application platforms, including the web, server, cloud, and mobile phones utilizing spreadsheets |

## Grounds for opposition

| Priority and likelihood of confusion | Trademark Act Section 2(d) |
|---|---|

## Marks cited by opposer as basis for opposition

| U.S. registration | 6557978 | Application date | 01/08/2020 |
|---|---|---|---|

| no. | | | |
|---|---|---|---|
| Register | Principal | | |
| Registration date | 11/16/2021 | Foreign priority date | NONE |
| Word mark | PEBBLES | | |
| Design mark | | | |
| Description of mark | NONE | | |
| Goods/services | Class 009. First use: First Use: Feb 11, 2015 First Use In Commerce: Feb 11, 2015<br><br>Downloadable computer software for developing other computer software and graphical user interface; Downloadable software and downloadable software utility for creating graphical user interface; Downloadable software for assisting developers in creating program code for use in multiple application software, and user's manuals and instructional manuals sold as a unit therewith; Downloadable software components, namely, software in the nature of controls and indicators for creating Human-Machine-Interface, and user's manuals and instructional manuals sold as a unit therewith | | |

| U.S. registration no. | 6557799 | Application date | 01/08/2020 |
|---|---|---|---|
| Register | Principal | | |
| Registration date | 11/16/2021 | Foreign priority date | NONE |
| Word mark | PEBBLES | | |
| Design mark | | | |
| Description of mark | NONE | | |
| Goods/services | Class 042. First use: First Use: Jun 5, 2010 First Use In Commerce: Feb 29, 2012<br><br>Providing temporary use of on-line non-downloadable software for developing other computer software and graphical user interface; providing temporary use of on-line non-downloadable software and software utility for creating graphical user interface; providing temporary use of on-line non-downloadable software for assisting developers in creating program code for use in multiple application software, and user's manuals and instructional manuals sold as a unit therewith; designing and providing temporary use of on-line non-downloadable software components, namely, software in the nature of controls and indicators, for creating Human-Machine-Interface, and user's manuals and instructional manuals sold as a unit therewith | | |

| Attachments | Notice of Opposition - PEBBLE STREAM - GSH.pdf(153615 bytes ) |
|---|---|

| Signature | /Dinesh Patel/ |
|---|---|
| Name | DINESH PATEL |
| Date | 12/04/2023 |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| Dinesh Patel | ) | Opposition No.: |
| Opposer, | ) | |
| | ) | Serial No.:       97685703 |
| v. | ) | |
| | ) | Mark:            PEBBLE STREAM |
| Georgetown Software House, Inc. | ) | |
| Applicant. | ) | International Class:  9 and 42 |

### NOTICE OF OPPOSITION

Opposer, Dinesh Patel ("Opposer"), believes that he will be damaged by registration on the

Principal Register of the standard-character PEBBLE STREAM mark in U.S. Application Serial No.

97685703 (the "'703 Application") filed by Georgetown Software House, Inc. ("Applicant"), and

hereby opposes the same.

The grounds of opposition are as follows:

### BACKGROUND

1.      Opposer is a United States citizen with an address at 2118 Walsh Ave, Suite 240,

Santa Clara, CA 95050.

2.      Opposer is the owner of the subsisting U.S. Registration No. 6557978 (the "'978

Registration") for the standard-character "PEBBLES" mark (the "PEBBLES® Marks") which

identifies the following goods in Class 9:

> "Downloadable computer software for developing other computer software and
> graphical user interface; Downloadable software and downloadable software utility
> for creating graphical user interface; Downloadable software for assisting
> developers in creating program code for use in multiple application software, and
> user's manuals and instructional manuals sold as a unit therewith; Downloadable
> software components, namely, software in the nature of controls and indicators for
> creating Human-Machine-Interface, and user's manuals and instructional manuals
> sold as a unit therewith"

3.      Opposer is also the owner of the subsisting U.S. Registration No. 6557799 (the " '799

Registration"; the '799 Registration and the '978 Registration are collectively referred to as "the

PEBBLES® Registrations") for the PEBBLES® Marks which identifies the following services in

Class 42:

> "Providing temporary use of on-line non-downloadable software for developing
> other computer software and graphical user interface; providing temporary use of
> on-line non-downloadable software and software utility for creating graphical user
> interface; providing temporary use of on-line non-downloadable software for
> assisting developers in creating program code for use in multiple application
> software, and user's manuals and instructional manuals sold as a unit therewith;
> designing and providing temporary use of on-line non-downloadable software
> components, namely, software in the nature of controls and indicators, for creating
> Human-Machine-Interface, and user's manuals and instructional manuals sold as a
> unit therewith"

4.      BatchTest Corporation ("BatchTest") is the predecessor-in-interest to Opposer.

5.      BatchTest is a California corporation with an address at 2118 Walsh Ave, Suite 240,

Santa Clara, CA 95050.

6.      Opposer owns BatchTest.

7.      BatchTest has a non-exclusive limited license to use the PEBBLES® Marks in

connection with Embedded Systems/IoT, Automation, Medical Devices, and related goods and

services.

8.      BatchTest's assignment of the PEBBLES® Registrations to Opposer was recorded by

the Assignment Recordation Branch of the U.S. Patent and Trademark Office (the "USPTO") under

REEL/FRAME: **7560/0783** on January 17, 2022.

9.      Opposer and BatchTest are designer, producer, and marketer of software for use by

others for creating their own software and hardware, including Microsoft Excel based Pebbles®

branded ready-to-use function nodes which others can use in creating their own custom software,

medical devices, automation systems, and automated test systems. Opposer and BatchTest also

provide engineering services in the nature of design and development of others' software, electronic goods, services and computer network infrastructure for remote management of electronic devices and IoT (Internet Of Things).

10.    On information and belief, Applicant Georgetown Software House, Inc. is a District of Columbia corporation, with its address at 6704 5th St NW, Washington, District of Columbia 20012.

11.    On Nov. 21, 2022, Applicant filed the '703 Application to register the PEBBLE STREAM mark under Section 1(a), based on Applicant's alleged current use of the mark in commerce for the following goods and services:

Class 9

"Downloadable software for deploying enterprise-scale analytical and business logic on multiple application platforms, including the web, server, cloud, and mobile phones applications utilizing spreadsheets"

Class 42

"Software as a service (SAAS) services featuring software for deploying enterprise scale analytical and business logic on multiple application platforms, including the web, server, cloud, and mobile phones utilizing spreadsheets"

12.    Applicant filed a specimen concurrently with the '703 Application on November 21, 2022 (the "'703 Specimen").

13.    Applicant has made a verified statement on the '703 Application that "[t]he mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application."

14.    Applicant has made a verified statement on the '703 Application that "[t]he specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date."

15.    The '703 Application was published for Opposition in the Trademarks *Official Gazette*

NOTICE OF OPPOSITION of
Trademark Appl. No. 97685703                    -3-

on October 10, 2023.

16.     Opposer timely extended time to oppose the '703 Application through and including December 9, 2023. As such, this Notice is timely filed.

17.     On information and belief, Applicant does not own any foreign trademark application(s) containing the term "PEBBLE" on which Applicant can rely to claim priority based on Section 44(d) or Section 66(a).

18.     Opposer and Applicant are not affiliated with one another.

19.     Opposer has not transferred his ownership of his PEBBLES® Marks to Applicant.

20.     Opposer and his predecessor-in-interest have not authorized Applicant's filing of the '703 Application or any other U.S. trademark application for any mark comprising of the term "PEBBLE" or "PEBBLES."

21.     On September 6, 2023, Opposer provided Applicant's attorney with a Cease and Desist Letter (the Cease-and-Desist Letter"), which demanded that Applicant immediately cease its use of the "PEBBLE STREAM" mark and any mark containing the term "PEBBLE" or "PEBBLES" in connection with software development tools, all goods and services recited on the PEBBLES® Registrations, and all goods and services recited on the '703 Application in the United States commerce.

22.     Applicant has so far ignored the Cease-and-Desist Letter.

23.     Applicant has currently continued use of the "PEBBLE STREAM" mark in United States commerce.

///

## COUNT I

## **PRIORITY & LIKELIHOOD OF CONFUSION**

24.     Opposer hereby re-alleges and incorporates by reference each and every allegation contained above as if fully set forth in detail herein.

25.     Opposer owns valid and subsisting rights in the PEBBLES® Marks, which are in use in the United States commerce on goods and services as identified on the PEBBLES® Registrations.

**Priority Of Use**

26.     Opposer's PEBBLES® Registrations have an earlier date of constructive use of the PEBBLES® Marks than the date of constructive use of the '703 Application.

27.     On information and belief, Applicant did not use the PEBBLE STREAM mark on any good or service identified in the '703 Application prior to the filing date of the '703 Application.

28.     On information and belief, Applicant did not use the PEBBLE STREAM mark on any good or service identified in the '703 Application before 2019.

29.     Opposer and his predecessor-in-interest have continuously used the PEBBLES® mark in the United States commerce since prior to Applicant's any date of first use or Applicant's any date of first use in commerce, of any mark containing the term "PEBBLES" or "PEBBLE."

**Parties' Marks**

30.     The term "PEBBLE" is the dominant portion of the standard-character PEBBLE STREAM mark.

31.     The term "PEBBLE" in the PEBBLE STREAM mark is identical or very similar to Opposer's PEBBLES® Mark, and is likely, when applied to Applicant's proposed goods, to cause confusion, mistake or deception among consumers within the meaning of 15 U.S.C. § 1052(d).

32.     The '703 Specimen shows Applicant's intended use or purported use of "PEBBLE" mark in connection with goods and services recited on the '703 Application.

33.     Page 7 of the '703 Specimen states that "Pebble stream technology automates the

conversion of Excel models into cloud executable software called **Pebbles**."

34.    Page 7 of the '703 Specimen also shows a figure comprising of three icons named "spreadsheet", "pebble", and "runtime."

35.    Page 7 of the '703 Specimen also states that "**Developers** run **Pebbles** in their applications using the **Pebble** Stream runtime."

36.    Page 7 of the '703 Specimen describes Applicant's intended use or purported use of the "PEBBLES", "PEBBLE", and "PEBBLE STREAM" marks in connection with tools for software developers.

37.    Page 7 and 10 of the '703 Specimen describes Applicant's intended use or purported use of the "PEBBLES", "PEBBLE", and "PEBBLE STREAM" marks in connection with tools for software development of others' software.

38.    Page 9 of the '703 Specimen shows that Applicant intends to use, or Applicant is purportedly using the PEBBLE STREAM mark in connection software for which "No VBA knowledge is needed to apply directives."

39.    Applicant intends to use or is purportedly using the PEBBLE STREAM mark on ready-to-run software functions which are offered to consumers, which require minimal or no programming knowledge for its users.

40.    Page 10 of the '703 Specimen states "Run Pebbles Using the Pebble Stream Runtime."

41.    Page 10 of the '703 Specimen describes Applicant's intended use or purported use of the "PEBBLES", "PEBBLE", and "PEBBLE STREAM" marks in connection with tools for software development of others' goods and services.

42.    Pages 10 and 11 of the '703 Specimen describes Applicant's intended use or purported use of the "PEBBLES", "PEBBLE", and "PEBBLE STREAM" marks on software development in

various programming languages.

43.    Page 11 of the '703 Specimen describes Applicant's intended use or purported use of the "PEBBLES", "PEBBLE", and "PEBBLE STREAM" marks on software that is described as "The Pebble Stream runtime is designed to be embedded in mission critical applications."

44.    Page 12 of the '703 Specimen describes Applicant's intended use or purported use of the "PEBBLES", "PEBBLE", "PEBBLE STREAM" and "PEBBLE STREAM TECHNOLOGY" marks on software for test systems involving "unit test", "automated test harness", test input data", "stress testing", and "performance testing."

45.    Several pages of the '703 Specimen show that Applicant is interchangeably switching between the marks "PEBBLES", "PEBBLE", and its applied-for mark PEBBLE STREAM to refer to the same PEBBLES mark.

**Parties' Goods And Services**

46.    The goods and services recited on the '703 Application and described in more details on the '703 Specimen are identical or very similar to Opposer's PEBBLES® branded goods and services, and would be sold, advertised and directed at the same marketing and trade channels, and to the same consumers, as Opposer's goods and services, or are in the natural scope of expansion of Opposer's goods and services.

47.    Several pages of the '703 Specimen show that Applicant intends to use or is purportedly using the PEBBLE STREAM mark for "Design Development" and "Development" in software tools for design and development of others' software.

48.    The '703 Specimen describes Applicant's intended use or purported use of the PEBBLE STREAM mark, and the terms "PEBBLE" and "PEBBLES" on software tools for use by others.

49.    The '703 Specimen describes Applicant's intended use or purported use of the PEBBLE STREAM mark, and the terms "PEBBLE" and "PEBBLES" on software tools in connection with design and development of others' software.

**Consumers of the parties' goods and services**

50.    The consumers of Applicant's goods and services are about the same as the consumers of Opposer's goods and services; both parties' goods and services are software and software development tools for use by others, and software and software tools for creating others' software.

**A Likelihood Of Confusion**

51.    The PEBBLE STREAM mark so resembles Opposer's PEBBLES® Marks, and the goods are related such that the public is likely to view the applied-for PEBBLE STREAM mark as denoting an affiliation, connection, or association of Application with Opposer and as to the origin, sponsorship, and approval of Applicant's proposed goods and services by Opposer, when that is not the case, thereby it will damage Opposer.

52.    The '703 Specimen also describes Applicant's intended use or purported use of the terms "PEBBLE" and "PEBBLES" in connection with its intended use or purported use of the PEBBLE STREAM mark on goods and services which are identical and very closely related to Opposer's PEBBLES® branded goods and services.

53.    Opposer will be also damaged in that registration of the PEBBLE STREAM mark would support and assist in the infringing use of Opposer's PEBBLES® Marks, and it will give colorable exclusive statutory rights to the Applicant in violation and derogation of the prior and superior trademark rights of Opposer.

**WHEREFORE,** for the reasons set forth above, Opposer prays that registration of the PEBBLE STREAM mark of Application No. 97685703, be denied and that this opposition be sustained.

Respectfully submitted,

Dated: ___December 4, 2023___

___/Dinesh Patel/___

Dinesh Patel

2118 Walsh Ave, Suite 240

Santa Clara, CA 95050

Exhibit 16

ESTTA Tracking number: **ESTTA1333779**

Filing date: **01/12/2024**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding no. | 91288564 |
| Party | Defendant<br>Georgetown Software House, Inc. |
| Correspondence address | DARRIN A. AUITO<br>HEA LAW PLLC<br>8000 TOWERS CRESCENT DRIVE<br>13TH FLOOR<br>MCLEAN, VA 22182<br>UNITED STATES<br>Primary email: darrin@hea-ip.com<br>Secondary email(s): trademarks@hea-ip.com<br>5719336437 |
| Submission | Answer |
| Filer's name | Darrin A. Auito |
| Filer's email | darrin@hea-ip.com, usptomail@hea-ip.com |
| Signature | /Darrin A. Auito/ |
| Date | 01/12/2024 |
| Attachments | 240112_GSH-002-L_Answer.pdf(120291 bytes ) |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In the Matter of Trademark Application Serial No. 97685703, published in the *Official Gazette* October 10, 2023.

------------------------------------------------

Dinesh Patel,

                      Opposer,       ·    ·       Opposition No. 91288564

v.

Georgetown Software House, Inc.,

                      Applicant.

------------------------------------------------

## APPLICANT'S ANSWER
## TO NOTICE OF OPPOSITION AND AFFIRMATIVE DEFENSES

Georgetown Software House, Inc. ("Applicant"), pursuant to 37 C.F.R. by and through its attorneys, hereby submits its answer to the Notice of Opposition filed by Dinesh Patel ("Opposer") against an application for registration of Applicant's trademark PEBBLE STREAM, serial no. 97685703 filed November 21, 2022 and published in the Official Gazette on October 10, 2023 ("Application").

The following numbered paragraphs correspond to the numbers of the paragraphs of the Notice of Opposition, under the heading used in the Notice of Opposition. To the extent any allegation is not specifically admitted, it is denied. To the extent any additional unnumbered paragraphs, captions or headings in the Notice of Opposition are treated as allegations, such allegations are hereby denied.

1

1.    Applicant is without knowledge or information concerning the allegations of this paragraph of the Notice of Opposition, and so denies the same.

2.    Applicant is without knowledge or information concerning the allegations of this paragraph of the Notice of Opposition, and so denies the same.

3.    Applicant is without knowledge or information concerning the allegations of this paragraph of the Notice of Opposition, and so denies the same.

4.    Applicant is without knowledge or information concerning the allegations of this paragraph of the Notice of Opposition, and so denies the same.

5.    Applicant is without knowledge or information concerning the allegations of this paragraph of the Notice of Opposition, and so denies the same.

6.    Applicant is without knowledge or information concerning the allegations of this paragraph of the Notice of Opposition, and so denies the same.

7.    Applicant is without knowledge or information concerning the allegations of this paragraph of the Notice of Opposition, and so denies the same.

8.    Applicant is without knowledge or information concerning the allegations of this paragraph of the Notice of Opposition, and so denies the same.

9.    Applicant is without knowledge or information concerning the allegations of this paragraph of the Notice of Opposition, and so denies the same.

10.    Admitted

11.    Admitted

12.    Admitted

13.    Admitted

14.    Admitted

15.    Admitted

16.    Admitted

17.    Applicant objects to this allegation in the Notice of Opposition as this proceeding only concerns the application herein opposed and the Trademark Trial Appeal Board has no jurisdiction over foreign trademark applications.

18.    Admitted

19.    Admitted

20.    Admitted

21.    Applicant admits that it received a letter from Opposer and states that the letter speaks for itself. Otherwise, denies each and every allegation thereof.

22.    Denied

23.    Admitted

24.    Applicant incorporates its responses to the allegations made in paragraphs 1-23 of the Notice of Opposition herein.

25.    Applicant is still investigating the allegations made in this paragraph of the Notice of Opposition, and therefore denies the allegations in this paragraph of the Notice of Opposition.

26.    Applicant is still investigating the allegations made in this paragraph of the Notice of Opposition, and therefore denies the allegations in this paragraph of the Notice of Opposition.

27.    Applicant is still investigating the allegations made in this paragraph of the Notice of Opposition, and therefore denies the allegations in this paragraph of the Notice of Opposition.

28.    Applicant is still investigating the allegations made in this paragraph of the Notice
       of Opposition, and therefore denies the allegations in this paragraph of the Notice
       of Opposition.

29.    Applicant is still investigating the allegations made in this paragraph of the Notice
       of Opposition, and therefore denies the allegations in this paragraph of the Notice
       of Opposition.

30.    Denied

31.    Denied

32.    Applicant objects to this allegation in the Notice of Opposition as this proceeding
       only concerns the application herein opposed.

33.    Applicant states that the USPTO record speaks for itself.

34.    Applicant states that the USPTO record speaks for itself.

35.    Applicant states that the USPTO record speaks for itself.

36.    Applicant objects to this allegation in the Notice of Opposition as this proceeding
       only concerns the application herein opposed. Applicant states that the USPTO
       record speaks for itself. Otherwise, Applicant denies each and every allegation
       thereof.

37.    Applicant objects to this allegation in the Notice of Opposition as this proceeding
       only concerns the application herein opposed. Applicant states that the USPTO
       record speaks for itself. Otherwise, Applicant denies each and every allegation
       thereof.

38.    Applicant states that the USPTO record speaks for itself. Otherwise, Applicant
       denies each and every allegation thereof.

39.    Applicant states that the USPTO record speaks for itself. Otherwise, Applicant denies each and every allegation thereof.

40.    Applicant states that the USPTO record speaks for itself.

41.    Applicant objects to this allegation in the Notice of Opposition as this proceeding only concerns the application herein opposed. Applicant states that the USPTO record speaks for itself. Otherwise, Applicant denies each and every allegation thereof.

42.    Applicant objects to this allegation in the Notice of Opposition as this proceeding only concerns the application herein opposed. Applicant states that the USPTO record speaks for itself. Otherwise, Applicant denies each and every allegation thereof.

43.    Applicant objects to this allegation in the Notice of Opposition as this proceeding only concerns the application herein opposed. Applicant states that the USPTO record speaks for itself. Otherwise, Applicant denies each and every allegation thereof.

44.    Applicant objects to this allegation in the Notice of Opposition as this proceeding only concerns the application herein opposed. Applicant states that the USPTO record speaks for itself. Otherwise, Applicant denies each and every allegation thereof.

45.    Applicant objects to this allegation in the Notice of Opposition as this proceeding only concerns the application herein opposed. Otherwise, Applicant denies each and every allegation thereof.

46.    Denied

47.    Applicant states that the USPTO record speaks for itself. Otherwise, Applicant denies each and every allegation thereof.

48.    Applicant objects to this allegation in the Notice of Opposition as this proceeding only concerns the application herein opposed. Otherwise, Applicant denies each and every allegation thereof.

49.    Applicant objects to this allegation in the Notice of Opposition as this proceeding only concerns the application herein opposed. Otherwise, Applicant denies each and every allegation thereof.

50.    Denied

51.    Denied

52.    Applicant objects to this allegation in the Notice of Opposition as this proceeding only concerns the application herein opposed.  Otherwise, Applicant denies each and every allegation thereof.

53.    Denied

## **AFFIRMATIVE DEFENSES**

In addition to the foregoing, and as separate and distinct affirmative defenses to Opposer's claims, Applicant alleges as follows:

1. Opposer lacks standing because there is no basis for Opposer's belief that it would be damaged by continued registration of the Application.

2. Applicant is without sufficient information to know at the present time whether additional affirmative defenses may be applicable to this action. Accordingly, Applicant reserves the right to assert further affirmative defenses should it learn that any such defenses are available.

WHEREFORE, Applicant respectfully requests that the Opposition be dismissed in its entirety, with prejudice, and that Applicant's Application be allowed to proceed to registration.

Georgetown Software House, Inc. has appointed Darrin A. Auito, a partner of the law firm of HEA Law, PLLC, a member of the State Bar of Michigan, to represent and prosecute this opposition proceeding, and to transact all business in and before the USPTO in connection herewith.

Respectfully submitted,

HEA LAW, PLLC.
Attorneys for Georgetown Software House, Inc.

Date: January 12, 2024

By:     /Darrin A. Auito/

        Darrin A. Auito
        HEA Law, PLLC.
        8000 Towers Crescent Drive
        13th Floor
        McLean, VA 22182
        (571) 933-6437

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing Applicant's Answer to Notice of Opposition and Affirmative Defenses has been served on Dinesh Patel by forwarding said copy on January 12, 2024, via email to:

Mr. Dinesh Patel at btcroot@gmail.com

Signature:     /Darrin A. Auito/
               Darrin A. Auito

Date:          January 12, 2024

Exhibit 17

ENTERPRISE DOCUMENTATION

Getting Started with Pebble Stream

Spreadsheet Design Best Practices

Writing Performant Spreadsheets

Supported Spreadsheet Functions

› Runtime API

Pebble Flow Workflow Server

Release Notes

DIRECTIVES

› Transformative Directives

› Annotative Directives

› Generative Directives

ZEN DOCUMENTATION

Introduction

Best Practices

› Getting Started with Zen

› Features

› Directives

Troubleshooting

Feedback

# Getting Started with Pebble Stream

This page will help you get started with Pebble Stream.

> Pebblers are spreadsheet users that design Pebble Stream compatible spreadsheets.
>
> We believe Pebblers are bonafide software developers, and the spreadsheet is the perfect Integrated Development Environment (IDE)!

## Introduction

This document contains information a business analyst would need in order to convert an Excel spreadsheet into cloud-enabled software.

It covers Pebble Stream's capabilities and limitations, as well as best practices for creating performant spreadsheets.

It also introduces the powerful concept of spreadsheet directives.

## Philosophy

Business Analysts use Excel to create models to solve business problems.

Release Notes

Powered by ☐ readme

Traditionally, business analysts relied on software developers to convert Excel models into cloud executable software.

Pebble Stream technology automates the conversion of models written in Excel into cloud executable software called **pebbles**. Business analysts that are hip to Pebble Stream development are called **Pebblers**.

Developers can embed and run pebbles in their applications using the Pebble Stream runtime.

## Methodology

Pebble Stream treats spreadsheets as functions. By definition, functions take input data, perform operations on that input data, then produce output data. Pebblers use the Pebble Stream compiler to compile spreadsheets into libraries that software developers use as functions. These compiled spreadsheets are called Pebbles.

Software developers can embed Pebbles in cloud applications using the Pebble Stream runtime. The Pebble Stream runtime is available in several languages, including Java, Groovy, Scala, Clojure, C, C++, C#, and JavaScript.

Upon compilation, the Pebble Stream compiler classifies worksheets into five different types. These worksheets are categorized based on whether or not the worksheet has a formula and its relationship to other worksheets.

## Input

Input worksheets contain no formulas. They only have values in their cells. Input worksheets are not dependent on any other worksheets in the spreadsheet.

Developers must provide input worksheets to the Pebble Stream runtime when executing a Pebble. If software developers do not provide an input worksheet on Pebble execution, the Pebble Stream runtime will use the templated input by default. This behavior is configurable.

## Isolated

Isolated worksheets are worksheets that are not dependent on any other worksheet in the spreadsheet. No other worksheets in the spreadsheet are dependent on isolated worksheets. They may contain formulas or values in their cells.

## Notes

Notes are a form of isolated worksheets, except they do not contain formulas in their cells. The Pebble Stream compiler recognizes notes as a constant.

## Transient

Transient worksheets depend on other worksheets, while other worksheets reference transient worksheets. Typically, transient worksheets perform most of the computations in a spreadsheet.

## Output

Output worksheets are the final worksheets created in a spreadsheet's computation. Output worksheets reference other worksheets in the spreadsheet, but no other worksheet's computation depends on output worksheets.

| Type | Worksheet has formulas? | Worksheet has dependents? | Worksheet is dependent? |
|---|---|---|---|
| input | no | yes | no |
| isolated | yes | no | no |
| notes | no | no | no |
| transient | yes | yes | yes |
| output | yes | no | yes |

Pebbles can be programmatically inspected.

Getting Started with Pebble Stream

Software developers can programmatically inspect Pebbles to determine its expected input and expected output.

## Worksheet Design

Spreadsheet users are used to creating free-formed worksheets with many contiguous sections of calculations that perform different but related operations. The diagram below provides a high-level representation of this type of worksheet creation.



*Irregular worksheet designs are not compatible with efficient spreadsheet computing.*

Pebblers avoid this type of computation. Designing worksheets in this manner is problematic for several reasons. One reason is that worksheets so organized are poor candidates for interoperability with enterprise data stores. Another reason is that this haphazard arrangement counters software developers' ability to use the worksheet as a computing function.

# ⋮ Avoid irregular worksheet presentations

Irregular worksheets are inefficient to compute, cannot be used with Pebble Stream directives, and cannot interoperate with cloud and enterprise data stores.

Instead, Pebblers create rectangular-shaped worksheets for efficient computation. These worksheets are tabular in presentation, with the first row representing a header for each column and subsequent rows containing the calculations.

The following illustrates this standard and optimal worksheet layout.



*Pebblers design compact worksheets that are easily imported into relational or key-value stores.*

Pebblers should arrange worksheets in a rectangular manner. The reasons for this follow:

- Rectangular worksheets ease workflow creation, that is, the automatic wiring of pebbles' outputs to other pebbles' inputs.
- Rectangular worksheets can be treated as black-boxed functions or enclosed libraries by software developers.
- Rectangular worksheet data is easily transferred to and from database tables.
- Rectangular worksheets can be mapped to a data ontology. Whenever Pebblers map worksheets to an ontology, worksheet information may be automatically copied to and from enterprise or cloud data stores.
- Rectangular worksheets run faster.

## Pebblers should create regular rectangular shaped worksheets

These worksheets can be computed quickly, operated on by Pebble Stream directives, and can interoperate with other applications and enterprise and cloud data stores.

## Supported Spreadsheet Functions

Pebble Stream supports the popularly used spreadsheet functions.

We are adding more functions every day. Our intent is to support the vast majority of spreadsheet functions available in Excel, LibreOffice, OpenOffice, and Google Sheets.

If there is a function you would like to use that we do not currently support please contact technical support.

## Excel Errors

The Pebble Stream runtime will immediately stop the execution of a worksheet if any formula cell returns any of Excel's standard error codes such as:

Text

#N/A    #DIV/0    #NAME?    #NULL!    #NUM!    #REF!    #VALUE!    #SPILL!

This ensures unexpected errors are not allowed to cascade throughout the spreadsheet.

Use Excel's IFERROR function to catch expected errors. This will allow Pebble Stream to continue processing.

## Unsupported Excel Features

Pebble Stream does not support the compilation or execution of the following Excel spreadsheet functionality:

- Array formulas
- @ symbol
- VBA
- Goal seek and subtotal functions
- Pivot tables, images, and charts
- Worksheet cycles
- Spillable functions

The choice to not support these Excel features was deliberate. Consider creating a new worksheet or pebble instead in all of these cases.

## Worksheet Dependencies

Pebble Stream does not allow worksheets to reference worksheets that are not yet computed. If worksheet cycles are detected during the compilation of a spreadsheet a time travel error will be reported.

*Spreadsheets with cyclical worksheet dependencies are not allowed. We call this time traveling.*

Instead Pebblers should strive to create spreadsheets with worksheets that do not have cyclical dependencies.



*A spreadsheet with no cyclical worksheet dependencies.*

**Cyclical** worksheet dependencies may not be as evident as in the first example. Time travel issues can sneak in if the Pebbler is not careful. Here is a more complicated example. Note that isolated worksheets are OK.



*Cycles may span more than 1 worksheet. Pebblers avoid cycles in order to have a successful spreadsheet compilation.*

Here is a more complicated spreadsheet design that does not contain a worksheet dependency cycle. Pebblers often create spreadsheets with worksheet dependencies as complicated as this illustration. Pebble Stream can efficiently compute spreadsheets with similar worksheet dependencies.



*Even with the time traveling constraint in place, Pebblers can create complicated workflows*

## Pebble Stream Directives

Pebble Stream introduces the powerful concept of computing directives to spreadsheet computing.

Analysts use directives to control how the runtime performs drag downs, detects failures, ensures correct inputs, and produces outputs. Analysts can also use directives to generate new worksheet models from existing worksheets.

There are three categories of directives, **Transformative, Annotative,** and **Generative.**

- Transformative directives transform worksheets into other worksheets
- Annotative directives direct the Pebble Stream runtime's behavior when encountering column and row values
- Generative directives instruct the **Pebble Stream** runtime on how to generate cells in a given worksheet.

Pebblers declare directives using the general form "pebblestream:". Directives may also take parameters.

Analysts use Excel's commenting feature to embed directives in the columns' headers (row 1).

You may embed multiple directives in a single comment.

Analysts may also add additional comments along with a Pebble Stream directive.

🕓 Updated about 2 years ago

Spreadsheet Design Best Practices

Did this page help you?    Yes    No

Exhibit 18

8/21/24, 1:44 PM

Runtime API

1/2

Log In

CTRL-K

Q Search

Pebble Stream

Join Zen's Slack

v1.0    Documentation    Recipes    Community Discussions

ENTERPRISE DOCUMENTATION

Getting Started with Pebble Stream

Spreadsheet Design Best Practices

Writing Performant Spreadsheets

Supported Spreadsheet Functions

Runtime API

Clojure

C#

JavaScript

Java

Pebble Flow Workflow Server

Release Notes

DIRECTIVES

Transformative Directives

Annotative Directives

Generative Directives

ZEN DOCUMENTATION

Introduction

Best Practices

# Runtime API

Software Developers use the Pebble Stream Runtime to execute Pebbles.

The Pebble Stream Runtime is a software library that software developers can import into their applications. The Runtime enables the execution of Pebbles. Pebblers create Pebbles by compiling Pebble Stream compatible spreadsheets.

Pebbles are designed to be operated as black boxes. Software developers do not have to know the internal workings of a Pebble. They simply need to provide the required input and collect the expected output.

**Software developers can programmatically inspect a Pebble to discover at runtime the required inputs and expected outputs for a Pebble.**

The Pebble Stream Runtime may throw exceptions or return errors whenever Pebble execution fails. Pebblers, and not software developers, are in charge of determining when a Pebble should fail execution. Software Developers are only in charge of providing the required input for Pebble execution, executing the Pebble, and retrieving the Pebble's expected output.

Updated over 2 years ago

→ Supported Spreadsheet Functions

Clojure →

Runtime API

Did this page help you?    👍 Yes    👎 No

> Getting Started with Zen

> Features

> Directives

8/21/24, 1:45 PM                                                                                                    JavaScript

Pebble
Stream     Join Zen's Slack                                                                               Log In

v1.0    📖 Documentation    📖 Recipes    💬 Community Discussions    🔍 Search    🏠    CTRL-K

ENTERPRISE DOCUMENTATION

Getting Started with Pebble Stream

Spreadsheet Design Best Practices        # JavaScript

Writing Performant Spreadsheets          The JavaScript API for the Pebble Stream Runtime

Supported Spreadsheet Functions

> Runtime API                            Many of the Pebble Stream Runtime API functions expect a context object as input. Pebble
                                         Stream Runtime functions do not use every key in the context object. Here are the defined keys
  Clojure                                of this context object:

  C#
                                         `inputColMap` Map of sheet name to 0-index column to column values.
  JavaScript
                                         `inputCols` Map of sheet name to columns.
  Java
                                         `inputRowsOfStrings` Map of sheet name to a vector of vector of strings
Pebble Flow Workflow Server                which should be coerced to the appropriate type.

Release Notes                            `outXlsxPath` File path to save results as an .xlsx file.

                                         `outputWorksheets` List of sheets to stitch together for the final output.
DIRECTIVES
                                         `pbI` The bytes of the path of the pebble to run
> Transformative Directives
                                         `pbId` The unique identifier for the executed pebble
> Annotative Directives
                                         `postUrl` A URL to POST the results to
> Generative Directives
                                         `printClassifications` Print each sheet and its classification.
ZEN DOCUMENTATION
                                         `printDirectives` Print each directive (e.g., stop, sort),
Introduction
                                         `printInputs` Input sheets to print before rendering.
Best Practices
                                         `printRender` Print each worksheet and cell as Pebble Stream runtime renders it.

                                         `reload` Don't check the cache for the pebble before loading and caching it

                                         `requireAllInputSheets` If expected inputs are not provided, fail execution.

                                         `returnOutputContext` Return a context object rather than just the result.

                                         `splitLazy` SPLIT directives create lazySeq rather than a vector.

                                         `trimDirectives` Removes stop* and fail columns.

JavaScript

> Getting Started with Zen

> Features

> Directives

Here are the runtime functions available in the javascript runtime:

## contextToColumns

contextToColumns

```
contextToColumns [context]
```
Given the pebble context returned by runPbl context, give back a column-wise
vector grid of Clojure values.

## contextToRows

contextToRows

```
contextToRows [context]
```
Given the pebble context returned by runPbl context, give back a vector grid
of Clojure values.

## describeInputsAndOutputs

describeInputsAndOutputs

```
describeInputsAndOutputs [context]
Returns
```edn
{inputs:
  [{name: 'Sheet1'
    columns: [{headers: ['count'] types: #{'number'}}
              {headers: ['Enrolled'] types: #{'boolean'}}
              {headers: ['State'] types: #{'blank' 'string'}}]}
   ...]
 outputs: [...]}
```

JavaScript

where "outputs" is the union of 'final' worksheets and those set with the
:pebblestreamout directive. Their order is as in the original file.

## getColumnDependencies

getColumnDependencies

```
getColumnDependencies [context]
```
Return a map of `sheet -> col -> #[[sheet col] ...]` representing columns that
column depends on.

## getColumnTypes

getColumnTypes

```
getColumnTypes [context]
```
Returns the map of sheet name to an array of set of types where each index in
said array is its corresponding column's set of seen types in the original
worksheet.

## getDependencies

getDependencies

```
# getDependencies [context]
```
Returns a map from sheet name to the set of sheet names on which it depends.

## getSplitWorksheets

getSplitWorksheets

```
getSplitWorksheets [context]
Returns the names of sheets that are destinations of a split directive.
```

## getWorksheetHints

getWorksheetHints

```
getWorksheetHints [context]
Returns a map of sheet name to hint name to a vector of values.
```

## loadPbl

loadPbl

```
loadPbl [context]
Loads the pebble into the cache, so future uses of it should be fast.
```

## runPbl

runPbl

```
runPbl [context]
Run the pebble stored in pbl using the value grids of inputRows as
the data for the corresponding key input name, returning the stitched
spreadsheet object with the results.
```

JavaScript

# saveValuesAsXlsx

saveValuesAsXlsx

```
saveValuesAsXlsx [{:keys [outXlsxPath templatePath values] :as context}]
Saves the object of worksheet name to rows as a .xlsx file at the provided
filepath using the style template stored in the pebble.
```

Updated about 2 years ago

C#

Java ↑

Did this page help you?  👍 Yes  👎 No

Exhibit 19

8/21/24, 1:50 PM

Recipes

Log In    CTRL-K

Q Search

Pebble Stream    v1.0

Join Zen's Slack    Documentation    Recipes    Community Discussions

# Filter Orders greater than 400 then group by customer.

## Recipe Description

IN THIS RECIPE

1  Pull from the Order worksheet

2  Remove all orders with amount less than $400.00

3  Group sum orders by customer names


Open Recipe



Directive

pebblestream.from(Orders)
pebblestream.filter("amount" > "$400.00")
pebblestream.group("lastName", "firstName")
pebblestream.sum("amount")

Recipes

2/3

## Filter Orders greater than 400 then group by customer.

Recipe Description

3 Steps



Open Recipe

## Run a pebble called test.pbl

Recipe Description

2 Steps

Open Recipe

## Print the inputs and outputs of a pebble

Recipe Description

2 Steps



Open Recipe

## Print the dependencies of a pebble

Recipe Description

2 Steps

Open Recipe




Recipes

# Get the pebble output in column format

Recipe Description

2 Steps

Open Recipe